UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

            -v-                     :

                                          S3 09 Cr. 581 (WHP)

DAVID PARSE,                        :

            Defendant.            :

                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DAVID PARSE'S MOTION FOR A NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL


PREET BHARARA
United States Attorney for the Southern
District of New York
Attorney for the United States of America


STANLEY J. OKULA, JR.,
NANETTE L. DAVIS,
JASON P. HERNANDEZ,
Assistant United States Attorneys

            – Of Counsel –

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................................................1

Background ....................................................................................................................................2

Applicable Legal Principles ......................................................................................................3

Argument: Defendant Parse Has Not Satisfied the Strickland Standard .....................................7

      A.     Parse Has Not Shown that the Brune & Richard Lawyers
            Were Constitutionally Deficient ...........................................................................7

      B.     Parse Cannot Satisfy the Prejudice Prong of <u>Strickland</u>........................................16

Conclusion ..................................................................................................................................23

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Babb v. Crosby,* 197 Fed. Appx. 885, 2006 WL 2805642 (11th Cir. 2006)......................13

*Bell v. Cone*, 535 U.S. 685 (2002) ......................................................................................3

*Bellamy v. Cogdell*, 974 F.2d 302 (2d Cir. 1992) ................................................................6

*Buehl v. Vaughn*, 166 F.3d 163 (3d Cir.1999) ....................................................................4

*Byrd v. Workman*, 645 F.3d 1159 (10th Cir. 2011) ............................................................4

*Carrera v. Ayers*, 670 F.3d 938 (9th Cir. 2011) ........................................................14, 15

*Chandler v. United States*, 208 F.3d 1305 (11th Cir. 2000) .............................................13

*Chappee v. Vose*, 843 F.2d 25 (1st Cir. 1988) ..................................................................12

*Ciaprazi v. Senkowski,* 151 Fed. Appx. 62, 2005 WL 2535723 (2d Cir. 2005) ...............11

*Cuevas v. Henderson*, 801 F.2d 586 (2d Cir.1986) .............................................................5

*Davis v. Woodford*, 384 F.3d 628 (9th Cir. 2004) .............................................................17

*Field v. Woodford*, 309 F.3d 1095 (9th Cir. 2002) ..................................................... 14-15

*Guinyard v. Keane*, 56 Fed. Appx. 44, 2003 WL 430518 (2d Cir. 2003) ........................11

*Harrington v. Richter*, 131 S. Ct. 770 (2011) ..............................................................4, 13

*Hooks v. Workman*, 606 F.3d 715 (10th Cir. 2010)............................................................4

*Hurel Guerrero v. United States*, 186 F.3d 275 (2d Cir.1999)............................................5

*Johnson v. United States*, 520 U.S. 461 (1997) ................................................................13

*King v. Greiner*, 453 Fed. Appx. 88, 2011 WL 6450755 (2d Cir. 2011) ...........................4

*Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001) .............................................................17

*Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006) ......................................................................3

*Mason v. Scully*, 16 F.3d 38 (2d Cir.1994) ........................................................................3

*Miller v. Webb*, 385 F.3d 666 (6th Cir. 2004).....................................................................6

*Murray v. Carrier*, 477 U.S. 478 (1986)............................................................................13

*Rompilla v. Beard*, 545 U.S. 374 (2005)..........................................................................4, 5

*Solina v. United States*, 709 F.2d 160 (2d Cir. 1983) ..........................................................5

*Strickland v. Washington*, 466 U.S. 668 (1984) ......................................................... *passim*

*Strouse v. Leonardo*, 928 F.2d 548 (2d Cir. 1991) ...............................................................6

*Tippins v. Walker*, 77 F.3d 682 (2d Cir. 1996) ....................................................................5

*United States v. Abad*, 514 F.3d 271 (2d Cir. 2008) ...........................................................17

*United States v. Berkovich*, 168 F.3d 64 (2d Cir. 1999) ....................................................3, 4

*United States v. Bosch*, 584 F.2d 1113 (1st Cir. 1978)........................................................12

*United States v. Caracappa*, 614 F.3d 30 (2d Cir. 2010) .....................................................4

*United States v. DeCecco*, 467 Fed. Appx. 85, 2012 WL 975051 (2d Cir. 2012)...............3

*United States v. Eppolito*, 436 F. Supp. 2d 532 (E.D.N.Y. 2006) .......................................4

*United States v. Garguilo*, 324 F.2d 795 (2d Cir. 1963)......................................................7

*United States v. Guang*, 511 F.3d 110 (2d Cir. 2007) ........................................................17

*United States v. Lawes*, 292 F.3d 123 (2d Cir. 2002).....................................................11, 15

*United States v. Nersesian*, 824 F.2d 1294 (2d Cir.1987) ...............................................5, 22

*United States v. Parkes*, 497 F.3d 220 (2d Cir. 2007) ..........................................................7

*United States v. Quintero-Barraza*, 78 F.3d 1344 (9th Cir. 1995) ....................................14

*United States v. Rondon*, 204 F.3d 376 (2d Cir. 2000).........................................................5

*United States v. Tarricone*, 21 F.3d 474 (2d Cir. 1993) .......................................................5

*United States v. Turrietta*, 2012 WL 3711871 (10th Cir. Aug. 29, 2012).........................12

*United States v. Ven-Fuel, Inc.*, 758 F.2d 741 (1st Cir. 1985)............................................12

*United States v. Yu-Leung*, 51 F.3d 1116 (2d Cir. 1995).....................................................11

*Waterhouse v. Rodriguez*, 848 F.2d 375 (2d Cir. 1988) .......................................................5

*White v. Lee*, 238 F.3d 418, 2000 WL 1803290 (4th Cir. 2000) .......................................23

*Yick Man Mui v. United States*, 614 F.3d 50 (2d Cir. 2010)................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

      -v-                                                    :

                                     **S3 09 Cr. 581 (WHP)**

DAVID PARSE,                                            :

            Defendant.                             :

                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DAVID PARSE'S MOTION FOR A NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL

The Government respectfully submits this memorandum of law in opposition to the motion of defendant David Parse, pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure, for a new trial based on the alleged ineffective assistance of his lawyers, Brune & Richard. Parse argues that he is entitled to a new trial because his lawyers at Brune & Richard failed to bring to the attention of the Court the information that they had learned pertaining to Juror No. 1, Catherine Conrad. (Memorandum of Law in Support of Defendant Parse's Motion for a New Trial Based on Ineffective Assistance of Counsel at 1). For the reasons that follow, Parse's motion is meritless and should be denied.

