# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA ⟩

v. ⟩

⟩   Case No.:  S3 09 Cr. 581 (WHP)

PAUL M. DAUGERDAS and
DENIS FIELD, ⟩

⟩   Hon. William H. Pauley III

Defendants. ⟩

_____ ⟩

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DENIS FIELD'S MOTION FOR A JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR SEVERANCE FROM THE RE-TRIAL OF THIS MATTER OF THE PERSONAL INCOME TAX CHARGES AGAINST PAUL DAUGERDAS

SHARON L. MCCARTHY (SLM-1527)
Kostelanetz & Fink, LLP
7 World Trade Center, 34th Floor
New York, New York 10007
(212) 808-8100

CESAR DE CASTRO (CD-5679)
The Law Firm of César de Castro
The Trump Building
40 Wall Street, 28th Floor
New York, New York 10005
(646) 512-5806

*Counsel for Denis Field*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.    A Judgment of Acquittal Should Be Granted as to All Counts in the Indictment ........... 1

    A.    Denis Field Was Not Proven Guilty of Counts One, Twenty and Twenty-Five ............................................................................................................. 3

    B.    Denis Field Was Not Proven Guilty of the Individual Taxpayer Counts .............. 6

II.    The Obstruction and Tax Evasion Counts Against Paul Daugerdas Should be Severed from the Re-Trial of this Matter Because the Proof of Daguerdas's Personal Tax Matters Is Unconnected to the Other Charges and Substantially Prejudicial to Denis Field ............................................................................. 8

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Spies v. United States*, 317 U.S. 492 (1943) ............................................................ 6, 7

*United States v. Attanasio*, 870 F.2d 809 (2d Cir. 1989) ............................................ 12

*United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005) ............................................ 9

*United States v. Cassesse,* 428 F.3d 92 (2d Cir. 2005) ................................................ 2

*United States v. D'Amato,* 39 F.3d 1249 (2d Cir. 1994) ............................................... 2

*United States v. Daugerdas*, No. S3 09 Cr. 581,

    2011 WL 666170 at *2 (S.D.N.Y. Feb.7, 2011) ................................................. 8

*United States v.* Feyrer, 333 F.3d 110 (2d Cir. 2003) .......................................... 10, 14

*United States v. Halper*, 590 F.2d 422 (2d Cir. 1978) ................................................. 9

*United States v. Jones,* 393 F.3d 107 (2d Cir. 2004) .................................................. 2

*United States v. Lane*, 474 U.S. 438 (1986) ............................................................. 10

*United States v. Mulheren*, 938 F.2d 364 (2d Cir. 1991) ............................................. 2

*United States v. Pinckney*, 85 F.3d 4 (2d Cir. 1996) .................................................. 2

*United States v. Porter*, 821 F.2d 968 (4th Cir. 1987) ............................................... 13

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) .................................................. 9

*United States v. Stewart,* 305 F. Supp.2d 368 (S.D.N.Y. 2004) ..................................... 2

*United States v. Turoff*, 853 F.2d 1037 (2d Cir. 1988) ............................................... 9

*Zafiro v. United States*, 506 U.S. 534 (1993) .......................................................... 13

## STATUTES

26 United States Code § 7201 ............................................................................. 6, 9

26 United States Code § 7212 ................................................................................ 8

Federal Rules of Criminal Procedure 14 ............................................................... 1, 10

Federal Rules of Criminal Procedure 29 .................................................................. 1

Federal Rules of Criminal Procedure 8 .................................................................. 1, 9

## INTRODUCTION

Defendant Denis Field ("Field") respectfully submits this memorandum of law in support of his motion for a judgment of acquittal pursuant to both Rules 29(a) and 29(c) of the Federal Rules of Criminal Procedure as to:  (a) Counts One, Twenty and Twenty-Five, which charge him with participating in a conspiracy to commit tax fraud, engaging in a corrupt endeavor to obstruct and impede the Internal Revenue laws, and committing mail fraud, all in relation to allegedly fraudulent tax shelters, including Swaps and HOMER; and (b) Counts Eight, Ten, Seventeen, and Eighteen, which charge him with participating in the tax evasion of four particular BDO clients.  In the alternative, Mr. Field moves pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure to sever from the re-trial of this matter Counts Twenty-One, Twenty-Two, Twenty-Three and Twenty-Four, which charge defendant Paul M. Daugerdas with crimes related to his personal income taxes.

