on or about December 29, 1998, and proposed that DAUGERDAS and A&G exchange mutual

releases of claims in connection with DAUGERDAS's resignation from the firm.

**B.**     **The Receipt of Income and Creation and Use of Fraudulent Tax Shelter Losses Through Treasurex**

81.     In reporting $400,000 in income on Treasurex's 1998 U.S. Income Tax Return

for an S corporation, Form 1120S, defendant PAUL DAUGERDAS falsely and fraudulently failed

to report that income on Line 1a, the gross receipts line.  Instead, DAUGERDAS netted the fee

income against approximately $449,000 in false and fraudulent losses created in Treasurex through

the sale of additional amounts of Treasurex's foreign currency.  Consequently, DAUGERDAS

caused Treasurex to issue to him, as the shareholder of Treasurex, an IRS Form K-1 reporting a false

and fraudulent loss of $62,239.

**C.**     **The Creation and Use of Fraudulent Tax Shelter Losses Through PMD Chartered**

82.     In or about late 1998, defendant PAUL DAUGERDAS caused various entities

he controlled to engage in a Short Sale tax shelter in order to generate approximately $1,013,200 in

fraudulent basis in PMD Chartered.  Through the sale of foreign currency, to which the fraudulent

basis from the short sale attached, DAUGERDAS thereafter generated false and fraudulent losses

in PMD Chartered in the approximate amount of $1,013,200.  Those PMD Chartered losses flowed

through to DAUGERDAS's U.S. Individual Income Tax Return, Form 1040, which, combined with

the fraudulent losses produced through Treasurex, served to falsely and fraudulently reduce

DAUGERDAS's individual income tax liabilities.  More particularly, notwithstanding the receipt

of the $400,000 in fee income from Shelter Promoter A and $994,688 in partnership income from

A&G, DAUGERDAS reported a taxable income of negative $212,446 (-$212,446), and paid approximately $35,197 in taxes.

## VII.   THE 1999 TAX YEAR

### A.   The Use of PMD Chartered by Defendant DAUGERDAS to Receive Income from J&G and Create Fraudulent Tax Shelter Losses

83.     Pursuant to the terms of defendant PAUL DAUGERDAS's employment contract with J&G and the tax shelter activities of DAUGERDAS, J&G paid PMD Chartered approximately $19,316,188 in income for the 1999 tax year.

84.     On July 1, 1999, defendant PAUL DAUGERDAS formed PMD Investment Partners ("PMDI-Partners"), a partnership of which DAUGERDAS was 99% partner and PMD Chartered a 1% partner.  On or about July 13, 1999, DAUGERDAS engaged in a $10,000,000 short sale of U.S. Treasury Notes through PMD Investments, LLC, a newly-formed limited liability company ("PMDI-LLC").  On the same day, DAUGERDAS caused the short sale position to be contributed to PMDI-Partners, resulting in the creation of approximately $10,000,000 in fraudulent basis.  On or about July 15, 1999, DAUGERDAS closed out the short sale position in PMDI-Partners.

85.     On or about October 19, 1999, defendant PAUL DAUGERDAS engaged in a $5,000,000 short sale of U.S. Treasury Notes through PMDI-LLC.  On October 20, 1999, DAUGERDAS  caused the short sale position to be contributed to PMDI-Partners, resulting in the creation of approximately $5,000,000 in additional fraudulent basis.  On or about October 27, 1999, DAUGERDAS closed out the $5,000,000 short sale position in PMDI-Partners.

86.     On or about December 7, 1999, defendant PAUL DAUGERDAS engaged in

-52-

a $5,000,000 SOS tax shelter through PMDI-LLC and Deutsche Bank in New York, paying Deutsche Bank a .75% net premium of $37,500. On or about December 9, 1999, DAUGERDAS caused the options positions to be contributed to PMDI-Partners, resulting in the creation of approximately $5,000,000 in additional fraudulent basis in PMDI-Partners. On or about December 17, 1999, the options expired.

87. On or about December 22, 1999, defendant PAUL DAUGERDAS transferred his interest in PMDI-Partners to PMD Chartered and caused the sale by PMD Chartered of some of the foreign currency, to which the fraudulent basis from the 1999 Short Sale and SOS tax shelters had attached.

