KOSTELANETZ & FINK, LLP
7 WORLD TRADE CENTER
NEW YORK, NEW YORK 10007
———
TEL: (212) 808-8100
FAX: (212) 808-8108
www.kflaw.com

September 17, 2013

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

     Re: *U.S. v. Daugerdas, et al.*, S6 09 Cr. 581 (WHP)

Dear Judge Pauley:

   We write in opposition to the government's motion to introduce the plea agreement of John Ivsan under Rule 806 of the Federal Rules of Evidence. The government's motion should be denied for several reasons. First, contrary to the government's assertions, Paul Daugerdas's counsel did not vouch for Ivsan in any way on cross-examination of Larry Morgan and therefore did not open the door to the introduction of Ivsan's plea agreement. Second, Rule 608 specifically precludes the use of extrinsic evidence of prior bad acts, such as a plea agreement, to impeach hearsay declarants. Finally, Denis Field would be unduly prejudiced should Ivsan's plea agreement be introduced at this joint trial.

  **A.** **<u>Background</u>**

   At the initial trial of this matter, the government unsuccessfully attempted to use Rule 806 to impeach what it characterized as an out-of-court declaration of defendant Paul Daugerdas, which the government contended was introduced during the cross-examination of taxpayer witness David Ducote. On cross-examination of Mr. Ducote, Mr. Daugerdas's counsel elicited the following:

    Q. And you knew from conversations that you had with Mr. Daugerdas after the fact that Jenkens & Gilchrist and Paul Daugerdas, and I quote, were going to --- went to their graves advocating that the shelter transactions were good. Isn't that true, sir?

Hon. William H. Pauley III
September 17, 2013
Re: *U.S. v. Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

> A. I think that's accurate.

(March 10, 2011 Trial Tr. at 1052). The government, through Assistant United States Attorney Stanley Okula, alerted the Court to the alleged Rule 806 opening as follows:

> [Daugerdas's counsel] elicited an out-of-court statement by Paul Daugerdas to the effect that Paul Daugerdas believed and would go to the mat with respect to his belief in this tax shelter transaction. That was an out-of-court statement that he offered for its truth.
>
> I just want to alert the Court we are going to seek to offer under Rule 806 to impeach that out-of-court hearsay statement of Mr. Daugerdas – provide certain proof with respect to Mr. Daugerdas under [Rule] 609 and 608 which we're allowed to do. We are going to submit paperwork and cases on this, your Honor, but the law is clear, and I just want to give your Honor a heads-up if someone elicits an out-of-court statement, a hearsay statement, even a defendant on trial, the government is allowed to counter that as if the person is testifying to present proof to undercut that person, and we intend to do that under Rule 806.

(March 10, 2011 Trial Tr. at 1056-57).

The Court accepted briefing on the issue and ultimately denied the government's motion to introduce evidence under Rule 806 to impeach Mr. Daugerdas's alleged out-of-court statement. After examining the memorandum of interview in which Mr. Ducote initially made the statement at issue, based upon which Daugerdas's counsel conducted his cross-examination, the Court concluded that it was unclear if Mr. Ducote was giving his impression of something or relating a direct statement from Mr. Daugerdas. The Court concluded as follows:

> [L]ooking at paragraph 28, the memorandum of interview, it strikes me that it is ambiguous; that under Rule 806 when a hearsay statement's been admitted in evidence, the credibility of the declarant can be attacked by any evidence that would be admissible for those purposes if the declarant had testified as a witness. But this Court cannot conclude based on this that the defense elicited a hearsay statement of Daugerdas on cross-examination. The statement at issue here: "Daugerdas and J&T went to their graves advocating that the tax shelter transactions were good" is not – it's not an assertion by the defendant. It's not offered for its truth, and therefore it's not hearsay. Accordingly, Daugerdas has not opened the door to attacks on his credibility under Rule 806.

