

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

September 18, 2013

**VIA EMAIL**

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

       Re:    <u>United States v. Paul Daugerdas, et ano.</u>
               S6 09 Cr. 581 (WHP)

Dear Judge Pauley:

      The United States respectfully submits this letter in response to the letters submitted by defendants Daugerdas and Field concerning the Government's application for the admission of the plea agreement of co-conspirator John Ivsan. Nothing in the defendants' submissions — either on the law or the facts — should block the Government's ability to attack the credibility of Ivsan, an absent declarant whose statements the defendants used to vouch for the legality of the Jenkens & Gilchrist tax shelter.

**1.**      **Crawford Is Not Implicated**

      The defendants are simply wrong in suggesting that *Crawford* v. *Washington* is implicated in this case. Notably, they fail to cite to *any* case in the Rule 806 context where a court prohibited impeachment evidence based on Sixth Amendment grounds. This failure is unsurprising in light of the wording and the operation of Rule 806.

      The Rule, by its terms, allows impeachment of the out-of-court declarant as if the declarant were on the witness stand. In such a case (that is, if the declarant were present), impeaching a witness with his guilty plea to a fraud offense would unquestionably be entirely consistent with rules 608 and 609. Thus, to understand the inapplicability of *Crawford* in the Rule 806 context, one need only substitute a live witness for the out-of-court declarant and ask whether a *Crawford* objection

-2-

could be properly be lodged.  The answer, of course, is "no," because if either of the defendants called a live witness to testify that they had provided advice to Larry Morgan that the short sale transaction was legal, the Government unquestionably would be permitted to cross-examine that live witness with a fraud conviction and neither defendant would be able to raise a *Crawford* objection to such an examination.  Stated differently, there would be no *Crawford* bar to introducing that live witness's fraud conviction or guilty plea for impeachment purposes.

The fact that the declarant is absent does not change the analysis.  Just as the Government would be able to cross-examine Ivsan with his fraud conviction if the defendants called him as a witness, so, too, should the Government impeach his hearsay statements that were elicited by the defendants to support their case.

### 2.    The Proof Is Not Extrinsic

Contrary to the defendant's claims, the guilty plea does not constitute extrinsic evidence forbidden by Rule 608.  The extrinsic evidence bar contained in that Rule prevents the proving up of acts of misconduct when the witness who is questioned about those acts denies or professes a lack of knowledge of the impeaching facts.  Thus, as in *United States* v. *White*, 116 F.2d 903, 920 (D.C. Cir. 1997), the court noted that the defense counsel was permitted under Rule 806 to question the Government witness (Sergeant Sutherland) about the absent declarant's false statements on employment forms or violation of orders of protection (and therefore elicit such impeaching proof if the witness had knowledge), but could not have attempted to prove those matters if the witness lacked the foundational knowledge of the same.

Here, the extrinsic evidence rule would not come into play because the Government personnel who would be called to testify about the plea, or introduce a written record of it, would have the requisite knowledge to justify introduction of the impeaching evidence.

### 3.    The Defense Clearly Elicited Hearsay Statements

A plain reading of the questioning conducted by Daugerdas's counsel on pages 399-400 of the record indicates that counsel elicited hearsay attesting to the legality of the short sale tax shelter. Put simply, after making clear through his questioning that Morgan had specifically relied on Ivsan as one of his advisors, counsel made clear that "the information you're receiving from *all these people* was the same" ---- that is, "that this [the short sale] was a strategy that they believed was legally correct." Tr. 399-400 (emphasis added).

### 4.    The Rule 806 Article

As discussed in court earlier today, enclosed is the article relating to the operation of Rule 806.

-3-

**5.    Conclusion**

The Government's application to introduce the impeachment evidence[1] should be granted. Unlike the Rule 806 application in the earlier trial, where the proposed impeachment evidence raised significant Rule 403 concerns because the proof related to defendant Daugerdas, the Rule 806 impeachment relates to the credibility of a declarant whose hearsay statements defendant Daugerdas elicited to support his defense and thus which the Government, in fairness and consistent with the plain terms of Rule 806, ought to be allowed to impeach.

