```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/7/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,                    :

        -against-                              :                    S6 09 Cr. 581 (WHP)

PAUL M. DAUGERDAS,                           :                    MEMORANDUM & ORDER

                    Defendant.   :
-------------------------------------------------X

WILLIAM H. PAULEY III, United States District Judge:

        Defendant Paul M. Daugerdas moves for a judgment of acquittal and a new trial

pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure.  For the following

reasons, Daugerdas's motion is denied.

## BACKGROUND

        Following a re-trial, a jury in this district convicted Daugerdas of conspiracy to

defraud the United States and the Internal Revenue Service (Count 1), client tax evasion (Counts

5-7 and 11), corruptly obstructing and impeding the due administration of the Internal Revenue

Laws (Count 13), and mail fraud (Count 17).  Daugerdas asserts that the Government presented

insufficient evidence as to each count of conviction and constructively amended the Indictment

on the mail fraud count.  He also contends that the mail fraud count is facially insufficient

because it does not allege a fraud "affecting a financial institution."

## **DISCUSSION**

### I. Legal Standard

    A.   Rule 29 Motion

        Rule 29 permits a court to set aside a conviction and "enter a judgment of

acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R.

Crim. P. 29(a).  Defendants "bear[] a heavy burden" on Rule 29 motions.  United States v. Aina-Marshall, 336 F.3d 167, 171 (2d Cir. 2003).  If, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," then the motion must be denied.  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  "Pieces of evidence must be viewed not in isolation but in conjunction," see, e.g., United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994), and, when evaluating the sufficiency of the evidence, courts do not assess witness credibility, resolve inconsistent testimony against the verdict, or otherwise weigh the significance of the evidence, see United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000).  "The weight of the evidence is a matter for argument to the jury[.]"  Matthews, 20 F.3d at 548.

   B.   Rule 33 Motion

   Rule 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The rule gives a court "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice."  United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice.  The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict."  United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citations omitted) (internal quotation marks omitted).  To grant a Rule 33 motion, a trial judge "must harbor a real concern that an innocent person may have been convicted."  United States v. Lin Guang, 511 F.3d 110, 119 (2d Cir. 2007).

## II.    Tax Evasion Counts

Daugerdas maintains that "[b]y its verdict, acquitting Mr. Daugerdas on all counts of personal tax evasion and also acquitting him of tax evasion with respect to the Larry Moore, Woody Shackleton, Wayne Harter, Suzette Ducote, John and Mary Anne Olmsted, and William Saunders, the jury rejected the heart of the government's case: that the tax shelters lacked economic substance and that Mr. Daugerdas knew that . . . ." (Deft's Mem. at 1.) Daugerdas recasts the jury's verdict as one "rest[ing] upon the allegation that certain transactions involved alleged backdating . . . ." (Deft's Mem. at 1.)

However, a Rule 29 motion does not permit a court to ruminate on the operation of the jury's collective mind. Indeed, speculation about why a jury reached a particular verdict is not permitted because "it is impossible to know exactly why a jury found a defendant not guilty on a certain charge." United States v. Watts, 519 U.S. 148, 155 (1997). It is not within a court's purview to determine what "the jury 'really meant.'" United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994) (citing United States v. Powell, 469 U.S. 57, 68 (1984)). Rule 29 forbids a court from assessing witness credibility or weighing the significance of the evidence. "Sufficiency-of-the-evidence review involves assessment by [a] court[] of whether the evidence adduced at trial could support any rational determination of guilt[] beyond a reasonable doubt." Powell, 469 U.S. at 67 (emphasis added). "[T]his review should be independent of the jury's determination that evidence on another count was insufficient." Powell, 469 U.S. at 67.

Daugerdas contends that the trial evidence was insufficient to sustain his convictions for aiding and abetting tax evasion by Matthew Coleman, Robert Blair, and Michael Toporek. To evade taxes on their 2001 tax returns, Coleman and Blair entered into Swaps transactions. Toporek evaded taxes in 2001 and 2002 by utilizing Swaps transactions.

3

Daugerdas argues that the Government failed to prove that Swaps transactions subjectively lack economic substance—i.e., that Coleman, Blair, and Toporek did not have a business purposes for entering into the tax shelter.  He also asserts that the Government failed to prove the transactions objectively lacked economic substance—i.e., that the transactions had no any reasonable possibility of earning a profit.