## PRELIMINARY STATEMENT

Armed with the knowledge that juror Catherine Conrad was a New York attorney who had been suspended from practice for alcohol-related issues, attorneys for David Parse decided to keep that knowledge from the Court — and keep Catherine Conrad on the jury — in an effort to obtain

acquittals for their client.  That strategy succeeded in part, as Parse was acquitted of the conspiracy charge and certain tax evasion counts.  Now Parse wants to retain the benefits of his trial counsel's strategic maneuvering (the acquittals) while simultaneously seeking to overturn the two counts of conviction that resulted from their strategic choice.

This Court should reject Parse's effort, under the well-settled law of this Circuit.  Because Parse chose, as a matter of strategy, to gamble with the jury that was selected, he should not be allowed to run from the consequences of that choice — particularly in an area such as jury selection that is quintessentially a matter of attorney strategy.

## **BACKGROUND**

Following an eleven-week trial, David Parse was convicted on May 24, 2011 of one count of corruptly obstructing and impeding the due administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a), and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  David Parse was also acquitted of one count of conspiracy and three counts of tax evasion.  On July 8, 2011, defendants David Parse, Paul Daugerdas, Donna Guerin, and Denis Field filed a Rule 33 motion seeking a new trial based on allegedly false information provided by one of the seated jurors, Catherine Conrad, during voir dire.  The Court granted the motion as to Daugerdas, Guerin, and Field, but denied the motion as to Parse, finding that his attorneys knew of sufficient information about Conrad, which they chose not to bring to the attention of the Court prior to the return of the verdict, to constitute waiver on the part of defendant Parse.  He now files a motion for a new trial based on ineffective assistance of counsel, claiming that his counsels' actions in not bringing their knowledge of Conrad to the Court's attention constituted ineffective assistance of counsel.

## APPLICABLE LEGAL PRINCIPLES

When scrutinizing the performance of counsel, the standard of review is a "highly deferential" one. Strickland v. Washington, 466 U.S. 668, 689 (1984); accord Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006) ("A criminal defendant has a high burden to overcome to prove the deficiency of his counsel."). The defendant must overcome the presumption of reasonableness of defense counsel's actions. As the Supreme Court has noted, "We cautioned in Strickland that a court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 702 (2002) (citing Strickland, 466 U.S. at 689). This high bar is intended to limit the role that hindsight plays in the analysis because of the great temptation to second-guess the efforts of a defense counsel's performance that ultimately proved unsuccessful. Strickland, id. The Second Circuit has articulated the Strickland test as follows:

> For this claim to succeed, he must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that, but for the deficiency, the likely outcome of the trial would have been different. See Strickland v. Washington, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); Mason v. Scully, 16 F.3d 38, 42 (2d Cir.1994). However, actions or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance. Strickland, 466 U.S. at 689, 104 S. Ct. 2052 (internal quotation marks omitted).

United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) (defense attorney's global stipulation on admission of tapes and transcripts was trial strategy; "[w]hile appellant made certain concessions in this agreement, he also gained certain advantages."); see also United States v. DeCecco, 467 Fed. Appx. 85, 89, 2012 WL 975051, at *3 (2d Cir. 2012) (counsel's decision to describe defendant as "addicted to stealing" in embezzlement case not ineffective: "It is well established that 'actions or

-3-

omissions that might be considered sound trial strategy do not constitute ineffective assistance.'") (quoting Berkovich, id.).

Moreover, "[i]n evaluating whether the proceeding would have been different but for counsel's error, '[t]he likelihood of a different result must be substantial, not just conceivable.'" Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (quoted in King v. Greiner, 453 Fed.Appx. 88, 90, 2011 WL 6450755, at *2 (2d Cir. 2011)). "It is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir.1999); see also Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) ("In other words, [defense counsel's decision] must have been completely unreasonable, not merely wrong.") (quoting Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010)).

Any strategic choice made by counsel is "virtually unchallengeable," so long as the strategic choice at issue is made after thorough investigation of the relevant law and facts. Strickland, 466 U.S. at 690. Even if such an investigation is "less than complete," any strategic choices made are still reasonable if "reasonable professional judgments support the limitations on investigation." Id. at 690-91. Any decision by counsel not to investigate must be assessed according to the reasonableness of the decision under the circumstances, while giving a "heavy measure of deference" to the choices of counsel. Id. at 691. This duty to make reasonable investigations does not mean that counsel must "conduct a comprehensive investigation of every possible lead or defense or . . . 'scour the globe on the off-chance something will turn up.'" United States v. Eppolito, 436 F. Supp. 2d 532, 562 (E.D.N.Y. 2006), aff'd in relevant part, United States v. Caracappa, 614 F.3d 30 (2d Cir. 2010) (internal citation omitted) (quoting Rompilla v. Beard, 545 U.S. 374, 383 (2005)). Rather,

-4-

"reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Rompilla, 545 U.S. at 383. The Second Circuit has accorded deference even to ill-advised strategic decisions:

> [T]he question of prejudice under Strickland ordinarily entails consideration of the range of strategies and tactics available to a lawyer. Strickland, 466 U.S. at 689-90. On that basis, in case after case, we have declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised. See United States v. Tarricone, 21 F.3d 474, 476 (2d Cir. 1993) (decision to forgo testimony of handwriting expert); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (decision to forgo opening statement); Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir. 1986) (questioning that "opened the door" to damaging evidence).