## ARGUMENT

### I.   A Judgment of Acquittal Should Be Granted as to All Counts in the Indictment

A judgment of acquittal should be granted as to Counts One, Twenty and Twenty-Five of the Indictment[1] because the Government failed to prove that BDO or Mr. Field was involved with Swaps or HOMER tax shelters.  In addition, a judgment of acquittal should be granted as to the four counts relating to Mr. Field's participation in the tax evasion of four BDO clients because the Government not only failed to prove Mr. Field's involvement in any of the taxpayers' matters, but it also failed to prove venue – that any individual taxpayer named in

---

[1]      Unless otherwise specified, the particular Counts referenced in this motion are as to the Redacted Indictment (S3 09 Cr. 581(WHP)), which was provided to the jury during deliberations.

those counts prepared, signed, mailed, or filed their tax returns in the Southern District of New York.  On May 9, 2011, the Court reserved decision on Mr. Field's Rule 29(a) motion.  (Tr. 8318).  On June 7, 2011, Mr. Field submitted a motion pursuant to Rule 29(c) seeking a judgment of acquittal.  On July 15, 2011, the Court held in abeyance the briefing on all post-trial motions other than the Rule 33 motion for a new trial based on juror misconduct.  The Court has never issued a ruling on Mr. Field's Rule 29 motions.

A motion for acquittal must be granted if a reasonable jury could not have found the essential elements of the crimes charged beyond a reasonable doubt.  *See United States v. Cassesse,* 428 F.3d 92, 95 (2d Cir. 2005) (affirming judgment of acquittal where willfulness element was not proved beyond a reasonable doubt); *United States v. Jones,* 393 F.3d 107, 111 (2d Cir. 2004) (directing judgment of acquittal where there was insufficient evidence of defendant's involvement in charged conspiracy).  While the Court must view the evidence in the light most favorable to the government and draw reasonable inferences in the government's favor, the question is whether a reasonable juror, drawing only reasonable inferences, could have found against the defendant on each element of each charge beyond a reasonable doubt.  *See, e.g.*, *United States v. D'Amato,* 39 F.3d 1249, 1256 (2d Cir. 1994); *United States v. Stewart,* 305 F. Supp.2d 368, 376-78 (S.D.N.Y. 2004).   A conviction cannot "rest on mere speculation or conjecture," *United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir. 1996) (citations omitted), and the government must do more than introduce evidence that is "'at least as consistent with innocence as with guilt.'" *D'Amato*, 39 F.3d at 1256 (quoting *United States v. Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991)).

A. **Denis Field Was Not Proven Guilty of Counts One, Twenty and Twenty-Five**

No reasonable jury could have found Mr. Field guilty of Count One (conspiracy), Count Twenty (obstruction), or Count Twenty-Five (mail fraud), because the Government's evidence confirmed that he was not involved in Swaps or HOMER tax shelters, which are integral to each charge.   Because of the confusion caused by Mr. Field's inclusion in allegations pertaining to Swaps and HOMER, Mr. Field was wrongly convicted of these charges.

Before deliberations began, we argued, and the Court agreed, that the unredacted indictment contained numerous unproven acts and was confusing.  (McCarthy Decl., Exh. A (Letter dated May 8, 2011); Tr. 8348-8349).  The government in response redacted certain portions of the original indictment, but declined to redact portions that wrongly allege that Mr. Field participated in Swaps and HOMER transactions.  (Tr. 8852-8853).   The Court declined to direct the government to correct the indictment.  (Tr. 8853; 8933).  The government's decision not to prepare a properly redacted indictment resulted in the very confusion the Court sought to avoid. As a result, the Indictment that was sent into the jury room sweepingly, and inaccurately, alleges that Mr. Field participated in Swaps and HOMER tax shelters.