88. On PMD Chartered's 1999 U.S. Income Tax Return for an S Corporation, defendant PAUL DAUGERDAS fraudulently omitted the $19,316,188 in fee income paid to it by J&G from Line 1a, the gross receipts line, of the tax return. Instead, in order to keep that multi-million dollar income item, as well as $20,215,043 in fraudulent tax shelter losses, off the front page of the return, DAUGERDAS netted the fee income and tax shelter losses on a handwritten schedule attached to the return and reported a net loss of $1,023,963 on the front page of the return. DAUGERDAS, who signed the 1999 PMD Chartered tax return under penalty of perjury and filed it with the IRS, caused PMD Chartered to issue to him individually a Form K-1 reporting a fraudulent loss for him, as the shareholder of PMD Chartered, of $1,023,963.

**B.      The Use of Treasurex by Defendant DAUGERDAS to Receive Income and Create Fraudulent Tax Shelter Losses**

89. On Treasurex's 1999 U.S. Income Tax Return for an S Corporation, Form 1120S, defendant PAUL DAUGERDAS fraudulently omitted the $2,270,000 in fee income paid to

Treasurex by Shelter Promoter A from Line 1a, the gross receipts line, of that tax return. Instead, in order to keep that multi-million dollar income item, as well as $2,267,239 in fraudulent tax shelter losses from the sale of inflated basis currency, off the front page of the Treasurex tax return, DAUGERDAS netted the fee income and tax shelter losses on a handwritten schedule attached to the Treasurex return and reported a net loss of $2,435 on the front page of that return. DAUGERDAS, who signed the 1999 Treasurex tax return under penalty of perjury and filed it with the IRS, caused Treasurex to issue to him individually a Form K-1 reporting a fraudulent loss for him, as the shareholder of Treasurex, of $2,435.

90.     As a result of the false and fraudulent losses reported by defendant PAUL DAUGERDAS on the PMD Chartered and Treasurex tax returns and Forms K-1, DAUGERDAS reported a taxable income of negative $698,771 (-$698,771) and total tax of $4,997 on the 1999 U.S. Individual Income Tax Return, Form 1040, that he prepared for himself, signed under penalty of perjury, and filed with the IRS on or about October 15, 2000.

## VIII.   THE 2000 TAX YEAR

91.     Pursuant to the terms of defendant PAUL DAUGERDAS's employment contract with J&G and the tax shelter activities of DAUGERDAS, J&G paid PMD Chartered approximately $50,297,509 in income for the 2000 tax year.

92.     On or about February 23, 2000, defendant PAUL DAUGERDAS caused the formation of Forest Lane Partners and Franklin Forest Partners, partnerships of which DAUGERDAS was 99% partner and PMD Chartered a 1% partner. On or about November 20, 2000, DAUGERDAS engaged in a $50,000,000 SOS tax shelter through PMDI-LLC and Deutsche Bank in New York, paying Deutsche Bank a 1% net premium of $500,000. On or about November

21, 2000, DAUGERDAS caused PMDI-LLC to contribute the long and short option positions to Forest Lane Partners. Following the December 7, 2000 termination of the options, DAUGERDAS caused Forest Lane partners to purchase certain foreign currency. On or about December 21, 2000, DAUGERDAS transferred his 99% interest in Forest Lane Partners to PMD Chartered, which caused the liquidation of Forest Lane. On or about December 29, 2000, DAUGERDAS caused PMD Chartered to sell various foreign currency, to which the fraudulent basis from the 2000 short options transaction had attached.

93.    On PMD Chartered's 2000 U.S. Income Tax Return for an S Corporation, Form 1120S, defendant PAUL DAUGERDAS fraudulently omitted the $50,297,509 in fee income paid to it by J&G from Line 1a, the gross receipts line, of the tax return. Instead, in order to keep that multi-million dollar income item, as well as $41,594,649 in fraudulent tax shelter losses from the sale of the foreign currency, off the front page of the return, DAUGERDAS netted the fee income (less approximately $8,950,000 he caused PMD Chartered to pay to co-conspirator Donna Guerin) and tax shelter losses on a handwritten schedule attached to the return and reported a net loss of $1,319,259. DAUGERDAS, who signed the 2000 PMD Chartered tax return under penalty of perjury and filed it with the IRS, caused PMD Chartered to issue a Form K-1 reporting a fraudulent loss to him, as the shareholder of PMD Chartered, of $1,319,259.

94.    As a result of the false and fraudulent losses reported on the 2000 PMD Chartered income tax return and Form K-1, defendant PAUL DAUGERDAS reported a taxable income of negative $894,048 (-$894,048) and total tax of $0 on the 2000 U.S. Individual Income Tax Return, Form 1040, that he prepared for himself, signed under penalty of perjury, and filed with the IRS on or about October 15, 2001.