> And, quite frankly, even if I'm wrong about that, under Rule 403, it strikes me that the acts offered by the government raise substantial risks here that the jury will improperly infer that such acts indicate a propensity to act. And in that regard, at least at this stage, the government should concentrate on trying Daugerdas for the charges that are in the indictment and not on other alleged bad acts by the defendant.
>
> So, at least with respect to the Ducote cross-examination, I find that the defendant has not opened the door to extrinsic evidence.

(March 17, 2011 Trial Tr. at 2242-2243).

### B. Testimony about John Ivsan

In the trial now proceeding before the Court, Mr. Okula elicited during his direct examination of Larry Morgan testimony about John Ivsan's involvement in advising Mr. Morgan on various tax-reducing strategies. On September 12, 2013, Mr. Okula asked the following questions about Mr. Ivsan:

> Q. Who attended the meeting [concerning the OPIS strategy]?
> A. There was Atlee Harmon from KPMG; Katherine Pace; Jeffrey Eischeid was an expert, I think was the way he was described to me, from KPMG at their national office. He was on a speaker phone. And then Bruce Gordon, Tom Cotter, Tommy Thorn and ***John Ivsan was a lawyer with Shumaker Loop from their legal office.***

(Tr. 288-289) (emphasis added).

> Q. Tell us who attended [the second meeting].
> A. Bruce Gordon, Tom Cotter, Tommy Thorn, Jeffrey Eischeid – or ***John Ivsan from Shumaker Loop***, and from KPMG it was Jeffrey Eischeid, Atlee Harmon, Katherine Pace, I believe were the people that attended.

(Tr. 290-291) (emphasis added).

Mr. Okula then ran through each of the advisors, asking about each of their specialties. He asked Mr. Morgan the following:

> Q. ***And how about John Ivsan?***
> A. He had some – ***he was a specialist in tax and accounting***, was my memory.

Hon. William H. Pauley III
September 17, 2013
Re: *U.S. v. Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

> Q. So were all the people that you just identified in your office there for this second meeting?
> A. There were two – one, John Ivsan and Jeffrey Eital or whatever – I forgot his last name right real quick here . . . . They were on speaker phone.

(Tr. 291-292) (emphasis added).

Mr. Okula then asked Mr. Morgan to explain the fees he was going to pay to each of the entities involved in advising him. He asked the following:

> Q. Did you have an understanding about what, if anything, KPMG and Shumaker Loop were going to do on an ongoing basis?
> A. Well, they were – well, they were going to guide me through the transaction and do the things that were required but I was – I had been paying them for all the direction and advice all along and would continue to pay them in addition to the fee, the finder's fee, if you will, that they received.

(Tr. 293-294).

Finally, Mr. Okula offered into evidence Government Exhibit 904-1, a letter from Shumaker Loop & Kendrick, which Mr. Morgan explained "outline[ed] the transaction and the legal work that they would do to create the entities necessary to facilitate the tax strategy. " (Tr. 296-97).

On cross-examination, Daugerdas's counsel, Henry Mazurek, did no more than to pick up on the thread of Mr. Okula's direct examination of Mr. Morgan to illustrate through a visual mechanism, specifically by writing the names of each advisor on a sheet of paper while using the overhead video device in the courtroom (a/k/a the "Elmo"). The questioning went as follows:

> Q. All right. At the Shumaker Loop firm, were there other lawyers who were involved in the transaction tax related?
> A. There was John Ivsan from their Toledo office.
> Q. He was not in Florida then, he was in another office of Shumaker, who was also advising you on this these particular transactions, correct?
> A. Yes.
> Q. So there are, according to my count, at least seven lawyers and CPAs who were advising you on the particular transaction of the $250 million sale of your business, right?
> A. Yes.
> Q. They were also all involved with respect to obviously the tax effects of that transaction, correct?