                    Respectfully submitted,

                    PREET BHARARA
                    United States Attorney
                    Southern District of New York

        By:    ___/s /Stanley J. Okula Jr._____
                    Stanley J. Okula, Jr.
                    Nanette L. Davis
                    Niketh Velamoor
                    Assistant United States Attorneys
                    Tel.: (212) 637-1585/1117/1076

cc:    Defense Counsel of Record
       Via Email & ECF

---

[1]    If the Court has any concerns about introduction of the plea agreement itself, there are several different ways that the fact of the conviction could be introduced, including through stipulation by the parties.

FCDJ                                                                                    Volume V

## FEDERAL CRIMINAL DEFENSE JOURNAL

### USING RULE 806 IN TRIAL OR
### BEWARE OF AVATARS

### OLESEA COLLINS[1]



---

[1] LL.M. Trial Advocacy, California Western School of Law (2012).

FCDJ                                                                Volume V

# I. INTRODUCTION

Rule 806 is one of the most obscure rules among the Federal Rules of Evidence.[2] Understanding how to use the rule presents a great deal of confusion to many attorneys. Law school professors frequently spend minimal time teaching it, and the rule is rarely applied in courtrooms nationwide. Because of this, it is common to see even the most seasoned trial attorneys caught off-guard when they encounter an opponent who is prepared to use the rule. To many, being faced with the rule is akin to meeting a mythological dragon in real life -- as bizarre and as terrifying. This is unfortunate, because Rule 806 has potential to affect the outcome of many cases. Knowing how to use the rule correctly may help an attorney represent his or her client in the most effective way. Therefore, when preparing for trial, an attorney always must keep this rule in mind. Using and anticipating an opponent's use of Rule 806 is one key to a successful trial strategy plan.

So, how exactly Rule 806 can be used in trial? This article will provide examples of the rule's most common applications and help the reader explore the rule's potential to affect the outcome of a case.

## A. The Definition of FRE 806

Rule 806 provides in relevant part that "[w]hen a hearsay statement -- or a statement described in Rule 801(d)(2)(C), (D), or (E) -- has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, *regardless* of

---

[2] FED. R. EVID. 806.

when it occurred or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant on the statement as if on cross-examination."[3]

### B.  Function

Rule 806 applies to statements that are offered for the truth of the matter asserted and to the statements made by: (1) a person, whom the party authorized to make a statement on the subject,[4] (2) the party's agent or employee on a matter within the scope of that relationship,[5] or (3) a co-conspirator during and in furtherance of a conspiracy[6].

The rule's function is based on simple logic.  When an out-of-court statement is offered into evidence for its truth, the trier of fact must decide whether or not to believe it.  The jury or judge must evaluate the statement's trustworthiness and importance as if it were made in court.  At this point, the fact finder becomes concerned with credibility of the declarant.  Under Rule 806, the declarant's credibility is at issue, just as if his or her statement had been admitted for its truth in open court.[7]

Thus, the rule permits impeachment of non-testifying declarants when their out-of-court statements are introduced into evidence.   Statements that trigger Rule 806 are: (1) admissible hearsay and (2) statements that are defined as non-hearsay in Rule

---

[3] FED. R. EVID. 806 (emphasis added).
[4] FED. R. EVID. 801(d)(2)(C).
[5] FED. R. EVID. 801(d)(2)(D).
[6] FED. R. EVID. 801(d)(2)(E).
[7] The Advisory Committee explained the main reason for the rule's existence: "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified." FED. R. EVID 806 advisory committee's note; United States v. Finley, 934 F.2d 837, 839 (7th Cir. 1991); *see also* United States v. Moody, 903 F.2d 321, 328-329 (5th Cir. 1990).