This Court instructed the jury that a business purpose is any non-tax reason for entering into the tax shelter and that jurors could consider both direct and circumstantial evidence of the taxpayer's motive.  (Tr. at 7679.)  Daugerdas argues that because Blair and Toporek did not testify at trial there is no evidence of their subjective intent.  But the jury was entitled to view the circumstantial evidence—including evidence that the Swaps transactions were designed solely to evade taxes and testimony of other Swaps clients about the exclusively tax-evading nature of the transactions—as dispositive proof of a taxpayer's subjective intent.  See United States v. Pfaff, 407 Fed. App'x. 506, 509 (2d Cir. 2010) (finding that testimony by some tax shelter clients that "transactions were marketed solely as tax-avoidance schemes" and clients "had no non-tax business purposes in executing them" entitled jury to reach the same conclusion as to transactions by non-testifying tax shelter clients).  Viewing the evidence as a whole, a reasonable juror could conclude that the tax shelters Daugerdas engineered and marketed to clients were designed solely to evade taxes and had no business purpose.[1]

This Court also instructed the jury that the Government had to prove there was no reasonable possibility that the tax shelter would result in a profit.  A transaction lacks economic

---

[1] Daugerdas contends that the evidence also supports a different (innocent) conclusion.  Perhaps. But that would turn Rule 29 upside down.  Rule 29 requires this Court to view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319 (emphasis in original).

substance if it "cannot with reason be said to have purpose, substance, or utility apart from [its] anticipated tax consequences." Lee v. Comm'r, 15 F.3d 584, 586 (2d Cir. 1998) (quoting Goldstein v. Comm'r, 364 F.2d 734, 740 (2d Cir. 1966)).  While Daugerdas argues that the tax shelter investments could possibly have earned a profit, the investments were far more likely to lose money.  (See, e.g., Tr. 6615-16: ("probability of making a profit . . . is 1 percent") (DeRosa).)  And if the fees and costs of the tax shelter are included in the analysis, "it [i]s impossible to make a profit." (Tr. 6615 (DeRosa).)  Viewing all of the facts together, a rational juror could conclude that the Government met its burden of proving that the true purpose of the transactions was tax evasion. See United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (on a Rule 29 motion, a court looks "to the totality of the government's case and not to each element, as each fact may gain color from others").

III.    **Mail Fraud, Conspiracy and IRS Obstruction Charges**

    A.    Sufficiency of the Evidence

        Daugerdas contends that the Government failed to prove him guilty of conspiracy (Count One), a corrupt endeavor to obstruct and impede the IRS (Count Thirteen), and mail fraud (Count Seventeen).  The gravamen of Daugerdas's argument is that the jury's verdict reveals that the jury rejected the Government's theory of tax shelter fraud and found Daugerdas guilty of backdating transactions.  But such speculation about how a jury arrived at its verdict is not permitted.  A rational juror could have found that the evidence established that Daugerdas oversaw the design, marketing, and execution of four fraudulent tax shelters and directed the defense of those shelters through issuing misleading and dishonest client opinion letters, assisting tax preparers in preparing false and fraudulent tax returns claiming tax shelter losses,

preparing false documents for submission to the IRS, and participating in fraudulent backdating

of tax shelter transactions.  In sum, the evidence of Daugerdas's guilt was overwhelming.

      B.      <u>Constructive Amendment of the Indictment</u>

      Daugerdas takes his argument a step further by asserting that if the jury rejected

the Government's tax shelter fraud theory then it convicted him solely because on transactions

that were backdated.  This, Daugerdas argues, violates his Fifth Amendment rights by

constructively amending the indictment.  Constructive amendment of an indictment occurs

"when the Government's presentation of evidence, together with the trial court's jury

instructions, creates an unacceptable risk that the jury might convict the defendant of a crime

materially different from the one alleged in the indictment."  <u>United States v. Mucciante</u>, 21 F.3d

1228, 1233 (2d Cir. 1994).  "[A]n impermissible alteration of the charge must affect an essential

element of the offense," and the Second Circuit has "consistently permitted significant flexibility

in proof, provided that the defendant was given notice of the 'core of criminality' to be proven at

trial."  <u>United States v. Patino</u>, 962 F.2d 263, 266 (2d Cir. 1992) (citations omitted)(internal

quotation marks omitted).