Tippins v. Walker, 77 F.3d 682, 686-87 (2d Cir. 1996).

A trial counsel's decision not to object to the inclusion of a biased juror is not a per se violation of a defendant's Sixth Amendment right to effective assistance of counsel, but rather is subject to a particularized inquiry under Strickland. The Second Circuit has recognized only two categories of such per se violations: (1) where the attorney was not licensed to practice law because he failed to satisfy the substantive requirements of admission to the bar, and (2) where the attorney was implicated in the defendant's crime. The Second Circuit has emphasized its reluctance to find per se violations of the Sixth Amendment due to ineffective assistance of counsel:

> Moreover, even in the two situations where we have found the per se rule applicable, we have resorted to it 'without enthusiasm.' Solina [v. United States, 709 F.2d 160, 169 (2d Cir. 1983)]; see Hurel Guerrero [v. United States, 186 F.3d 275, 279 (2d Cir. 1999)] ("We have consistently acknowledged . . . that we are disinclined to resort to [the] per se rule."); Waterhouse [v. Rodriguez, 848 F.2d 375, 383 (2d Cir. 1988)] ("[W]e have never purported to expand applicability of the rule beyond the sort of egregious conduct present in Solina and Cancilla."); see also Tippins [v. Walker, 77 F.3d 682, 686 (2d Cir. 1996)] ("We are reluctant to extend a rule of per se prejudice in any new direction.").

United States v. Rondon, 204 F.3d 376, 380 (2d Cir. 2000) (declining to apply per se rule to case

where defense counsel was disbarred by state during pendency of federal criminal trial).  See also Bellamy v. Cogdell, 974 F.2d 302, 307-08 (2d Cir. 1992) (en banc) (refusing to find per se Strickland violation in case of attorney illness)).  But see Miller v. Webb, 385 F.3d 666 (6th Cir. 2004) (trial counsel's action in empaneling actually biased juror was presumptively prejudicial, for purposes of ineffective assistance claim)

The line of Second Circuit cases rejecting an expansion of the types of case subject to the application of per se violations underscore the guiding principles in deciding whether the facts comprise a per se violation of the Sixth Amendment: either that a competent attorney was completely absent from the proceedings, as in cases where the defense counsel was not licensed, or where his fear of discovery of his complicity in the crime created a conflict of interest such that the defense was necessarily compromised.  Bellamy, id. at 306-07.  Defense counsel's deliberate seating of a biased juror fits neither of those categories, and thus the Court should apply a particularized Strickland analysis.

In conducting such an inquiry, it does not matter which Strickland prong a court addresses first or that a court even address both prongs at all if the defendant does not make a sufficient showing on one of them.  Strickland, 466 U.S. at 697.  That is, a court may freely address the issue of whether a defendant suffered prejudice as a result of the alleged deficiencies before addressing counsel's effectiveness.  Id. (noting the Supreme Court's expectation that this would often be the case); see Strouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991) ("We need not address the[] alleged deficiencies [in defense counsel's performance] because we conclude that Strouse cannot satisfy the second prejudice prong of Strickland, given the overwhelming evidence of guilt adduced at trial.").

While ineffective assistance of counsel claims "are to be taken very seriously, they are quite

often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' and can be quickly resolved" on their merits.  Yick Man Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010).

As the Second Circuit observed in United States v. Garguilo, 324 F.2d 795, 797 (2d Cir. 1963):

> A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence.  A long stretch in prison, furthermore, affords ample opportunity to reflect with twenty-twenty hindsight upon the tactical errors of one's attorney, and to point to those instances where a Clarence Darrow or even the defendant without counsel might have handled things a shade differently.

As shown below, defendant Parse cannot satisfy either prong of the Strickland test.

## ARGUMENT

## DEFENDANT PARSE HAS NOT SATISFIED THE STRICKLAND STANDARD

### A.    Parse Has Not Shown that the Brune & Richard Lawyers Were Constitutionally Deficient

Parse has not carried his burden of showing that Brune & Richard lawyers were constitutionally deficient in choosing not to bring the information they had acquired about Conrad to the Court's attention.  The evidence unequivocally shows that when faced with the possibility that Juror No. 1 was Catherine Conrad, the suspended attorney with an alcohol dependency, Brune & Richard undertook investigation prior to the return of the jury's verdict to acquire additional information about Juror No. 1.  As this Court summarized in its June 4th Memorandum and Order:

> In sum, prior to the start of voir dire, Parse's attorneys knew that (1) Juror No. 1 lived in Bronxville, was a plaintiff in a pending personal injury lawsuit, and had a father who was an immigration officer; and (2) a woman with the identical name of "Catherine M. Conrad" was a suspended New York attorney with an alcohol dependency.
>
> Before jury deliberations began, Parse's attorneys knew that (1) Juror No. 1 had submitted a note to the Court referencing several legal concepts not mentioned during the trial; (2) the suspended New York attorney by the name of Catherine M. Conrad used a Bronxville address, the same small village given for Juror No. 1 on the jury

> roll, and (3) that living in the same household was a Robert J. Conrad, whom
> Trzaskoma believed to be Conrad's father, the immigration judge. And Trzaskoma
> had concluded that the Catherine M. Conrad in the Westlaw Report was the same
> person as Juror No. 1.

See June 4, 2012 Mem. & Order at 32. Thus, this is not a situation where a defense counsel did

nothing in response to information that came to their attention regarding a potentially biased juror.

Rather, in light of the information they uncovered, they considered their options and made a strategic

decision not to advise the Court of their findings or request that Conrad be removed as juror.

The facts show that the Brune & Richard defense counsel were clearly highly attuned to, and

prepared for, the entire process of voir dire, supplementing their large defense team with the services

of investigative firm Nardello & Company and jury consultant Dennis Donoghue to assist them with

jury selection. 2/15/12 Hrg. Tr. 13; 2/15/12 Hrg. Tr. 256-58; S. Brune Sept. 15, 2011 Aff. & Exhs.