Some examples of the problems with the Indictment as it was sent to the jury are illustrative. The Indictment alleges in paragraph 23 that the defendants, including Mr. Field, "designed, marketed, and implemented fraudulent tax shelters known as Short Sale, Short Options Strategy ("SOS"), *Swaps and HOMER* tax shelters (collectively hereinafter "the J&G tax shelters")."   In paragraph 24, it is alleged that "[d]efendants [including Mr. Field] "designed, marketed, and implemented *the J&G tax shelters* [previously defined to include Swaps and HOMER]. . . ."

Paragraph 35 of the Indictment lays out the government's theory concerning "fraud in the design of the J&G tax shelters" and alleges that the defendants, including Mr. Field, "marketed the Short Sale, SOS, and *Swaps* tax shelters as a way to eliminate clients' taxes.  The use of the entities in the Short Sale, SOS and *Swap* tax shelters . . . was designed to achieve the desired tax loss in a manner that concealed the true nature of the tax shelters from the IRS."  Again, in paragraph 38, the Swaps are included in allegations concerning BDO.   And in paragraph 61 of the Indictment, which sets forth the mail fraud prong of the conspiracy, it is alleged that the defendants, including Mr. Field, caused matters and things to be deposited in the mail, "to wit, opinion letters, tax returns and related information, and bank-related documents for tax shelter clients who had executed Short Sale, SOS, *Swaps, and HOMER* tax shelters" and transmitted by means of wire "telephone calls, faxes, and e-mails related to the design, marketing, and implementation of the Short Sale, SOS, *Swaps, and HOMER* tax shelters . . . ."  Likewise, Count Twenty-Five, the mail fraud charge, specifically alleges that Mr. Field caused fraudulent information to be sent by mail "for tax shelter clients who had executed Short Sale, SOS, *Swaps, and HOMER* transactions."  These allegations were not and could not be proved since it is undisputed that neither Mr. Field nor BDO engaged in any transactions involving Swaps or HOMER.

Not only does the Indictment improperly sweep Mr. Field into charges related to the Swaps and HOMER transactions, but the government in putting on its case made scant effort to explain to the jury that Mr. Field and BDO had *zero* involvement with either of those transactions.   The result was that the jury improperly considered the evidence presented concerning Swaps and HOMER, which was significant, in convicting Mr. Field of participating in the charged

-4-

conspiracy.   Indeed, there were many days of testimony focused solely on the Swaps and HOMER transactions.

Nowhere is this broad sweep more apparent than in the government's main summation. First, in discussing the taxpayer witnesses, the government clumped together evidence pertaining to the short sale transactions and HOMER:  "We saw with Larry Morgan's short sale that Donna Guerin wrote a note that showed there was a planned time limit for his transaction, before the investment was ever made, and that short options and HOMER options were designed to last only 30 days."  (Tr. 8380).  After nearly two pages discussing the alleged lack of business purpose to the HOMER transaction (Tr. 8388-8389), the government stated, "It's not the end of the story with regard to business purpose, because you heard from members of the BDO tax solutions group that they discussed the need for business purpose and the lack of business purpose *in these transactions*."  (Tr. 8389).   The prosecutor segued into discussions within BDO concerning "wallpapering" the clients' files and stated, "Denis Field was part of these discussions."  (Tr. 8389-90).   See also ("The bottom line, ladies and gentlemen is that *all four of these shelters were illegal* . . . and *the defendants knew it*."  (Tr. 8398)). This method of clumping together the four charged transactions and failing to delineate clearly for the jury what proof did and did not apply to Mr. Field was unduly prejudicial.

The combination of the inaccurate allegations in the Indictment and the government's muddled arguments made it impossible for the jury, after ten weeks of complicated evidence, to cabin that proof to the J&G and Deutsche Bank defendants.   Because there is no way for the Court, or anyone else for that matter, to determine if the jury improperly considered the evidence

pertaining to the swaps and HOMER transactions when deciding the charges against Mr. Field, a judgment of acquittal should be entered as to Counts One, Twenty and Twenty-Five.