## IX.   THE 2001 TAX YEAR

95.   Pursuant to the terms of defendant PAUL DAUGERDAS's employment contract with J&G and the tax shelter activities of DAUGERDAS, J&G paid PMD Chartered approximately $19,980,552 in income for the 2001 tax year.

96.   On or about December 7, 2001, defendant PAUL DAUGERDAS engaged in a $25,000,000 SOS tax shelter through PMDI-LLC and Deutsche Bank in New York, paying Deutsche Bank a 1% net premium of $250,000. Also on or about December 7, 2001, DAUGERDAS caused PMDI-LLC to contribute the long and short option positions to Franklin Forest Partners. On or about December 21, 2001 DAUGERDAS caused Franklin Forest Partners to purchase certain foreign currency. Following the termination of the options on or about December 27, 2001, DAUGERDAS transferred his 99% interest in Franklin Forest Partners to PMD Chartered, which caused the liquidation of Franklin Forest Partners. Between on or about December 28 and December 29, 2001, DAUGERDAS caused PMD Chartered to sell various foreign currency, to which the fraudulent basis from the 2000 and 2001 SOS tax shelters had attached.

97.   On PMD Chartered's 2001 U.S. Income Tax Return for an S Corporation, Form 1120S, defendant PAUL DAUGERDAS fraudulently omitted the $19,980,552 in fee income paid to it by J&G from Line 1a, the gross receipts line, of the PMD Chartered tax return. Instead, in order to keep that multi-million dollar income item, as well as $17,278,476 in fraudulent tax shelter losses from the sale of the inflated basis currency, off the front page of the return, DAUGERDAS netted the fee income (less approximately $4,000,000 he caused PMD Chartered to pay to co-conspirator Donna Guerin) and tax shelter losses on a handwritten schedule attached to the return and reported a net loss of $1,735,383. DAUGERDAS, who signed the 2001 PMD Chartered

tax return under penalty of perjury and filed it with the IRS, caused PMD Chartered to issue a Form K-1 reporting a fraudulent loss for DAUGERDAS, as the shareholder of PMD Chartered, of $1,735,383.

98.     As a result of the false and fraudulent losses reported on the 2001 PMD Chartered income tax return and Form K-1, defendant PAUL DAUGERDAS reported a taxable income of negative $1,238,813 (-$1,238,813) and total tax of $0 on the 2001 U.S. Individual Income Tax Return, Form 1040, that he prepared for himself, signed under penalty of perjury, and filed with the IRS on or about October 15, 2002.

## X.     THE 2002 TAX YEAR

99.     Pursuant to the terms of defendant PAUL DAUGERDAS's employment contract with J&G and the tax shelter activities of DAUGERDAS, J&G paid PMD Chartered approximately $2,849,385 for the 2002 tax year.

100.     On PMD Chartered's 2002 U.S. Income Tax Return for an S Corporation, Form 1120S, defendant PAUL DAUGERDAS reported fee income of $2,849,385 and total deductions of $886,242, resulting in the issuance of a Form K-1 reporting net income to DAUGERDAS, as the shareholder of PMD Chartered, of $1,963,244.  As a result of this income on the Form K-1, DAUGERDAS reported a taxable income of $1,553,158 and a total tax of $967,915 on the 2002 U.S. Individual Income Tax Return, Form 1040, that he signed under penalty of perjury and filed with the IRS on or about October 16, 2003.  He deducted no tax shelter losses on this return.

101.     On or about November 15, 2003, defendant PAUL DAUGERDAS signed

-57-

under penalty of perjury and filed with the IRS an amended U.S. Income Tax Return, Form 1120S, for PMD Chartered, on which he deducted fraudulent losses from his 2002 tax shelters. More particularly, on that amended return, DAUGERDAS fraudulently omitted the $2,849,385 in fee income paid to it by J&G from Line 1a, the gross receipts line, of the tax return. Instead, in order to keep that multi-million dollar income item, as well as the $3,506,089 in fraudulent tax shelter losses stemming from the sale of certain inflated-basis foreign currency, off the front page of the return, DAUGERDAS netted the fee income and tax shelter losses on a handwritten schedule attached to the return and reported a net loss of $1,542,845. DAUGERDAS caused PMD Chartered to issue a Form K-1 reporting a fraudulent loss for DAUGERDAS, as the shareholder of PMD Chartered, of $1,542,845.