4

> A. Yes.
>
> (Tr. 355-356).
>
> \* \* \*
>
> Q. You decided to do the short strategy after speaking with your advisers, Mr. Eisheid of KPMG, Mr. Gordon of Shumaker, Mr. Thorn of Shumaker, Mr. Cotter of Shumaker, Ms. Pace of KPMG, Mr. Harmon of KPMG, and Mr. Ivsan of Shumaker, is that right?
>
> A. Yes.
>
> Q. And the information you're receiving from all of these people was the same, correct?
>
> A. Yes.
>
> Q. And that was that this was a strategy that they believed was legally correct?
>
> A. Yes.
>
> (Tr. 399-400).

At the lunch break, shortly after the above questioning occurred, Mr. Okula stated as follows:

> There's been more door opening by Mr. Mazurek. Specifically, in his last line of questioning, Mr. Mazurek essentially elicited the fact that, among the people who vouched for the validity of the short-sale transaction, was John Ivsan of Shumaker, Loop & Kendrick. Essentially he has elicited the fact that an out-of-court statement was made by Ivsan supporting the short sale, giving advice to Mr. Morgan that it was good. Under Rule 806, when a party elicits an out-of-court statement, a hearsay statement, or a statement in furtherance of the conspiracy by an absent declarant, another party can introduce, as if that declarant were on the stand, impeaching evidence. Given that they have essentially vouched for Mr. Ivsan's advice, we plan or we offer Mr. Ivsan's plea agreement that he pled guilty to tax fraud offenses. He's teed this issue up directly, your Honor, by including Mr. Ivsan as one of the people who vouched for the short-sale transaction.
>
> (Tr. 403-404).

After the lunch break, Daugerdas's counsel clarified the extent to which Mr. Morgan relied, if at all, on Mr. Ivsan in deciding to go forward with the tax shelter:

> Q. Then there was an individual that you said was on a conference call from Toledo, Ohio, Mr. Ivsan, right?
>
> A. Yes.

> Q. And he was just on the conference call at that initial presentation with Ms. Guerin, correct?
>
> A. Best of my memory. I know he was on that one. I don't know whether he was on others or not. I don't remember for sure.
>
> Q. He was not someone that you confided in in Florida during your determination of whether this was an acceptable transaction to you, correct?
>
> A. No. I think the Shumaker people valued his opinion, or the local people did.
>
> Q. But the people that you relied upon and talked about after the presentation with – that was on the conference call with Ms. Guerin was Mr. Thorn, Mr. Gordon and Mr. Cotter, is that correct?
>
> A. Yes.
>
> Q. And there were other people that you relied upon in making your determination on whether to go forward on the short sale transaction, correct?
>
> A. Yes.
>
> Q. And at KPMG it was Mr. Harmon and Ms. Pace, is that correct?
>
> A. Yes.
>
> Q. Those were the principal people that you discussed the transaction with, correct?
>
> A. Yes.
>
> Q. And that you relied upon in terms of reviewing documentation and a determination with respect to the tax opinion that the Altheimer & Gray, and later the Jenkens & Gilchrist firm would offer, correct?
>
> A. Yes.
>
> (Tr. 413-414).

On re-direct examination, as if to bolster its Rule 806 argument, the government questioned Mr. Morgan about his reliance on Ivsan in an apparent effort to enhance Ivsan's importance to Mr. Morgan's decision-making. That questioning was peppered with objections and the Court's rulings. The substance of the government's questions and Mr. Morgan's answers is as follows:

> Q. Just one final point on Mr. Ivsan. Do you remember at one point this morning during the questioning by Mr. Mazurek that he asked you with a little written list he was writing up on the screen, was Mr. Ivsan part of the advisers whom you relied on as part of the group who were telling you that the short sale transaction was good? Do you remember those questions?