FCDJ                                                    Volume V

801(d)(2)(C). (D). or (E).  Rule 806 permits impeachment of an unavailable declarant as if he or she actually had testified in court.[8]

### C. Scope

Rule 806 is not often used to introduce non-hearsay evidence of a party's own statement under 801(d)(2)(A)[9] or a party's adopted statement under 801(d)(2)(B)[10] because 806 specifically excludes such evidence by omission.  However, many courts are permitting Rule 806 impeachment when a party admits, into evidence, statements contained in Rule 801(d)(2)(A) and (B) as well.[11]  For instance, Connecticut's District Court ruled, in *United States v. Aquart*,[12] that Rule 806 encompasses a party's own statement (or the statement which he or she adopted) arguing that the Senate Judiciary Committee wrote a report stating that that "[t]he committee [has] considered it unnecessary to include statements contained in Rule 801(d)(2)(A) and (B) . . . [since] the credibility of the party-opponent is always subject to an attack on his credibility."[13]  Using *Aquart*'s reasoning, an attorney may argue the scope of Rule 806 is much broader than the rule specifically states, and he or she may impeach or rehabilitate a non-testifying declarant through Rule 806 even if he or she admitted statements of the non-testifying declarant under Rule 801(d)(2)(A) and (B).[14]

---

[8] FED. R. EVID. 806.
[9] Fed. R. Evid. 801 (d)(2)(A).
[10] Fed. R. Evid. 801 (d)(2)(B).
[11] United States v. Aquart, 2010 U.S. Dist. LEXIS 82877 at *2, 6-12 (D. Conn. Aug, 13, 2010); *See also* United States v. Shay, 57 F.3d 126, 128 (1st Cir. 1995) (rejecting the government's argument that testimony cannot be used to attack reliability of a non—testifying defendant's out—of—court statements admitted under Rule 801(d)(2)(2)(A)); *See also* United States v. Botti, 2010 U.S. Dist. LEXIS 15600 (D. Conn. Feb. 23, 2010).
[12] Aquart, *supra* note 11, at *6-12.
[13] S. REP. NO. 1277 at 7069, n.27 (1974).
[14] Aquart, *supra* note 11, at * 6-12.

### D. Application

Rule 806 may be used to impeach or rehabilitate non-testifying witnesses. The Rule permits attorneys to impeach absent declarants either through a testifying witness or through documents. When a witness is used, he or she becomes a proxy for the declarant who is being impeached. The best way to envision impeachment through Rule 806 is to imagine a scene from James Cameron's movie "Avatar."[15] When a human body of the movie's main character, Jake, was motionlessly resting in a protective chamber on the top of a mounting on planet Pandora, his mind was controlling a blue-skinned body of a local humanoid race, called Na'vi.[16] The Na'vi body was Jake's avatar on Pandora.[17] To withstand Pandora's toxic atmosphere, Jake transferred his human consciousness into his Na'vi avatar.[18] Jake's avatar served as a vessel for Jake's consciousness; it was Jake, just in a different body.[19] The same concept applies when Rule 806 is used. When an attorney admits the non-hearsay or hearsay statement of a declarant (human Jake), then opposing counsel may impeach the declarant by proxy, as if the testifying witness were the declarant's avatar (Na'vi Jake). Thus, Rule 806 treats testifying witnesses as avatars for non-testifying declarants.

## II.    THE WHENS AND HOWS OF RULE 806'S APPLICATION

### A.    Impeachment

Attorneys commonly use Rule 806 to impeach a declarant by introducing the declarant's criminal records or statements of the declarant's co-conspirators, employees,

---

[15] AVATAR, (James Cameron 2009).
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

FCDJ                                                          Volume V

or authorized parties, even if the declarant invoked the Fifth Amendment right against self-incrimination.