      This argument also involves speculation about the jurors' collective minds and is

prohibited by Rule 29.  But even if the jury verdict hinged on the Government's backdated

transaction argument, there was no constructive amendment.  The indictment specifically

identifies backdating as a means and method of the fraudulent tax shelters in Section C(2), which

is entitled "Backdating of Transactions Used to Achieve Fraudulent Losses."  (<u>See</u> Ind. ¶ 47.)  A

conviction based on a subset of the allegations in an indictment is not a constructive amendment.

<u>See</u> <u>United States v. Miller</u>, 471 U.S. 130, 131 (1985) (holding no constructive amendment

"when a defendant is tried under an indictment that alleges a certain fraudulent scheme but is

convicted based on trial proof that supports only a significantly narrower and more limited, though included, fraudulent scheme"). The Government proved the illicit backdating and Daugerdas's involvement with or knowledge of that unlawful activity. Thus, a rational juror could conclude that the Government met its burden of proof on the mail fraud count solely through evidence of backdated tax-shelter-related transactions.

C.     <u>Facial Sufficiency of the Mail Fraud Count</u>

       Finally, Daugerdas contends that the mail fraud count is facially insufficient. Specifically, he asserts that the Indictment fails to include the language "affecting a financial institution." (Deft's Mem. at 24.) This facial challenge to the Indictment is untimely. <u>See</u> Fed. R. Crim. Pro. 12(b)(3) (motions alleging a defect in the indictment must be made before trial). Moreover, evidence that the mail fraud affected a financial institution was beyond dispute—the parties stipulated to it. <u>Cf.</u> <u>United States v. Cotton</u>, 535 U.S. 625, 633 (2002) (holding no plain error stemming from omission from an indictment of a fact that enhances a sentence where the proof of such fact was "'overwhelming' and 'essentially uncontroverted'"). Unremarkably, Daugerdas did not seek dismissal of the mail fraud count on a point he conceded prior to trial.

Daugerdas also argues that if the jury convicted him only for backdating transactions, then there was no evidence that Deutsche Bank was affected within the meaning of the mail fraud statute. This Court rejects Daugerdas's crabbed view of the evidence. This Court instructed the jury that the parties stipulated that Deutsche Bank was a financial institution that "was affected by the Short Shale, Short Options, Swaps, and HOMER tax shelters at issue in this case." (Tr. 7691.) Daugerdas cannot disavow his prior stipulation after trial.

Daugerdas's argument on the mail fraud count diverted the parties to the finer points of the application of the Wartime Suspension of Limitations Act ("WSLA"), 18 U.S.C. § 3287. Through October 14, 2008, the WSLA provided that "[w]hen the United States is at war the running of any statute of limitations [for certain offenses] . . . shall be suspended until three years after the termination of hostilities[.]" 18 U.S.C. § 3287 (2007). Under the WSLA, the United States has been "at war" since at least September 18, 2001 and the statute of limitations has been tolled since that date. See United States ex rel. Carter v. Halliburton Co., 710 F.3d 171, 178-79 (4th Cir. 2013) (same and concluding that the phrase "at war" encompasses more than just formally declared wars); cf. United States v. Pfluger, 685 F.3d 481, 483 n.3 (5th Cir. 2012) (defendants conceded that Congress's September 18, 2001 Authorization for the Use of Military Force against those tied to the September 11, 2001 attacks on the United States put the United States "at war").

8

CONCLUSION

For the foregoing reasons, Defendant Paul Daugerdas's motion for a judgment of acquittal pursuant to Rule 29 and a new trial pursuant to Rule 33 are denied. The Clerk of Court is directed to terminate all pending motions in this case.

Dated: New York, New York
       May 7, 2014

SO ORDERED:


WILLIAM H. PAULEY III,
U.S.D.J.

*Counsel of record:*

Stanley J. Okula, Esq.
Nanette L. Davis, Esq.
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
*Counsel for Government*

Brian D. Linder, Esq.
Henry E. Mazurek, Esq.
Clayman & Rosenberg, LLP
305 Madison Avenue, Suite 1301
New York, NY 10165
*Counsel for Paul Daugerdas*