The Brune & Richard defense team – comprising the three trial team partners, other partners,

associates, and paralegals of the firm, and additional technical and consulting staff – collectively

utilized a sophisticated system to rank the jurors and considered the merits and drawbacks of each

member of the venire, including Catherine Conrad. 2/15/12 Hrg. Tr. 11-34. Uncovered prior to trial

was the 2010 opinion from the New York Supreme Court, Appellate Division, showing that

Catherine M. Conrad was a suspended attorney seeking reinstatement from a suspension due to an

alcohol disability. Despite having found this opinion prior to voir dire, Brune & Richard had the

Nardello firm perform some investigation on a number of the potential jury members but not

Catherine Conrad. 2/15/12 Hrg. Tr. 13-14, 2/16/12 Hrg. Tr. 258, 261.

The Brune & Richard attorneys deliberately chose not to bring the suspension opinion to the

Court's attention during voir dire, relying instead on Conrad's voir dire answers and their judgment

of her credibility and demeanor at voir dire. 2/15/12 Hrg. Tr. 33-34, 2/16/12 Hrg. Tr. 264-65. Nor

did Brune & Richard request that the Court ask any additional questions of Conrad during voir dire, although they made such requests and expressed concerns regarding other potential jurors.  At the conclusion of voir dire, Brune & Richard assigned Conrad a "C" grade on an A to F grading system of the venire members — which, Trzaskoma testified, "was, in the scheme of things, actually a pretty good juror for us."  2/15/12 Hrg. Tr. 28.  Ultimately, Brune & Richard did not object to the seating of Conrad, despite their knowledge  about her, including their knowledge that she was a plaintiff in a personal injury suit and that her father was a federal immigration officer, and their possession of the suspension opinion.  The only conclusion to draw from this sequence of events is that Brune & Richard wanted her on the jury.

During the trial, Catherine Conrad's service was without incident.  She was by all accounts an attentive and diligent juror.  There was no hint of any trouble or problem with her service, nor any complaints by any other member of the jury or court personnel about her.

However, the Court's receipt of Conrad's note just prior to jury instructions prompted Theresa Trzaskoma to initiate additional investigation about Conrad.  This Court has detailed the actions of the Brune & Richard law firm during that investigation.  June 4, 2012 Mem. & Order at 26-32.  In sum, the morning after Conrad's pre-deliberation note was read to the parties in open court, on May 12, 2011, Theresa Trzaskoma caused members of the Brune & Richard defense team to do additional investigation of Catherine Conrad in the form of Internet and Westlaw research.  As a result of those efforts, Trzaskoma was provided with a Westlaw report that

> was freighted with information revealing Juror No.1's hidden identity.  The Westlaw Report lists a previous address for Catherine M. Conrad in Bronxville-the same exact name and town listed for Conrad on the jury roll-and also shows that Conrad was a suspended attorney with a Bronx address.  It lists Robert J. Conrad [Conrad's father] as a member of Conrad's household and indicates that Conrad was involved in a civil lawsuit in Bronx Supreme Court.  The Westlaw Report links the Bronx civil suit to

Conrad-the suspended attorney-with a "Confidence Level" of 99%.

June 4 Mem. & Order at 22-23.  The email exchanges between members of the Brune & Richard

defense team show that they were aware of the implications of these emails – that Juror No. 1,

Catherine Conrad, had lied about her background during voir dire and was not who she portrayed

herself to be.

As this Court found: "Any fair reading of these e-mail exchanges shows that Parse's

attorneys had actionable intelligence that Conrad was an imposter.  That knowledge demanded swift

action to bring the matter to the Court's attention.  Further investigation would have been easy and

prudent.  But Parse's attorneys chose to do neither." June 4, 2012 Mem. & Order at 28.  Rather, the

Brune & Richard attorneys deliberately chose to go forward with Juror No. 1, and deliberately chose

not to bring the information they had to the Court's attention.[1]  This Court concluded, in its June 4,

2012 opinion,

> At a minimum, Parse's attorneys had a suspicion that Juror No.1 was not the person
> she represented herself to be during voir dire.  That suspicion leavened into tangible
> evidence that Conrad was a monstrous liar. And Parse's attorneys knew--or with a
> modicum of diligence would have known--of Conrad's misconduct before the jury
> rendered its verdict. But they gambled on the jury they had.

---

[1]    Brune & Richard partner Laurie Edelstein testified as follows:

Q.    Do I understand you to just testify that you specifically discussed with Susan Brune
      and Theresa Trzaskoma in the park about whether you were going to bring it to the
      Court's attention or not?
A.    Yes.
Q.    And you decided you would not?
A.    Yes.
Q.    And the ultimate decision of that discussion was that you were going to call it off and
      not even do an investigation, right?
A.    Yes.

2/16/12 Hrg. Tr. 354-55.

June 4, 2012 Mem. & Order at 64.  This was the essence of a strategic decision, and this course of conduct was found by this Court to be a valid waiver of Parse's right to an impartial jury.  Such a strategic decision cannot form the basis of a valid claim to ineffective assistance of counsel.