B.  **Denis Field Was Not Proven Guilty of the Individual Taxpayer Counts**

A judgment of acquittal likewise should be entered as to Mr. Field as to Counts Eight, Ten, Seventeen, and Eighteen which charge Mr. Field with participating in the tax evasion of four particular BDO clients:  (1) Larry Moore (Count Eight); (2) Wayne Harter (Count Ten); (3) John and Mary Anne Olmsted (Count Seventeen); and (4) William Saunders (Count Eighteen).  The government failed to prove, and indeed presented no proof, that Mr. Field was involved in any way with any of these individual taxpayers' tax matters.   Nor was there proof that Mr. Field participated in any way in responding to the IRS's Information Document Requests in connection with the audits of these taxpayers.   Accordingly, a judgment of acquittal should be entered as to each of these counts because there is no proof that Mr. Field's conduct in any way satisfied Section 7201's affirmative act of evasion element.

Title 26, United States Code, Section 7201 makes it a crime to "willfully attempt[] in any manner to evade or defeat any tax imposed by [Title 26]."  Thus, in order to convict Mr. Field of tax evasion in connection with the individual taxpayers, the jury had to find that Mr. Field committed an "affirmative act of evasion" in connection with those individuals' tax matters.  The Court charged the jury on this element of the offense.  (Tr. 8893).  In *Spies v. United States*, 317 U.S. 492 (1943), the Supreme Court set forth examples of "affirmative acts of evasion": "keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind,

[or other] conduct, the likely effect of which would be to mislead or to conceal." *Spies*, 317 U.S. at 499.   Mr. Field's conduct, which was far removed from the specific conduct at issue with the individual taxpayers' tax matters, does not satisfy the "affirmative act of evasion" requirement of Section 7201.  It would be an absurd result if Mr. Field could be held *criminally responsible* for the acts of every individual taxpayer who engaged BDO and, in the course of reporting their income, committed fraud.

Indeed, the Court charged the jury that in order to convict Mr. Field on any of these counts, it had to find, among other things, that Mr. Field "knew that the *relevant taxpayer* employed or would employ the strategy in question, took or would take a deduction attributable to that strategy on his tax return, and would have reported as substantially higher tax liability if the taxpayer had not done so."  (Tr. 8895) (emphasis added).   There simply was no evidence that Mr. Field had any knowledge whatsoever of any of these individual taxpayers or any facts pertaining to their tax matters and/or income.   Neither the cooperating witnesses nor the taxpayers themselves testified to having had any dealings with Mr. Field on these specific tax matters.  Each taxpayer at issue in these counts testified that he never met with nor spoke with Mr. Field and that he did not rely on Mr. Field in any way in entering into the tax transaction. (Tr. 5914 (Larry Moore); Tr. 1914-1915 (Wayne Harter); Tr. 3942 (John Olmsted); and Tr. 5806-5810 (William Saunders)).  Because no reasonable juror could have found that the government had proved the elements of these charges beyond a reasonable doubt, a judgment of acquittal must be entered as to Counts Eight, Ten, Seventeen and Eighteen.

In addition, for the reasons set forth in Paul Daugerdas's motion, a judgment of acquittal should be entered as to Counts Eight, Ten, Seventeen and Eighteen for lack of venue in the

Southern District of New York because there was no proof that any of these taxpayers prepared, signed, mailed, or filed their tax returns in the Southern District of New York.

**II.**     **The Obstruction and Tax Evasion Counts Against Paul Daugerdas Should be Severed from the Re-Trial of this Matter Because the Proof of Daguerdas's Personal Tax Matters Is Unconnected to the Other Charges and Substantially Prejudicial to Denis Field**

Should the Court deny Mr. Field's motion for a judgment of acquittal on all counts in the Indictment, the Court should sever from the re-trial of this matter the obstruction and tax evasion counts against Paul Daugerdas. This Court, having observed the actual evidence at trial, should conclude that the Daguerdas obstruction and tax evasion counts are: (1) not in the same series of acts or transactions, or even connected to the other charges in the Indictment; and (2) including those counts in the re-trial will result in overwhelming prejudice to Mr. Field. Accordingly, this Court should hold that those counts were misjoined and should be severed from the re-trial.