102.   As a result of the false and fraudulent losses reported on the amended 2002 PMD Chartered tax return and Form K-1, defendant PAUL DAUGERDAS reported a taxable income of negative $2,174,011 (-$2,174,011) and a total tax of $0, and sought a refund of $967,915, on an amended 2002 U.S. Individual Income Tax Return, Form 1040X, that he signed under penalty of perjury and filed with the IRS on or about January 12, 2004.

### Statutory Allegations

103.   From in or about 1994 through in or about October 2005, in the Southern District of New York and elsewhere, PAUL DAUGERDAS, the defendant, did corruptly obstruct and impede, and endeavor to obstruct and impede, as set forth above, the due administration of the Internal Revenue Laws.

(Title 26, United States Code, Section 7212(a).)

-58-

## COUNTS TWENTY THROUGH TWENTY-TWO
### (Tax Evasion — DAUGERDAS)

The Grand Jury further charges:

104.    The allegations set forth in paragraphs 27 through 29, 78 through 80, and 83 through 98 are repeated and realleged as if fully set forth herein.

### Statutory Allegations

105.    From in or about January 1, 1999, through at least in or about 2004, in the Southern District of New York and elsewhere, PAUL DAUGERDAS, the defendant, willfully and knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by him to the United States of America for the calendar years set forth below by various means, including among others:

a)    designing and implementing tax shelters, which involved financial transactions effectuated with Deutsche Bank in New York, New York, in order to generate tens of millions of dollars of tax losses that DAUGERDAS knew could not properly be deducted on his income tax returns because, among other reasons, the tax shelters lacked economic substance and were not entered into by DAUGERDAS with the requisite profit motive;

b)    creating and utilizing entities, including limited liability companies, partnerships, and S corporations, that served no legitimate business purpose, but were used by DAUGERDAS merely to obtain tax benefits for himself;

c)    preparing, signing, and filing with the IRS false and fraudulent U.S. Income Tax Returns for an S Corporation, Forms 1120S, for Paul M. Daugerdas Chartered for the

-59-

calendar years 1999-2001, which falsely and misleadingly reported fee income received from J&G and tax shelter losses generated by DAUGERDAS;

d)      preparing, signing, and filing with the IRS false and fraudulent U.S. Individual Income Tax Returns, Forms 1040, for the calendar years set forth below, which understated DAUGERDAS's taxable income and the tax due and owing thereon; and

e)      taking various steps to conceal from the IRS the existence of the tax shelters and their true facts, including, but not limited to, providing and causing to be provided false and misleading information in response to IRS investigations and inquiries.

| COUNT | SHELTER TYPE | TAX RETURN | APPROX. FILING DATE OF RETURN | APPROX. AMOUNT OF FRAUDULENT TAX SHELTER LOSS |
|---|---|---|---|---|
| 20 | SHORT SALE/SOS | 1999 1040 | 10/14/00 | $22,482,282 |
| 21 | SOS | 2000 1040 | 10/15/01 | $41,594,000 |
| 22 | SOS | 2001 1040 | 10/10/02 | $17,278,000 |

(Title 26, United States Code, Section 7201.)

## COUNT TWENTY-THREE
### (Mail Fraud — DAUGERDAS and FIELD)

The Grand Jury further charges:

106.    The allegations set forth in paragraphs 1 through 58, 63a through 63k, and 64a through 64nn, are repeated and realleged as if fully set forth herein.

-60-

107.    From in or about 1998 through in or about October 2005, in the Southern District of New York and elsewhere, PAUL DAUGERDAS and DENIS FIELD, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to defraud the IRS through the design, marketing, and implementation of the above-described fraudulent tax shelter transactions, for the purpose of executing such scheme and artifice and attempting to do so, placed and caused to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposited and caused to be deposited matters and things to be sent and delivered by private and commercial interstate carrier, and knowingly caused such matters and things to be delivered by mail and by such carrier according to the direction thereon and at the place at which it was directed to be delivered, to wit, on multiple occasions, the defendants sent, and caused to be sent, via the United States mail and private and commercial interstate carriers, opinion letters, tax returns and related information, and bank-related documents for tax shelter clients who had executed Short Sale and SOS tax shelters, and defendant DAUGERDAS sent, and caused to be sent, via the United States mail and private and commercial interstate carriers, opinion letters, tax returns and related information, and bank-related documents for tax shelter clients who had executed Swaps and HOMER tax shelters.