> A. Yes.
>
> * * * *
>
> Q. And was it correct that Mr. Ivsan was part of that group?
>
> A. He was part of the group, and the local people I think felt that he was an expert that they drew guidance from as well.
>
> * * * *
>
> Q. Did Mr. Cotter and Mr. Gordon talk to you about Ivsan and his expertise?
>
> A. Yes.
>
> Q. What did they say?
>
> A. They said they weren't – that they wanted to bring him into the – if you will, be a part of the team for their firm.
>
> * * * *
>
> Q. ***Did Mr. Cotter or Mr. Gordon spell out or identify Ivsan as part of the person or part of the group that was recommending you entering the short sale?***
>
> A. They – they invited him to participate in conference calls and made reference to his involvement.

(Tr. 446-448) (emphasis added).

### C. Discussion

As in the first trial, the government here is mistaken in its assertion that Daugerdas's counsel elicited out-of court statements of an out-of-court declarant, in this case, John Ivsan. As the above record makes clear, Daugerdas's counsel did no more than pick up on the questioning of the government, through which the jury was made aware of the many advisors who were assisting Mr. Morgan in finding a tax-saving strategy. Having elicited the fact that Mr. Ivsan was among his advisors and that he did in fact engage Mr. Ivsan's law firm to assist him in executing the tax shelter at issue in this trial, the jury was able to infer –through the government's questioning -- that Mr. Morgan relied on the advice of his advisors, including those at Shumaker Loop. Daugerdas's counsel's cross-examination did not cross the line into eliciting any out-of-court statements of John Ivsan. Indeed, in his later cross-examination of Mr. Morgan, Daugerdas's counsel elicited the fact that Ivsan was not a direct advisor to him; rather, he was brought in by his advisors and may have been on only one phone call. Mr. Morgan attributed no statements to Ivsan, and the government failed in its efforts on re-direct to elicit any such statement. Accordingly, Rule 806 is not implicated.

Even if Rule 806 was implicated in this situation, it does not permit the government to introduce extrinsic evidence of bad conduct, which is what the government proposes to do. Rule 806 allows a party to impeach the credibility of a hearsay declarant "by any evidence which

Hon. William H. Pauley III
September 17, 2013
Re: *U.S. v. Daugerdas, et al.,* S6 09 Cr. 581 (WHP)

would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806.  Rule 608 governs the types of evidence that may be used to impeach credibility.  Under Rule 608(a), the impeaching party may elicit reputation or opinion evidence as to the witness's character for truthfulness.  Rule 608(b) provides that while specific instances of misconduct may, in the discretion of the court, be asked about on cross-examination of the witness whose credibility is at issue, such instances of misconduct "may not be proved by extrinsic evidence. . . . ."  The government fails to provide any support for an exception to this clear prohibition. Simply put, the Ivsan plea agreement is not admissible under any analysis of the applicable evidentiary rules.  *See, e.g., U.S. v. Saad*, 212 F.3d 210, 221 (3d Cir. 1999); *U.S. v. White*, 116 F.3d 903, 920 (D.C. Cir. 1997).

Finally, this Court should exercise its discretion under Rule 403 and deny the government's motion to prejudice the jury against both defendants in this joint trial through the gratuitous introduction of evidence of Ivsan's guilty plea to unrelated tax fraud.  Evidence of Mr. Ivsan's guilty plea will have no evidentiary value concerning the charges at issue in this trial against Mr. Daugerdas and Mr. Field.  Rather, it will serve only to unfairly prejudice the jury against Mr. Daugerdas – the only defendant at issue in the Larry Morgan testimony – which, we submit, will negatively impact Mr. Field.  This, we submit, should not be allowed.

## Conclusion

For all of the reasons set forth above, the government's motion to introduce John Ivsan's plea agreement should be denied.

Respectfully submitted,

Sharon L. McCarthy

César de Castro, Esq.
The Law Firm of César de Castro
The Trump Building
40 Wall Street, 28th Floor
New York, New York 10005

*Attorneys for Denis Field*

cc:   All Counsel of Record
      (by e-mail)