*1.  How Hearsay Exemptions,[20]*
*and Hearsay Exceptions[21] Can Trigger Rule 806.[22]*

The situations below illustrate how admitting statements of a co-conspirator, statements that are made in the scope of a declarant's employment, or statements of an authorized party trigger Rule 806's application.

Scenario #1: Imagine you are a criminal defense attorney and your client is accused of robbing a bank with his friends. His friends have agreed to testify against him at trial. Your client (Mr. X), however, has decided to invoke his right to remain silent and not testify. He made this decision because you advised him that, because he has a long criminal record that includes a recent bank robbery, it would be unwise for him to testify. At this point, you may assume your client is safe and his criminal record will not resurface.  Think again.  Invocation of one's Fifth Amendment's right is not an unbreakable shield that can keep your client's record under wraps when Rule 806 is available.  As his attorney, you must be prepared for the possibility that the prosecution will introduce your client's criminal record through Rule 806.

How can the prosecutor do this?  During cross-examination, using 801(d)(2)(E), you use testimony from the co-conspirator (Mr. Z) to introduce statements from Mr. X that are helpful to your case. When Mr. X's statements are introduced, your client's credibility may be attacked using Rule 806.  That is because the jury must now weigh Mr.

---

[20] Hearsay exemptions include an authorized statement, a statement by the party's agent, and a statement of a co-consipirator. FED. R. EVID. 801(d)(2).
[21] Hearsay exceptions include present sense impression, excited utterance, present sense impression, and many others. FED. R. EVID. 803.
[22] The scenarios, described in this article are only examples of how Rule 806 can be used. There may be a multitude of other situations when the rule can be appropriately applied.

X's credibility and decide whether to believe your theory of the case that Mr. X is either not guilty or just had minimal involvement in the robbery. Note that Rule 806 does not require that the credibility of the declarant be attacked on cross-examination.[23] It simply states, in pertinent part, that when "a statement described in Rule 801(d)(2)(C), (D), or (E) . . . has been admitted into evidence, the declarant's credibility may be attacked."[24] Such ambiguous language and lack of a specific definition of what constitutes an attack implies that an introduction of a criminal record or a damaging statement may be permitted on direct, cross, or re-direct examinations. So, once the defendant (Mr. X) makes a statement, his credibility is called into question. Thus, prosecution is permitted to attack the credibility of the defendant the same way had Mr. X testified on his own behalf at trial, including introducing his criminal record.

When the credibility of the testifying witness is under attack, the first prong of Rule 806 is satisfied and the application of Rule 806 is triggered.[25] The government can then introduce into evidence the *admissible*[26] felony convictions of your non-testifying client, using his testifying friend, Mr. Z. Thus, in this example, Rule 806 treats the testifying co-conspirator as a proxy, or avatar, for the introduction of your client's criminal record.

---

[23] FED. R. EVID. 806.
[24] *Id.*
[25] *Id.* ("When a hearsay statement -- or a statement described in Rule 801(d)(2)(C), (D), or (E) -- has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.") *Id.*
[26] Note that Rule 806 requires the convictions to be admissible. *Id.* (emphasis added).

The graph below illustrates Scenario #1:



The criminal record or statements of a non-testifying witness can be introduced the same way as described above (using 801(d)(2)(E)) if the prosecutor admits authorized statements using (801(d)(2)(C))[27] or as statements of an agent using (801(d)(2)(D)).[28]

Scenario #2:   A Ninth Circuit case, *United States v. Paris*, is another illustration of when Rule 806 can be used in trial.[29]  This case demonstrates how a lawyer can move, into evidence, statements against a testifying co-conspirator by using him as an avatar of the non-testifying co-conspirator.