The Second Circuit has repeatedly held that where trial counsel has made a strategic gamble, an ineffective assistance of counsel claim will not lie.  In Ciaprazi v. Senkowski, 151 Fed. Appx. 62, 2005 WL 2535723 (2d Cir. 2005),  the Second Circuit rejected the defendant's ineffective assistance of counsel claim for failing to strike a sleeping juror, which situation the defendant argued called for additional inquiry by his defense counsel.  The court noted that the discussion about the inattentive juror preceded the jury's commencement of deliberations.  "Accordingly, trial counsel's decision not to object may well have been based on his desire to retain the inattentive juror rather than to seek to replace him with an alternate. As this decision is paradigmatically strategic, cf. United States v. Lawes, 292 F.3d 123, 128 (2d Cir. 2002) ("[T]rial strategy and voir dire are inseparable."), we cannot say that the state court acted unreasonably in failing to find counsel constitutionally ineffective for declining to request an inquiry."  Id. at *63-64.  See also Guinyard v. Keane, 56 Fed. Appx. 44, 46, 2003 WL 430518, at *2 (2d Cir. 2003) ("Moreover, even if trial counsel saw a distracted juror, it was among the objectively reasonable strategic choices for counsel to forgo an objection. The juror in question may have been one that defense counsel favored and wanted to keep.");  United States v. Yu-Leung, 51 F.3d 1116, 1123 (2d Cir. 1995) ("This manifest pre-trial concern to guard against unfair prejudice through one type of 'irrelevant evidence' strongly suggests to us that Ruotolo's trial lawyer did not simply fall asleep at the wheel when another type of 'irrelevant evidence' was presented at trial.  Indeed, given the sheer quantity of unchallenged yet allegedly prejudicial testimony of this latter sort that is in the trial record, Ruotolo's lawyer would have had to have

-11-

suffered from aggravated narcolepsy for us to believe that his failure to object did not reflect a clear and conscious tactical decision.").

Other circuits similarly have held that where defense counsel has gambled on a verdict, an ineffective assistance of counsel claim will not succeed, even if that tactical decision does not comport with standards of professionalism.  As the First Circuit aptly noted in Chappee v. Vose, rejecting a similar argument by the defendant in that case:

> That counsel's selection of a stratagem turns out to have been stupid does not render the game plan "unreasonable" as a matter of law. See United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978) (choice between trial tactics, though appearing plainly unwise in retrospect, not tantamount to "constitutionally-deficient representation"). So, too, the fact that counsel's scheme flouted procedural rules or was unethical does not automatically propel petitioner past the barrier.  If unprofessional conduct (say, shortstopping a rule of court or subornation of perjury), deliberately employed as a means of thwarting the prosecution, was to be deemed per se ineffective assistance, then the accused would be placed in an idyllic situation. If counsel successfully cut the corner, the client would unfairly benefit. On the other hand, if counsel was caught in the act and the stratagem aborted, then the client could fall back on a claimed abridgement of his sixth amendment right to reasonably proficient representation.  Either way, the accused would reap a windfall.  The notion that this sort of "heads-I-win, tails-you-lose" approach is doctrinally required by the sixth amendment is, we suggest, "a proposition more suitable to Lewis Carroll" than to the lexicon of federal constitutional law. See United States v. Ven–Fuel, Inc., 758 F.2d 741, 763 & n.17 (1st Cir. 1985), citing L. Carroll, Alice's Adventures In Wonderland 8–9 (Delacorte Press. ed. 1966).  We emphatically decline petitioner's invitation that we adopt such a surreal rule.

Chappee v. Vose, 843 F.2d 25, 33-34 (1st Cir. 1988) (defense counsel's failure to identity of expert witnesses not ineffective assistance of counsel).  Cf. United States v. Turrietta, 2012 WL 3711871, at *11 (10th Cir. Aug.  29, 2012) (where defense lawyer was aware of court's failure to swear jury but chose not to object, court held on plain error review: "If anything would imperil the integrity of the judicial proceedings, it would be a decision rewarding [defense attorney] for holding his objection in his back pocket hoping it might ultimately work in his client's favor. . . .  It is one thing

-12-

to overlook an error; it is something else entirely to compound it.") (citing <u>Johnson v. United States</u>, 520 U.S. 461, 470 (1997)).  Thus, to permit the defendant both to gamble on the verdict, as was done here, and then be able to successfully argue ineffective assistance of counsel when the gamble results in an unfavorable verdict is not countenanced by the law.

That Brune & Richard's decision not to challenge Conrad prior to the return of the verdict turned out to be a bad and unwise decision is not dispositive.  The Supreme Court in <u>Harrington v. Richter</u> recently highlighted the fact that a defendant is not entitled to perfect counsel, explaining,

> Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.. . .  And while in some instances 'even an isolated error' can support an ineffective-assistance claim if it is 'sufficiently egregious and prejudicial,' <u>Murray v. Carrier</u>, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L.Ed.2d 397 (1986), it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.

<u>Harrington v. Richter</u>, 131 S. Ct. at 791.  <u>See also</u> <u>Chandler v. United States</u>, 208 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc) ("And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); <u>Babb v. Crosby</u>, 197 Fed. Appx. 885, 887, 2006 WL 2805642, at *2 (11th Cir. 2006) (decision to seat juror who expressed doubts about her impartiality not ineffective assistance of counsel: "Babb has failed to establish that Farrar's [his attorney's] failure to strike Edwards from the jury was an act that no competent counsel would have taken . . .  Even though the state court noted that the logic of Farrar's decision was debatable, the evidence in the record does not support a finding that the state court's decision was contrary to, or an unreasonable application of, <u>Strickland</u>.  And the Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is <u>per se</u> ineffective.")

The Ninth Circuit's decision in Carrera v. Ayers, 670 F.3d 938 (9th Cir. 2011) (en banc decision pending), is also instructive.  There, the appellate court affirmed the district court's denial of the defendant's ineffective assistance of counsel where the defense counsel failed to make a so-called Wheeler motion to object to the prosecutor's striking of six Hispanic jurors through alleged group bias.  The Carrera court found that a defense attorney was reasonable in not filing a futile Wheeler motion as to some of the jurors, or choosing not to object to the striking of pro-death penalty jurors, even if Hispanic, as was the case with other jurors.  In analyzing the Strickland deficiency prong, the Carrera court stated, "Strickland requires that the panel 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' Strickland, 466 U.S. at 689, 104 S. Ct. 2052.  Not 'must,' not 'would,' but 'might.'" Id. at 951.