Before the trial of this matter commenced, Mr. Field and other defendants moved this Court to sever Count Twenty-One of the Redacted Indictment (previously Count Twenty-five), which charges Paul Daugerdas with a Corrupt Endeavor to Obstruct and Impede the Internal Revenue Laws under 26 U.S.C. § 7212(a). The Court denied that motion on the ground that "the Government's proof regarding Daugerdas's obstruction is not inflammatory and is similar to evidence the Government will offer on the Count 1 conspiracy against all Defendants. Therefore, it is not unfairly prejudicial." *U.S. v. Daugerdas*, No. S3 09 Cr. 581, 2011 WL 666170 at *2 (S.D.N.Y. Feb.7, 2011). Now that the Court has presided over a 10 week trial and heard the evidence of Mr. Daugerdas's unrelated conduct pertaining to his personal tax matters, it is easy to conclude that the evidence as to not only Count Twenty-One but also Counts Twenty-Two through Twenty-Four, which charge Daugerdas with tax evasion for years 1999,

-8-

2000 and 2001, in violation of 26 U.S.C. § 7201, was unfairly prejudicial to Mr. Field and not

similar to or even related to the evidence elicited against Mr. Field in the conspiracy count or any

other count of the Indictment.  Accordingly, these counts should be severed from the Indictment

and tried separately.  Absent such a severance, Mr. Field will be denied a fair trial.

 Federal Rule of Criminal Procedure 8(a) permits joinder of offenses in an indictment "if

the offenses charged . . . are of the same or similar character, or are based on the same act or

transaction, or are connected with or constitute parts of a common scheme or plan."  Rule 8(b)

allows joinder of defendants if the defendants "are alleged to have participated in the same act or

transaction, or in the same series of acts or transactions, constituting an offense or offenses."

Fed. R. Crim. P. 8(b).  "[W]hen a defendant in a multiple-defendant case challenges joinder of

offenses, his motion is made under 8(b) rather than 8(a)."  *United States v. Turoff*, 853 F.2d

1037, 1043 (2d Cir. 1988).  Counts are considered involving the same series of acts or

transaction, or "connected," if (1) one offense depends upon the other, (2) one offense led to the

commission of the other, or (3) if the proof of one offense constitutes or depends on the proof of

the other.  *See U.S. v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007) (citing *U.S. v. Halper*, 590 F.2d

422, 429 (2d Cir. 1978)).  Joinder is not appropriate simply because evidence of one offense

might be relevant to determining a defendant's *mens rea* for other offenses if the counts are not

unified by some common fact or arise out of a common scheme or plan.  *See Shellef*, 507 F.3d at

100.  Where there has already been a trial, the court need not rely solely on the face of the

indictment but may look at the evidence actually adduced at trial in finding misjoinder.  *See, e.g.*,

*id.* (court looked to evidence presented at trial in finding misjoinder); *United States v. Cardwell*,

433 F.3d 378, 385 (4th Cir. 2005) (misjoinder is determined based on allegations in indictment,

pretrial factual proffers made by the government, and evidence produced at trial).    Even if the

Court concludes that joinder is proper, if "the joinder of offenses . . . in an indictment . . . appears

to prejudice a defendant . . ., the court may order separate trials of counts . . . ."  Fed. R. Crim. P.

14(a).  "Unless the standards set out in Rule 8(b) are met, a motion for severance should be

granted even absent a showing of prejudice."  *United States v.* Feyrer, 333 F.3d 110, 113 (2d Cir.

2003) (citing *United States v. Lane*, 474 U.S. 438, 449 n. 12 (1986)).  As discussed in detail

below, these counts were misjoined and Mr. Field did suffer substantial prejudice at the first trial

and will suffer that same substantial prejudice should the Daugerdas tax counts be included in

this re-trial.