(Title 18, United States Code, Sections 1341 and 2.)

## FORFEITURE ALLEGATIONS

108.    As the result of committing the conspiracy and mail fraud offenses alleged

in Counts One and Twenty-Three of this Indictment, in violation of Title 18, United States Code,

Sections 371 and 1341, PAUL DAUGERDAS and DENIS FIELD, the defendants, shall forfeit to

the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461,

all property, real and personal, that constitutes or is derived from proceeds traceable to the

commission of the offenses, including but not limited to the following:

a.    At least $180,000,000 in United States currency, in that such sum in

aggregate is property representing the amount of proceeds obtained as a result of the conspiracy to

commit the mail and wire fraud offenses contained in Count One and the mail fraud offense

contained in Count Twenty-Three, for which the defendants are jointly and severally liable;

**I.    PAUL DAUGERDAS**

b.    All that lot or parcel of land, together with its buildings,

appurtenances, improvements, fixtures, attachments and easements, located at 619 Cedar Point

Drive, Williams Bay, Wisconsin 53191, more particularly described as a single-family home owned

by PAUL DAUGERDAS and/or family members, either directly or indirectly;

c.    All United States currency, funds, or other monetary instruments on

deposit in account number 020-31659-2 in the name of Forest Investors LLC at Goldman Sachs &

Co.;

d.    All United States currency, funds, or other monetary instruments on

deposit in account number 020-50725-7 in the name of Michael Paul Daugerdas at Goldman

Sachs & Co.;

-62-

       e.     All United States currency, funds, or other monetary instruments on deposit in account number 03-375152 in the name of PMD Investments LLC at Fidelity;

       f.     All United States currency, funds, or other monetary instruments on deposit in account number Z46-623261 in the name of Eleanor Spina Daugerdas Trust U/A 05/23/85 at Fidelity, formerly held in account number 03-315540 in the name of Eleanor Daugerdas at Fidelity;

       g.     All United States currency, funds, or other monetary instruments on deposit in account number 766-935530 in the name of PAUL M. DAUGERDAS at TD Ameritrade;

       h.     All United States currency, funds, or other monetary instruments on deposit in account number 06-78C3Z in the name of PMD Investments LLC at Morgan Stanley;

       i.     All United States currency, funds, or other monetary instruments on deposit in account number 5XR 122063 in the name of PMD Investments LLC at Deutsche Bank;

       j.     All United States currency, funds, or other monetary instruments on deposit in account number 3960-1400001511 in the name of PAUL M. DAUGERDAS for the benefit of Nicole K. Daugerdas at Putnam Fiduciary Trust;

       k.     All United States currency, funds, or other monetary instruments on deposit in account number 3960-0488483198 in the name of PAUL M. DAUGERDAS for the benefit of Daniel W. Daugerdas at Putnam Fiduciary Trust;

l.      All United States currency, funds, or other monetary instruments on deposit in account number 3968-0357819711 in the name of PAUL M. DAUGERDAS for the benefit of Michael P. Daugerdas at Putnam Fiduciary Trust;

m.      All United States currency, funds, or other monetary instruments on deposit in account number 3973-0357661803 in the name of PAUL M. DAUGERDAS for the benefit of Alexander P. Jeffrey at Putnam Fiduciary Trust;

n.      All United States currency, funds, or other monetary instruments on deposit in account number 3975-0357804838 in the name of PAUL M. DAUGERDAS for the benefit of Eleanor M. Daugerdas at Putnam Fiduciary Trust;

o.      All United States currency, funds, or other monetary instruments on deposit in account number 3975-0357820510 in the name of PAUL M. DAUGERDAS for the benefit of Courtney M. Daugerdas at Putnam Fiduciary Trust;

p.      All United States currency, funds, or other monetary instruments on deposit in account number 3976-0357817116 in the name of PAUL M. DAUGERDAS for the benefit of Megan A. Jeffrey at Putnam Fiduciary Trust;

q.      All United States currency, funds, or other monetary instruments on deposit in account number 7232735006 in the name of PAUL M. DAUGERDAS at Fifth Third Bank;

r.      All right, title, and interest in Credit Suisse Catalytic Investors LP Fund held in the name of PAUL M. DAUGERDAS/Treasurex Financial;

s.      All United States currency, funds, or other monetary instruments on

deposit in account number 383-25091-15 in the name of PMD Investments LLC at Morgan Stanley Smith Barney;