In *Paris*, two defendants - DePalm and Paris - were charged with intent and conspiracy to distribute cocaine.[30]   Paris was DePalm's drug-supplier.[31]   One day, DePalm contacted Paris and arranged meeting with him and another buyer.[32]  The buyer was an undercover law enforcement officer and apprehended DePalm and Paris.[33]  Before their trial, DePalm invoked his right to remain  silent and chose not to testify.[34]  Paris

---

[27] FED. R. EVID. 801 (d)(2)(C).
[28] FED. R. EVID. 801 (d)(2)(D) (if your client has made the statement while acting in the scope of his employment).
[29] United States v. Paris, 812 F.2d 471, 476 (9th Cir. 1987).
[30] *Id.* at 474.
[31] *Id.* at 473.
[32] *Id.*
[33] *Id.*
[34] *Id.* at 474.

testified but denied his involvement in the conspiracy, claiming that he was "set up" by DePalm.[35]  The prosecution introduced into evidence DePalm's statements through Paris that incriminated Paris.[36]  The court allowed both of the non-testifying conspirators' statements to be admitted under Rule 801(d)(2)(E)[37] and Rule 806,[38] regardless of the fact that both conspirators invoked their Fifth Amendment rights. The court reasoned that since Rule 801(d)(2)(E) could be used had DePalm testified, Rule 806 could be used to introduce DePalm's statements.[39]

DePalm's attorney could not prevent introduction of the damaging statements against his client under 801(d)(2)(E), even after arguing that such evidence violated the Confrontation Clause.[40]  The Ninth Circuit ruled in *Paris* that if the statement is admissible under 801(d)(2)(E), there is no Confrontation Clause issue when Rule 806 is applied.[41]  The court explained that admission of statements under Rule 806 does not violate the Confrontation Clause because "the Sixth Amendment right of an accused to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."[42]

Thus, the Confrontation Clause of the Sixth Amendment does not trump Rule 806, and opposing counsel may impeach a testifying co-conspirator through statements of a non-testifying co-conspirator.

---

[35] *Id.* at 473-474.
[36] *Id.* at 474.
[37] FED. R. EVID. 801(d)(2)(E) (statements of co-conspirators).
[38] FED. R. EVID. 806.
[39] Paris, *supra* note 31, at 476.
[40] *Id.* at 476.
[41] *Id.* at 476-7.
[42] *Id.* at 475; *See also* United States v. Bovian, 708 F.2d 606 (11th Cir. 1983) (allowing defense counsel of the testifying co-conspirator to introduce into evidence criminal records of the non-testifying co-conspirator).

The following graph illustrates Scenario #2:



Scenario #3: Apply the same facts as in Scenario # 1.  Once more, you are a criminal defense attorney who has advised your client, Mr. X, not to testify because you are trying to avoid impeachment of your client by his criminal record. The prosecution rest and it is time for your case-in-chief.  You call to the stand a fact witness — a very trustworthy, elderly woman.  The woman, Ms. T, testifies that Mr. X takes care of her lawn on a regular basis, every Friday.  She is Mr. X's employer. Ms. T testifies on direct examination that Mr. X has told her that he could not work for her on the Friday in question (the time when the robbery was committed) because he planned to visit his ill mother that day.  Through other witnesses, you establish that Mr. X's mother was under the weather on Friday.  Ms. T's  statement is admitted under 801(d)(2)(D) as a statement made in the scope of employment while it existed.[43] Introducing this hearsay statement triggered Rule 806 because the jury must now weigh Mr. X's credibility in deciding whether to believe Mr. X's statement that he, indeed, went to visit his ill mother and was

---

[43] FED. R. EVID. 801(d)(2)(D).

not robbing the bank.  Once Mr. X's statements to his employer are admitted, the prosecution can do the following on cross-examination:

1) introduce into evidence your non-testifying client's criminal record; or

2) introduce into evidence your client's hearsay statements, under Rule 801(d)(2)(E); or

3) any other admissible hearsay statements.