The Ninth Circuit then articulated the proper Strickland deficiency inquiry as follows: "We emphasize that the initial question is not whether defense counsel would have succeeded had a Wheeler motion been made — a reasonable attorney is not required to make every potentially meritorious motion.  Instead, the question is whether reasonable counsel might have declined to make a Wheeler motion under these circumstances. To this question, we answer in the affirmative." Id. (emphasis in original).  The court also emphasized the "high deference" given to defense counsel's decisions with regard to jury selection.  Id. at 948 (citing United States v. Quintero–Barraza, 78 F.3d 1344, 1349 (9th Cir. 1995) (defense counsel decision not to strike juror who expressed doubts about his ability to be impartial because defense counsel impressed with juror's candor not unreasonable strategic choice), and Field v. Woodford, 309 F.3d 1095 (9th Cir.

-14-

2002) (defense counsel's failure to request additional voir dire of juror who equivocated about impartiality not unreasonable)). The <u>Carrera</u> court also made the following trenchant observation:

> Further, the dissent brushes aside as irrelevant the possibility that defense counsel was pleased with the resulting jury. It also mistakes the role of defense counsel. Defense counsel's duty is to represent her client with zeal and vigor in an effort to acquit her client of the charged counts. It is not deficient performance to decline to move to strike a jury that defense counsel believes gives her client the best chances of being acquitted — even if defense counsel is <u>convinced</u> the prosecutor exercised his peremptory challenges in an impermissible manner.

<u>Id.</u> at 950-51 (emphasis added). <u>Cf.</u> <u>United States v. Lawes,</u> 292 F.3d 123, 128 (2d Cir. 2002) ("Court and counsel have somewhat different goals in voir dire. The court wants a fair and impartial jury to be chosen and to move expeditiously to the presentation of evidence. Counsel want a jury favorable to their cause — fair or not — and voir dire aids them in exercising peremptory challenges and challenges for cause.")

Furthermore, there is every reason to believe that a reasonable defense attorney would have been happy to have Conrad on the jury, even having discovered after the pre-deliberation investigation that she was a suspended lawyer with a drinking problem. It is not unreasonable for a defense attorney to believe that such a juror — a suspended attorney with legal troubles and facing a state regulatory body seeking to disbar her — would be sympathetic to, and might identify with, the defendants in a case that pivoted around the alleged misconduct of lawyers, among others. This is especially true given Brune & Richard's assessment of Conrad during voir dire and particularly Conrad's very careful and thoughtful demeanor during trial, which the Brune & Richard attorneys have acknowledged prompted no concern on their part during trial. <u>See</u> 2/15/12 Hrg. Tr. 35 (Trzaskoma: "She was very, yes, attentive."); 2/16/12 Hrg. Tr. 277 (Brune: "I saw no cause for concern").

-15-

Given Parse's attorneys zealous representation of their client throughout the trial,[2] it is all the more clear that, had they truly wanted her off the jury in light of the information they had uncovered. they would have requested that she be struck for cause during voir dire, requested that she be replaced with an alternate, or, at the very least informed the Court of their findings.[3]  Indeed, as Ms. Trzaskoma acknowledged, she liked the alternates.[4]  Their decision not to bring the information they had in their possession to the Court, perhaps serving now as a convenient Monday morning quarterbacking exercise for Parse's new counsel, was a strategic decision by trial counsel that did not rise to the level of unconstitutionally ineffective assistance of counsel.

The Court should reject a finding that Brune & Richard's gamble in deciding to keep Conrad on the jury constituted constitutionally deficient conduct.

**B.      Parse Cannot Satisfy the Prejudice Prong of <u>Strickland</u>**

The evidence of defendant Parse's guilt on Counts 20 and 25 is overwhelming; thus, Parse

---

[2]  This Court stated in its June 4, 2012 opinion, "Brune & Richard represented Parse zealously throughout trial and the attorney-client relationship was continuous." June 4, 2012 Mem. & Order at 50.

[3]  Ms. Trzaskoma testified:

Q.      Am I correct that you made strategic choices about which jurors to challenge and not to challenge?
A.      We definitely tried to.

2/15/12 Hrg. Tr. 15.

[4]      Ms. Trzaskoma testified at the February 15, 2012 hearing as follows:

Q.      And you knew if Juror No. 1, Ms. Conrad, was replaced there would be someone to take her place?
A.      I did and I liked our alternates.

2/15/12 Hrg. Tr. 34.

-16-

cannot show the requisite Strickland prejudice.  "For a trial judge to grant a Rule 33 motion, he must harbor 'a real concern that an innocent person may have been convicted.'"  United States v. Guang, 511 F.3d 110, 119-20 (2d Cir. 2007) (quoting United States v. Parkes, 497 F.3d 220, 232 (2d Cir. 2007) (internal quotation omitted)) (defendants in Guang could not satisfy prejudice prong of Strickland where evidence of guilt "overwhelming").  See also United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008)  ("Accordingly, even if defense counsel did what Abad argues should have been done, there is no "reasonable probability that . . . the result of the proceeding would have been different.");  Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.");  Davis v. Woodford, 384 F.3d 628, 642 (9th Cir. 2004) (court rejected ineffective assistance of counsel claim, finding no prejudice despite counsel's error in not impeaching prosecution witness: "More importantly, it is almost impossible to believe that a jury-already aware that Manson's credibility was an issue-would have decided the guilt phase differently had it known that Manson lied in connection with a traffic ticket issued a year before the murder occurred and two years before Davis's trial.").