The charges against Paul Daugerdas for obstructing and impeding the IRS and tax

evasion all relate to his *personal* income tax returns for tax years 1994 through 2005.   Among

the specific allegations against Daugerdas are that, despite the fact that he earned significant

income in each tax year at issue, on a number of occasions he (1) reported either zero or negative

taxable income on his Forms 1040 (Indictment, ¶¶ 74, 75, 76, 80, 88, 92, 96, 100); (2) caused his

personal corporations to issue false and fraudulent K-1s for submission to the IRS (Indictment ¶¶

79, 86, 87, 91, 95. 99); and (3) on one occasion, fraudulently sought a refund of nearly $1 million

from the IRS.  (Indictment ¶100).

On the face of the Indictment, one might surmise that the government's proof could have

*some* connection to the charges against Mr. Field since, in reporting his personal income,

Daugerdas used two of the shelters at issue:  the short sale and the SOS.  However, nothing could

be further from the truth.  The proof against Daugerdas on Counts Twenty-One through Twenty-

Four came in through the testimony of IRS Revenue Agent Valerie Catanzaro, who testified on

May 5, 2011 and May 9, 2011 about Daugerdas's tax filings. (Tr. 7950 – 7983; 8139-8165).

Agent Catanzaro testified as to the specific details of each of Daugerdas's personal tax returns

and the returns of his various corporate entities, including Treasurex Financial Limited, DP

Investors Partnership, Omanko Partners, PMD Chartered, PMD Franklin Partners and others.

The details of the tax returns discussed in her testimony were set out in a 66-page power point

presentation, Government Exhibit 1993-25, which neither referenced nor was otherwise related

in any way to Mr. Field or BDO.  (McCarthy Decl., Exh. B).

  The details of each tax year testified to by Agent Catanzaro illustrated the lack of

connection between Daugerdas's personal tax situation and the charges against Mr. Field.   For

one, Daugerdas declared losses on his personal tax returns *every year for nine years* from 1993

through 2001.   The repeated use of tax shelters and the scale of income at issue were completely

disproportionate to the evidence presented as to Mr. Field and his co-defendants throughout the

trial.  The total combined tax deficiency for the *18 individual taxpayers* was approximately $25

million, while Daugerdas *alone* incurred a personal tax deficiency over a nine-year period of

nearly $33 million.  (Tr. 8167-8177; McCarthy Decl., Exh. C (Govt Exh. 22-4F)).  It is difficult

to appreciate how staggering this figure is, and how disparate it was from the proof adduced

against Mr. Field throughout this lengthy trial, unless one sits through a government power point

presentation that painstakingly walks a jury through nine years of tax reporting.

The government's power point presentation ended with a wallop at the very last slide, in which the following summary for the nine tax years was shown to the jury:

### Paul Daugerdas Tax Years 1993 – 2001
### Income Tax Overview

| | |
|---|---|
| **Total Income Received** | $99,987,520 |
| **Total Tax Shelter Losses Taken** | ($86,119,983) |
| **Total Taxable Income Reported Per Original Returns** | ($ 3,316,516) |
| **Total Income Tax Per Original Returns** | $ 7,315 |
| **Total Alleged Taxable Income** | $83,516,663 |
| **Alleged Tax Deficiency on Alleged Taxable Income** | $32,833,096 |

The sheer scale of Daugerdas's conduct, in which he declared $7,315 in income when he in fact earned nearly $100 million in income, was entirely disproportionate to the proof presented in connection with the various individuals' use of the tax shelters at issue in the charges involving Mr. Field. Although Daugerdas used short sale and SOS shelters, it is his repeated and, the government argued, abusive use of those shelters that stands in stark contrast to the other proof presented during the 10 weeks of trial. Indeed, it has nothing whatsoever to do even with Mr. Field's single use in tax year 2000 of a tax shelter, a tax year in which he owes no tax to the IRS. (Tr. 8177-8178) (tax loss of $1.2 million claimed in 2000; amount of tax due ultimately paid through amended return filed in 2007).