t.      All United States currency, funds, or other monetary instruments on deposit in account number 383-47731-15 in the name of PMD Investments LLC at Morgan Stanley Smith Barney;

u.      All United States currency, funds, or other monetary instruments on deposit in account number 4XDG in the name of Eleanor Daugerdas at Goldman Sachs;

v.      All United States currency, funds, or other monetary instruments on deposit in account number 24-N0018007 in the name of PMD Investments LLC at Credit Suisse/Pershing;

w.      All United States currency, funds, or other monetary instruments on deposit in account number 5XR-087746 in the name of PMD Investments LLC at Deutsche Bank;

x.      All United States currency, funds, or other monetary instruments on deposit in account number 5XR-104715 in the name of PMD Investments LLC at Deutsche Bank;

y.      All United States currency, funds, or other monetary instruments on deposit in account number 7233463814 in the name of Eleanor L. Daugerdas at Fifth Third Bank;

z.      All United States currency, funds, or other monetary instruments on deposit in account number 7233463830 in the name of Michael Paul Daugerdas Irrev. Discr. Trust at Fifth Third Bank;

aa.     All United States currency, funds, or other monetary instruments on

-65-

deposit up to in account number 60-18009056 in the name of PAUL M. DAUGERDAS and Eleanor

Daugerdas at John Hancock Securities;

        bb.     All United States currency, funds, or other monetary instruments on

deposit in account number 661-62H25 in the name of PAUL M. DAUGERDAS and Eleanor

Daugerdas at Merrill Lynch;

        cc.     All United States currency, funds, or other monetary instruments on

deposit in account number 661-62H26 in the name of PAUL M. DAUGERDAS and Eleanor

Daugerdas at Merrill Lynch;

        dd.     All United States currency, funds, or other monetary instruments on

deposit in account number 661-62H44 in the name of PAUL M. DAUGERDAS and Eleanor

Daugerdas at Merrill Lynch;

        ee.     All United States currency, funds, or other monetary instruments on

deposit in account number 661-62H45 in the name of PAUL M. DAUGERDAS and Eleanor

Daugerdas at Merrill Lynch;

        ff.     All United States currency, funds, or other monetary instruments on

deposit up to $250,000.00 in account number 317008390 in the name of Eleanor L. Daugerdas at

North Shore Community Bank & Trust;

        gg.     All United States currency, funds, or other monetary instruments on

deposit up to $80,000.00 in account number 330003412 in the name of PAUL M. DAUGERDAS

and Eleanor Daugerdas at North Shore Community Bank & Trust; and

        hh.     All United States currency, funds, or other monetary instruments on

deposit up to $119,178.00 in account number 300021917 in the name of PAUL M. DAUGERDAS and Eleanor Daugerdas at North Shore Community Bank & Trust;

## II.    DENIS FIELD

    ii.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1955 Empress Court, Naples, Florida 34110, more particularly described as a single-family home owned by DENIS FIELD and/or family members, either directly or indirectly;

    jj.    All United States currency, funds, or other monetary instruments on deposit in account number 3034-6315 in the name of DENIS M. FIELD Revocable Trust at Charles Schwab;

    kk.    All United States currency, funds, or other monetary instruments on deposit in account number Z83-236330 in the name of DENIS M. FIELD Revocable Trust at Fidelity, and all accounts containing funds that are traceable thereto;

    ll.    All United States currency, funds, or other monetary instruments on deposit in account number 483-428442 in the name of DENIS M. FIELD at Fidelity;

    mm.    All United States currency, funds, or other monetary instruments on deposit up to $15,700.00 in account number 611225 in the name of DENIS M. FIELD Revocable Trust at The Private Bank & Trust Company;

    nn.    All United States currency, funds, or other monetary instruments on deposit in account number CD 92597 in the name of DENIS M. FIELD Revocable Trust at The Private Bank & Trust Company;

oo.    All United States currency, funds, or other monetary instruments on deposit in account number CD 99817 in the name of DENIS M. FIELD Revocable Trust at The Private Bank & Trust Company; and

pp.    All United States currency, funds, or other monetary instruments on deposit in account number 509842 in the name of DENIS M. FIELD Revocable Trust at The Private Bank & Trust Company, and all accounts containing funds that are traceable thereto.

### Substitute Asset Provision

109.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982, and
Title 28, United States Code, Section 2461.)


FOREPERSON

PREET BHARARA
United States Attorney

-69-