The government can now introduce criminal records of the non-testifying witness, or any other admissible hearsay, because when you introduced Mr. X's statements to Ms. T, Mr. X's credibility became an issue.  Applying the same reasoning, as in the Scenario #1, the prosecution can argue that once Mr. X's credibility becomes an issue, it can be attacked using Ms. T as his avatar, as if Mr. X himself testified.  Therefore, the prosecution can impeach Mr. X under Rule 806, despite the fact that he exercised his constitutional right not to testify.

The graph below demonstrates how Rule 806 is used in Scenario #3, after the government rests:



Scenario #4: Now imagine that your client, Mr. X, is a truck driver who is charged with smuggling illegal aliens from Tijuana to San Diego.  Mr. X has admissible prior criminal convictions, so you advise Mr. X not to testify.  The prosecution calls a Border Patrol

agent. Agent A, in its case-in-chief.  You cross-examine Agent A in an attempt to elicit Mr. X's statements to him that were made right after arrest. Mr. X had told Agent A that that he had no idea that two illegal aliens were hiding in the back of his truck.  The statement comes in as an excited utterance, under Rule 803(2).[44]  Not satisfied with the client's statements alone, you move into evidence, through the same agent (under the business record exception[45]), Mr. X's written statement in which Mr. X denies knowing anything about the aliens.  You feel good about yourself after both of these pieces of evidence are in.  You want to pat yourself on the shoulder, thinking that you did a good job.  But then comes the unexpected . . .

When Mr. X's hearsay statements are moved into evidence, Mr. X's credibility becomes an issue (in the same way as if he had testified ).  Consequently, statements that would have been admissible to impeach Mr. X had he testified would be admissible through Agent A, under Rule 806.[46]  Agent A is now your client's avatar.  Because Rule 806 has been triggered on re-direct examination, the prosecution can move into evidence your client's prior convictions, under Rule 609.[47] If you are not prepared for such turn of events, the effects on your client's case will be devastating.

---

[44] FED. R. EVID. 803(2).

[45] FED. R. EVID. 803(6).

[46] *See* United State v. Lawson, 608 F.2d 1129 (6th Cir. 1979) (defendant Lawson did not testify at trial. Lawson's attorney cross-examined a government's witness, a secret service agent. He used the agent in order to bring out testimony that Lawson had repeatedly denied his involvement in any criminal activity. Lawson's attorney also introduced Lawson's written statement in which Lawson denied all involvement in the crime. After Lawson's statements were entered into evidence, the court found that the Lawson's credibility was at issue. Therefore, the court allowed the prosecution to admit Lawson's prior felony convictions, using Rule 806 because Rule 609(a) permits an introduction of prior convictions for impeachment purposes); *See also* United States v. Noble, 754 F.2d 1324 (7th Cir. 1985) (introducing prior conviction of counterfeiting).

[47] FED. R. EVID. 608(b).

Volume V

The graph below depicts Scenario #4, showing how damaging evidence can come in through the testimony of the government's witness:



### 5.   *Rule 806 Permits the Introduction of Evidence of Specific Conduct*

Rule 608(b) forbids the introduction of evidence of specific conduct except on cross-examination and if probative of truthfulness or untruthfulness.[48]   Rule 806, however, allows courts to disregard the protections of Rule 608(b).[49]   Under Rule 806, extrinsic evidence may be introduced when the credibility of the declarant is attacked.[50]   Rule 608(b) limits inquiries into extrinsic evidence to cross-examinations only; but, because the declarant is absent when Rule 806 is applied, cross-examination is not possible.[51]   Since there is no cross-examination, a court may ignore Rule 608(b)'s prohibitions.[52]

Scenario #5:   Your client, Mr. X, is charged with smuggling methamphetamine from Mexico.  Police found drugs hidden behind his car radio and wrapped in cellophane. Mr. X denies any knowledge of the drugs in the car.  In fact, he stated that he had bought

---

[48] FED. R. EVID. 608(b).
[49] FED. R. EVID. 806.
[50] *Id.*
[51] *Id.*
[52] United States v. Friedman, 854 F.2d 535, 569-570 (2d Cir. 1988).

the car from a female friend, Ms. G, a few days before the drugs were found. Ms. G is a Mexican citizen who used to be a lawful permanent resident of the United States. Before providing any statements, she vanishes and cannot be found. You discover that several years ago, Ms. G filed a restraining order against her former boyfriend, claiming that he had kidnapped, raped, and assaulted her. Later, it was revealed that she fabricated the story out of jealousy and her wounds were self-inflicted.