Under well-settled Second Circuit precedent, the operative question is whether, if Conrad had been replaced with an unbiased juror, Parse would have been convicted.  Here, Parse cannot demonstrate prejudice because the answer to that question is a resounding yes.  The proof with respect to David Parse's culpability in the mail fraud scheme and the corrupt endeavor to obstruct the IRS was overwhelming.  Parse, a CPA, MBA, and former Goldman Sachs broker, not only participated in the overarching scheme aimed at fraudulently producing billions of dollars of tax losses in exchange for millions in fees, he also participated directly in three egregious instances of

-17-

fraudulent backdating of tax shelter transactions — that is, the corrupt "correction" of tax shelter transactions that were improperly implemented during the year in which the tax loss was needed by the clients, then fraudulently altered in the following tax years, when Jenkens & Gilchrist ("J&G") attorneys, including Donna Guerin and Paul Daugerdas, realized the earlier implementation errors.

Those three backdated transactions, which violated basic principles of tax accounting, as understood by CPA David Parse, are as follows:

First, in the shelter transaction for J&G clients and trial witnesses Matthew Coleman and Greg Blair, J&G personnel faxed to defendant Parse at Deutsche Bank letters of authorization to purchase for the taxpayer accounts, and then sell, shares of Cisco stock.   As testified to by Parse's sales assistant, Carrie Yackee, Parse implemented the instructions, as reflected on Deutsche Bank account statements for Coleman and Blair that reflected the December 2001 purchase and sale of shares of Cisco.

In February 2002, however, J&G attorneys realized that the December 2001 instructions they provided to Parse were incorrect, because Coleman and Blair were looking to produce "ordinary" losses through their transactions, which required that the artificial basis produced through the SWAPS transaction be attached to foreign currency rather than shares of stock (such as Cisco).[5] Rather than report the transaction as it occurred — which was mandated by the annual accounting

---

[5]  Testimony at trial made clear that the tax shelter transactions could produce both ordinary and capital losses for the J&G clients, depending on which type or mix that the client desired. Testimony also made clear that, pursuant to section 988 of the Internal Revenue Code, ordinary losses were produced through the transactions by having the clients purchase foreign currency through one of the entities utilized in their transactions.  After the artificial basis from the particular transaction "attached" to the foreign currency, section 988 allowed the "loss" from the subsequent sale of that currency to be treated as "ordinary" loss — which served to offset the clients' ordinary income.  In order to produce "capital" losses, the client would purchase share of stock, which is treated as a capital asset; eventual sales of the stock with the stepped-up basis consequently produced capital losses.

rule — the J&G attorneys and Parse engaged in fraudulent back-dating of the transaction.  Thus, on February 11, 2002, J&G faxed to Parse an undated letter ostensibly signed by Matthew Coleman, requesting corrections to the 2001 Cisco sale.  GX 401-44.  J&G also faxed to Parse letters of authorization dated December 24 and December 28, 2001, to purchase and then sell foreign currency in the form of Canadian dollars.  GX 24-22; 24-23.  David Parse's assistant, Carrie Yackee (who repeatedly testified that she took actions of this sort on Parse's instruction[6]), then e-mailed an administrative employee of Deutsche Bank Alex Brown, Heather Loeser, to "correct" the previous year's Cisco sale, GX 400-29, and also e-mailed Sheila Denzler of Deutsche Bank Alex Brown to order the purchase of Canadian dollars for the Coleman and Blair accounts — and that the purchase be effectuated "as of" December 24, 2001.  As a result of the foregoing, the previous year's Cisco share sale was changed; the Canadian currency purchase and sale was fraudulently treated as having occurred "as of" December 2001 — even though Parse and the J&G attorneys knew it had occurred in February 2002.

The backdating of the aforementioned tax shelter transactions then lead to the fraudulent tax reporting on the Coleman and Blair tax returns.  In particular, in August 2002, Parse's assistant, Yackee, faxed to J&G associate attorney John Beery the Deutsche Bank account statements that showed the February 2002 correction of the Cisco share purchase and the purchase/sale of Canadian dollars, "as of" December 2001.  Donna Guerin then caused American Express Tax and Business Services ("AMEX") to fraudulently report the transaction on the Blair and Coleman Individual Income Tax Returns, Forms 1040, in October 2002.   Coleman and Blair thereafter filed those false returns with the IRS.

_____

[6] See Tr. 5353, 5359, 5416, 5429, 5440, 5495, 5496, 5532-33, 5542, 5547, 5553, 5554, 5559, 5646, 5687, 5689.

Similar false tax reporting occurred in connection with the SWAPS tax shelter transaction of J&G client Michael Toporek in 2001. On December 28, 2001, J&G personnel sent to David Parse a letter of authorization directing the sale of 25.4% of the foreign currency in order to effectuate the proper mix of ordinary and capital loss sought by Toporek. Acting on that instruction, Parse caused the 25.4% of the foreign currency in Toporek's entity account to be sold. After AMEX prepared draft tax returns for Toporek's transaction and sent them to Paul Daugerdas on March 13, 2002, J&G associate John Beery reviewed the tax returns and the Toporek client file and believed a mistake was made by J&G in implementing the transaction. Beery consequently sent Donna Guerin an e-mail on March 13, 2002 — entitled "Stress inducing Work Related Question — pointing out the apparent J&G error in producing an incorrect mix of ordinary and capital losses.

Apparently realizing the implementation error, J&G sent David Parse on March 29, 2002, another letter of authorization dated December 28, 2001, directing that Deutsche Bank sell 47.2% of the foreign currency in Toporek's account. GX 201-394. Parse's assistant then sent the foreign currency desk at Deutsche Bank an e-mail dated April 4, 2002 regarding a "screwy Canadian [dollar] sale," which resulted in the bank effectuating a Canadian dollar sale of 47.2% of that foreign currency in Toporek's account on April 4, 2002, but which was fraudulently backdated to December 28, 2001, using the backdating euphemism "as of" December 28, 2001. GX 400-23; 401-10.

After being provided by David Parse's assistant with revised Toporek account statements and trade tickets (which included the "as of" dates), accountants at AMEX prepare revised tax returns for Toporek in April 2002, and send them on April 28, 2002 to John Beery at J&G, noting the "better" results reported in the revised returns. Toporek signed the tax returns with the losses predicated on the backdated transactions and caused them to be filed with the IRS on January 10,

-20-

2003.