At trial, the government's proof failed, indeed it did not even attempt to show, that Daugerdas's conduct in connection with his *personal* tax returns was based on "the same act or transaction, or [o]n the same series of acts or transactions" as those at issue in the rest of the indictment, as required for joinder under Rule 8(b). Where, as here, the charges pertaining to Daugerdas's personal tax returns are "not sufficiently 'unified by some substantial identity of facts or participants' and do not 'arise out of a common scheme or plan', they should not be joined. *See United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) (quoting *United States*

-12-

*v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987)).  Despite this failure of proof, and despite the fact

that Mr. Field had zero involvement with Daugerdas's personal tax matters, the government in its

summation put this evidence to great use in prejudicing the jury against Mr. Field.  The

government argued in summation,

> "Let me show you the taxes avoided by one person, Mr. Daugerdas . . . . Using these tax
> shelters, he succeeded in converting that $2,900 into $86 million of tax loss. . . .  *[T]his is
> an egregious example of how this sophisticated group of defendants* who are familiar
> with the tax system, who knew the tax code, who knew that economic substance doctrine,
> *how **they** cheated the IRS*.  They knew exactly what they were doing at all times.  *And
> now **they're** trying to convince all of you that **they** really thought that the tax code would
> let you translate a financial loss of less than $3,000 into an $86 million tax loss.  **These
> are the crackers of the code, ladies and gentlemen.***"

(Tr. 8403-8404) (emphasis added).

Mr. Field's defense was and continues to be that he had a good faith belief in the

lawfulness of the short sale and SOS transactions.  In the face of the sheer numbers at issue in

Daugerdas's personal tax matters, and in light of the government's intentional muddying of Mr.

Field in its arguments to the jury about Daugerdas's actions, no limiting instruction can insure

that jurors will not, and did not, in the face of the enormous amount of income sheltered by Mr.

Daugerdas over a nine-year period, impute that conduct to Mr. Field and unfairly reject his

defense.   As a result, there is a serious risk that a trial including the personal tax counts against

Daugerdas will "prevent the jury from making a reliable judgment about [Mr. Field's] guilt or

innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  There is no question that proof

concerning Daugerdas's personal tax matters would not be relevant or admissible at a trial

against Mr. Field alone.   Finally, severance would not lead to "the evidence at one trial

essentially duplicat[ing] the evidence at the other."  *United States v. Feyrer*, 333 F.3d 110, 114

(2d Cir. 2003).  The government's proof against Daugerdas concerning his personal tax returns came in through a single witness.  That trial, then, would be substantially shorter than the trial of the other charges in the Indictment.

Because the charges pertaining to Paul Daugerdas's personal tax matters were misjoined with the charges against Mr. Field, and because Mr. Field did in fact suffer substantial prejudice in the first trial and will suffer substantial prejudice at the re-trial if proof of that unrelated conduct is admitted, his motion to sever the trial of Counts Twenty-One through Twenty-Four should be granted.

-14-

## <u>CONCLUSION</u>

For all of the foregoing reasons, a judgment of acquittal should be entered in Mr.

Field's favor as to all charges against him in the Indictment.  In the alternative, Mr. Field's

motion to sever Counts Twenty-One through Twenty-Four should be granted.  Finally, Mr. Field

joins the arguments of Paul Daugerdas in his motion, to the extent applicable to him.

Dated: New York, New York
     February 22, 2013               Respectfully Submitted,


*/s/ Sharon L. McCarthy*
Sharon L. McCarthy
KOSTELANETZ & FINK LLP
7 World Trade Center, 34th Floor
New York, New York 10007
Phone: 212-808-8100
smccarthy@kflaw.com

Cesar de Castro
THE LAW FIRM OF CÉSAR DE CASTRO
The Trump Building
40 Wall Street, 28th Floor
New York, New York 10005
(646) 512-5806
cdecastro@cdescastrolaw.com

*Counsel for Denis M. Field*

-15-