Your client is being tried in front of a jury and decides to testify. On direct examination, he denies any involvement in the smuggling, stating that, after the arrest, he told the Border Patrol agents that he did not put the drugs in the car. He also testified that, earlier, his friend, Ms. G, had offered him money to smuggle drugs but he rejected her offer. According to Mr. X, Ms. G responded to the rejection by saying that she was fine with that and that she was also planning not to get involved in that dangerous, illegal business.[53] After introducing this hearsay statement, Ms. G's credibility becomes an issue, triggering Rule 806. The prosecutor is permitted, at this point, to circumvent Rule 608(b)'s limitations and introduce into evidence extrinsic evidence of Ms. G's untruthful character. The court will allow the evidence to be admitted because, had Ms. G testified in court, you could have brought the evidence of her untruthful character on cross-examination. Mr. X becomes Ms. G's avatar and the prosecutor can impeach him (and her) by extrinsic evidence, not on cross-examination.

It is important to note that the same Rule 608(b) evidence could have come in by using the Border Patrol agent as the Ms. G's avatar. To trigger Rule 806, all you need to

---

[53] These statements may be introduced even though they are double hearsay under FED. R. EVID. 805 because each layer is admissible under a hearsay exception. The friend's statements may be admitted under FED. R. EVID. 803(3), as then existing state of mind. Mr. X's statement could have come in as an excited utterance, under FED. R. EVID. 803(2).

do is to admit into evidence Mr. X's hearsay statements to the agent, specifically, what Ms. G had told him.

Such unusual treatment of Rule 608(b) became possible after the Second Circuit, in *United States v. Friedman,* stated, in dicta, that under Rule 806, evidence of specific conduct may be introduced when credibility of the declarant was attacked. The court said that extrinsic evidence might be introduced because, in some cases, extrinsic evidence under Rule 806 may be the only way of presenting evidence to the jury. [54]

Scenario #5 may be illustrated as follows:



*B. Rehabilitation*

Rule 806 permits rehabilitation of a non-testifying witness. It allows rehabilitation because, in essence, impeachment is an attack on the declarant's and witness' credibility.

---

[54]United States v. Friedman, 854 F.2d 535, at 569; *See also* United States v. Uvino, 590 F. Supp. 2d 372, 373 (E.D.N.Y. 2008); *See also* United States v. Aquart, 2010 U.S. Dist. LEXIS 82877 *2, 6-12 (D. Conn. Aug. 13, 2010); *See also* United States v. Finley, 1989 U.S. Dist. LEXIS 6175 *1, 2-4 (N.D.Ill. May 19, 1989) (stating that "Rule 806 should be read as modifying Rule 608 to the extent of permitting extrinsic evidence of such [non-conviction] misconduct.").

Scenario #6: A Ninth Circuit case, *United States v. Bernal*, illustrates how a non-testifying witness can be rehabilitated[55] and provides an example of how Rule 806 can be used for rehabilitation[56] In *Bernal*, law enforcement agents arranged for a paid informant to buy cocaine from a drug-dealer named Corsey.[57] Corsey told the paid informant that he did not have drugs but would contact his supplier in order to get them.[58] Agents followed Corsey to his supplier's (Bernal) residence and saw Corsey driving Bernal to Corsey's home.[59] Moments later, the paid informant went to Corsey and bought cocaine.[60] The agents immediately arrested Corsey and Bernal.[61] Criminal charges were filed against Corsey and Bernal, and their case went to trial.[62] At trial, Corsey did not testify. Bernal testified and proclaimed his innocence.[63]