Finally, the 2000 tax shelter transaction involving the Aronoff family involved deep involvement of Parse on the post year-end backdating of that transaction.  The steps of the backdating were as follows:

- December 14-26, 2000 — J&G faxed letters of authorization for Aronoff from J&G to Parse at Deutsche Bank, directing the purchase and sale of a specific percentage of Euros and Lucent Technology stock.  Purchases were effectuated by Parse in the amounts requested.

- On February 9, 2001, Donna Guerin faxed to Parse two letters of authorization dated December 2000, one with Guerin handwriting explaining that one version of the letter "was sent to you [in December 200]," while the other correcting letter "should have been sent to [Parse.]"

- As a result of the February 9, 2001 fax from Guerin, Parse caused Carrie Yackee to effectuate new purchases and sales of Euros and Lucent that were backdated using "as of" dates of December 22, 2000.  In addition, Yackee e-mailed the Deutsche Bank foreign currency desk requesting that the sale of Euros that had taken place through one Aronoff entity be "re-booked" in a different entity.[7]

- On March 13, 2001, Yackee faxed the revised Deutsche Bank statements — with the fraudulent "as of" dates — to accountants at BDO Seidman.  BDO prepared tax returns based on the fraudulent backdated transactions.  GX 401-49; 401-74; 401-75.

- On September 13, 2001, Donna Guerin of J&G sent Daniel Aronoff two tax opinion letters — both of which are based on the back-dated 2000 transactions.  Aronoff and his wife sign and filed the false return with the IRS in October 2001.

In addition to the above-described backdating — which any accountant knows and understands is flagrantly violative of the rule precludes the changing of the result of a transaction, for tax purposes, following the close of the tax year — the evidence of Parse's participation in the mail fraud and IRS obstruction was plentiful.  That proof included: Parse's use of his own "short options" tax shelter transaction with J&G, through which he attempted to evade taxes on the millions

---

[7]  Several of these documents contain David Parse's handwriting, as Yackee testified.  GX 401-99, 401-100; Tr. 5523-26, 5530.

he was paid as a result of the hundreds of transaction he was assisting in implementing; Parse's

receipt of a free opinion letter from J&G, which contained the same false and fraudulent

representations as the other clients who effectuated such transactions; Parse's implementation of

short sales, short options, SWAPS, and HOMER transactions for hundreds of J&G clients, which

he knew had no chance of earning the clients any money but were, instead, window dressing for the

tax-driven transactions;[8] Parse's statement to BDO's Paul Shanbrom (echoed by a similar statement

made by Craig Brubaker to Erwin Mayer) that if any client got close to hitting the so-called sweet

spot, Deutsche Bank would move the market and therefore see that no client had a chance of hitting

the so-called "lottery"; and Parse's presence at a meeting where J&G's Paul Daugerdas told client

and trial witness Dean Kasperzak (also a Parse client), that, "the profit potential was very low [in his

transaction] and that going forward, should we choose to go forward, if we were questioned about

the matter, that our intent was in fact to make a profit . . .",  Tr. 6244.

    The split verdict against David Parse made manifest the lack of prejudice from Brune &

Richard's choices.  Parse was convicted of only two of the six charges against him, and acquitted

of the conspiracy and all tax evasion charges.  Thus, the gamble made by Brune & Richard was

partially successful.  See United States v. Nerserian 824 F.2d 1294, 1322 (2d Cir. 1987) (lack of

---

    [8]  Evidence of Parse's understanding that the clients were in the transactions exclusively for
the tax losses and that the currency transaction was not a genuine investment included Parse's
providing to client and trial witness John Olmsted the choice of a couple of currencies to pick from
for Olmsted's transaction, essentially telling Olmsted, "pick either one, it's not going to matter."
Another example was Parse's involvement in the compilation and dissemination of a list of stocks
of high technology companies that had lost significant value in the dot-com bust — nicknamed "Dog
Tech Stocks" — to recommend to clients to purchase for their shelters.  This was done in order to
make it appear as if the losses from the transactions were attributable to the company performance
rather than to the sale of a capital asset that had fraudulently-inflated basis attached to it.  In other
words, if an auditor saw the huge loss attributable to the sale of the stock, she/he might conclude that
the loss was attributable to an investment gone sour rather than to a fraudulent tax shelter.

<u>Strickland</u> prejudice shown in part by fact that jury acquitted defendant of two of counts). <u>Cf.</u> <u>White</u> <u>v. Lee</u>, 238 F.3d 418, 2000 WL 1803290, at *7 (4th Cir. 2000) (Court of Appeals rejected ineffective assistance of counsel claim on ground that defense counsel's decision to call expert undercut argument that defendant was remorseful, pointing <u>inter alia</u> to fact that one juror was convinced of remorse argument).  In sum, defendant Parse cannot show that he was prejudiced within the meaning of <u>Strickland</u> by the conduct of his attorneys.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Defendant Parse's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Dated:   New York, New York
       September 4, 2012

                                   Respectfully submitted,

                                   PREET BHARARA
                                   United States Attorney
                                   Southern District of New York

By:     s/Nanette L. Davis
                                   Stanley J. Okula, Jr.
                                   Assistant United States Attorney
                                   (212) 637-1585
                                   stan.okula@usdoj.gov
                                   Nanette L. Davis
                                   Assistant United States Attorney
                                   (212) 637-1117
                                   nanette.l.davis@usdoj.gov

-23-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper or email copies will be sent to those indicated as non-registered participants on the above date, and that an electronic copy will be sent via e-mail to defendant Paul Daugerdas.

By:     s/Nanette L. Davis
STANLEY J. OKULA, JR.
Assistant United States Attorney
(212) 637-1585
stan.okula@usdoj.gov
NANETTE L. DAVIS
Special Assistant United States Attorney
(212) 637-1117
nanette.l.davis@usdoj.gov