The paid informant also testified for the prosecution, claiming Corsey had told him that he did not have cocaine.[64] On cross-examination, Bernal's attorney impeached Corsey, treating him as an out-of-court declarant under Rule 806. He elicited Corsey's statements from the testifying government's witness – Agent Lucido.[65] Agent Lucido admitted that Corsey had told him that drugs had been at Corsey's home before Bernal's arrival.[66] On re-direct, prosecution rehabilitated Corsey's credibility by eliciting testimony from Agent Lucido that Bernal had told him that he would order an associate

---

[55] United States v. Bernal, 719 F.2d 1475 (9th Cir. 1983).
[56] *Id.* at 1478.
[57] *Id.* at 1477.
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.* at 1477-1478.
[66] *Id.* at 1478.

to deliver a pound of cocaine to Corsey's residence in a couple of hours.[67]  The court

permitted Bernal's statements under Rule 806, finding that the government should have

been allowed to bolster the credibility of an out-of-court declarant whose credibility had

been attacked by an extrajudicial statement.[68]  Thus, Agent Lucido was used as Corsey's

avatar twice: first to impeach Corsey and later to rehabilitate him.[69]

The graph of Scenario #6 illustrates one of the Rule 806's applications for rehabilitation
purposes:



_____

[67] *Id.*

[68] *Id.*

[69] The statement comes in as if the non-testifying declarant was rehabilitated using FED. R. EVID.
801(d)(1)(B).

<u>Scenario #7:</u> In *United States v. Lechoco*, the prosecutor opened the door for inquiries into the defendant's character for truthfulness on cross-examination when he implied that the non-testifying defendant had a motive to lie during a psychiatric examination because he wanted to be acquitted of kidnapping charges.[70]  The prosecutor vigorously cross-examined three psychiatrists, each time implying that the defendant lied.[71]  The rigorous inquiries triggered Rule 806 because: (1) the defendant-declarant was absent, and (2) his credibility was attacked.[72]  Once the prosecutor attacked the defendant's credibility, the defendant's attorney was entitled to introduce evidence of the defendant's truthful character.[73] Defense counsel called the defendant's co-worker to the stand.[74] The co-worker testified that the defendant was known to be an honest man.[75] Relying on Rule 806, the court granted this rehabilitation evidence.[76]

     The graph below depicts Scenario #7:



<u>Cross-examination of defenses' witnesses</u>: rigorous examination implies that the non-testifying defendant had a motive to lie.

806 is triggered

<u>Direct examination of defense's new character witness</u>: because the government's counsel attacked credibility of the defendant by implying that the defendant was a liar, a new character evidence can be introduced under Rule 806 to support the non-testifying defendant's credibility.

---

[70] United States v. Lechoco, 542 F.2d 84 (D.C. Cir. 1967).
[71] *Id.* at 87.
[72] FED. R. EVID. 806.
[73] Lechoco, *supra* note 70, at 88.
[74] *Id.* at 87.
[75] *Id.*
[76] See Christopher B. Mueller & Laird C. Kirkpatrick, 4 *Federal Evidence* 511, at 893 (2d ed. 1994).

## III.   CONCLUSION

Attorneys should be prepared for Rule 806 being used at trial because it allows the impeachment of non-testifying witnesses. The rule permits using testifying witnesses as avatars for non-testifying witnesses, disregarding all protections of the Fifth and Sixth Amendments. However, the rule can be also used to introduce impeachment or rehabilitation evidence that can benefit witnesses, including defendants. Because Rule 806 is a powerful evidentiary tool that can affect the outcome of a case, it is vital for all attorneys to know how to use it and be prepared for opponent's use of the rule. Beware of avatars, Counsels!