**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 23, 2014

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Paul Daugerdas</u>, 09 Cr. 581 (WHP)

Dear Judge Pauley:

      The United States respectfully submits this letter pursuant to Your Honor's May 6, 2014 Order, and in response to the final objections leveled by defendant Paul M. Daugerdas (the "Defendant" or "Daugerdas") to the Probation Department's Presentence Investigation Report ("PSR"). We address the arguments and points in the same order set out by Daugerdas in his letter dated March 14, 2014.

      A copy of the Government's responses is being provided to Probation, in the event the Court wishes some further action or input from the senior officer who prepared the PSR.

## I.    Preliminary Statement

      At the outset of Daugerdas's objection letter, he advances the same "fundamental" argument that he made in his post-trial motions --- <u>viz.</u>, that the jury's verdict can and should be read as a fundamental rejection of the "broad scheme alleged in the indictment." Obj. Ltr. at 1. In fact, as this Court found in denying the defendant's post-trial motions, no inference or conclusion can be drawn from the jury's acquittals on certain tax evasion counts. What remains, then, is the jury's verdict finding Daugerdas guilty on (i) the two-decade-long conspiracy charged in Count One, and the specific finding that all three objects of the conspiracy had been established; (ii) the two-decade-long mail fraud scheme, which incorporated all of the allegations of the conspiracy count; (iii) the two-decade-long corrupt endeavor to obstruct the Internal Revenue Service ("IRS"), which incorporated all of the allegations of the conspiracy count; and (iv) four client tax evasion charges. Conviction on the foregoing counts mandates that this Court include the full range of losses suffered by the IRS when calculating the applicable Sentencing Guidelines range and amounts of restitution owed to the IRS.

## II.    Daugerdas's Specific Objections

      1.    ¶ 132. Daugerdas objects to the $3,260,332,686 figure on pages 1 and 39 (paragraph 132), which figure represents the maximum fine amount determined by Probation pursuant to the

"alternative" fine provisions of 18 U.S.C. §3571(b)(2) and (d), which calculates the fine as twice the gross loss suffered by the IRS . Daugerdas contends that the total loss, for fine purposes, should be limited to the amount "deemed proven by the jury," which he contends is $8,056,590. Neither the PSR nor Daugerdas is correct. Because the jury was never asked to make a finding on specific loss amounts, the maximum fine for Count One and all the remaining counts of conviction cannot exceed the $250,000 amount contained in 18 U.S.C. §3571(b)(3). See United States v. Coplan, 703 F.3d 46, 94-95 (2d Cir. 2012) (fine cannot exceed amount set in 18 U.S.C. §3571(b)(3) absent a jury finding pursuant to Apprendi); United States v. Pfaff, 619 F.3d 172, 175 (2d Cir. 2010) (same); see also Southern Union v. United States, 132 S. Ct. 2344 (2012) (Apprendi applies to criminal fines).

2.  ¶ 132.  Neither the PSR nor Daugerdas is correct. Because the jury was never asked to make a finding on a specific loss amount for Count Five, the maximum fine for that count of conviction cannot exceed the $250,000 amount contained in 18 U.S.C. §3571(b)(3).

3.  ¶ 132.  Neither the PSR nor Daugerdas is correct. Because the jury was never asked to make a finding on a specific loss amount for Count Six, the maximum fine for that count of conviction cannot exceed the $250,000 amount contained in 18 U.S.C. §3571(b)(3).

4.  ¶ 132.  Neither the PSR nor Daugerdas is correct. Because the jury was never asked to make a finding on a specific loss amount for Count Seven, the maximum fine for that count of conviction cannot exceed the $250,000 amount contained in 18 U.S.C. §3571(b)(3).

5.  ¶ 132.  Neither the PSR nor Daugerdas is correct. Because the jury was never asked to make a finding on a specific loss amount for Count Eleven, the maximum fine for that count of conviction cannot exceed the $250,000 amount contained in 18 U.S.C. §3571(b)(3).

6.  ¶ 21.  Daugerdas objects to the statements contained in paragraph 21 on page 16 that characterize the actions of Donna Guerin as involving the creation of fraudulent paperwork. Daugerdas's objection in this regard should be rejected as it represents an improper quarrel with the weight and extent of the evidence. (Since many of the balance of Daugerdas's objections are of a similar vein, we will respond in the ensuing responses, for sake of brevity and simplicity, with the shorthand "Improper Quarrel.")

7.  ¶ 21.  Improper Quarrel. The record fully supported the conclusion that Mayer implemented fraudulent tax shelters (as Mayer fully admitted) and that Daugerdas was the principal architect of those transactions. Indeed, it is undisputed that Daugerdas brought the Short Sale from Arthur Andersen to Altheimer & Gray. Moreover, the proof supported the conclusion that Daugerdas was the laboring oar in structuring the Short Options, Swaps, and HOMER tax shelters.

8.  ¶ 30.  Improper Quarrel. The record fully supported the conclusion that the fees were paid to BDO was a result of the sale of the shelters. Nonetheless, we do not object to the inclusion of the language Daugerdas suggests, as the proof showed that BDO did, in certain instances, perform work in connection with the sale and implementation of the Short Sale and SOS shelters with J&G.

9. ¶ 33. Improper Quarrel. The fact that Brubaker was acquitted does not mean that he cannot or should not be labeled a co-conspirator. Juries acquit for numerous reasons, including lenity. Moreover, since the rules of evidence allow introduction of co-conspirator statements based on a preponderance-of-the-evidence standard, evidence of co-conspirator status need not be established beyond a reasonable doubt.

10. ¶ 36. Improper Quarrel. Daugerdas's objection is frivolous, as he was convicted of conspiracy to defraud the IRS, tax evasion, and mail fraud.

11. ¶ 36. Improper Quarrel. Daugerdas's objection is frivolous, as he was convicted of conspiracy to defraud the IRS, tax evasion, and mail fraud.

12. ¶ 37. Improper Quarrel. This objection is frivolous, as the proof established, among other things, that there was no reasonable opportunity for the shelters to make a profit given the fees charged by Daugerdas and his conspirators. Daugerdas's objection that the opinion letters were not intended to deceive the IRS as they "were not directed to the IRS" and were purportedly "privileged communications" ignores the evidence that a primary purpose of the opinion letter and the false statements therein was to provide penalty protection for the client, which would and did require the client to present the letter to the IRS.

13. ¶ 38. Improper Quarrel. The proof plainly established that the opinion letters contained false statements.

14. ¶ 39. Improper Quarrel. The proof plainly established that the opinion letters contained false statements. The reference to the Lonsdale testimony (concerning the outlier Hunt family HOMER transactions) is misleading, as the proof demonstrated that Lonsdale negotiated different terms for the Hunts. Moreover, Lonsdale told Daugerdas, prior to the alterations that he insisted on, that the generic HOMER options could not result in a profit.

15. ¶ 40. This objection should be rejected as it is articulating the fee calculation in a slightly different way --- and one that does not render the PSR's statement as incorrect. In fact, the proof should that a client wishing to produce a $20 million loss was charged a fee based on a percentage of that loss figure --- typically 4-5% of the loss.

16. ¶ 41. Improper Quarrel. The proof abundantly showed that Daugerdas and his co-conspirators caused hundreds of clients to claim false tax deductions.

17. ¶ 42. Improper Quarrel. The proof abundantly established these facts at trial.

18. ¶ 42. Improper Quarrel. The proof abundantly established Daugerdas's involvement in illegal backdating.

19. ¶ 42. Improper Quarrel. The backdating plainly involved a violation of tax accounting rules. It is telling that Daugerdas offered nothing at trial, and offers nothing here, in support of his contention that the conduct was licit or otherwise consistent with the annual accounting principles contained in the Internal Revenue Code and the case law.

20. ¶ 43. Improper Quarrel. The proof plainly showed Daugerdas's involvement in the Toporek backdating, as made clear in paragraphs 44-45 of the PSR.

21. ¶ 45. Improper Quarrel. The proof showed that Daugerdas put a false set of facts in the Toporek opinion letter, as those facts were based on the backdating.

22. ¶ 46. Improper Quarrel. This objection is frivolous, as the illicit backdating plainly led to the preparation and filing of false tax returns.

23. ¶ 47. Improper Quarrel. The proof demonstrated that the Coleman, Blair, and Aronoff transactions were fraudulently backdated.

24. ¶ 49. Improper Quarrel. The facts contained in paragraph 49 were undertaken as part of the conspiracy and scheme to fraudulently backdate tax shelter transactions. The fact that the paragraph mentions conduct of co-conspirators is therefore entirely proper. Moreover, the fact that the Deutsche Bank documents reflected "as of" changes does not convert a February 2002 transaction into a December 2001 transaction. Finally, the IRS was not informed of these fraudulent fixes.

25. Page 23, footnote 2. Improper Quarrel. This objection is baseless, as the court cases that have construed this basis-enhancing tax play have used the same "artificial basis" language.

26. ¶ 50. Improper Quarrel. The facts demonstrated that the Coleman and Blair transactions were fraudulently backdated.

27. ¶ 51. Improper Quarrel. The facts demonstrated that the Aronoff transactions were fraudulently backdated.

28. ¶ 51. Improper Quarrel. The facts demonstrated that the Aronoff transactions were fraudulently backdated, and that fraudulent tax returns were prepared as a result.

29. ¶ 52. Improper Quarrel. The facts demonstrated that the tax shelter transactions that gave rise to Daugerdas's fee income were fraudulent.

30. ¶¶ 53-54. Improper Quarrel. The facts surrounding Daugerdas's payments to Guerin, as explained by Erwin Mayer at the initial trial and by the Government in connection with Guerin's sentence, showed that Guerin and Daugerdas arranged a system by which Guerin ceded origination credit for certain transactions to Daugerdas, in order for Daugerdas to collect the full 70% of the fee pursuant to his compensation agreement. Daugerdas then paid Guerin a portion of the fees from those ceded

transactions rather than having Guerin's compensation decided exclusively by the J&G Board of Directors.

31.    ¶ 55. Improper Quarrel. The facts relating to Daugerdas's personal tax reporting were part and parcel of the IRS Obstruction charge of which Daugerdas was convicted in Count Thirteen. Thus, although it is correct that Daugerdas was acquitted of personal tax evasion, the jury did convict him based on conduct relating to his personal tax reporting.

32.    ¶ 56. Improper Quarrel. These facts were part of the IRS Obstruction charge of which Daugerdas was convicted in Count Thirteen.

33.    ¶ 57. Improper Quarrel. These facts were established at the sentencing hearing.

34.    ¶ 58. Improper Quarrel. These facts were established at the sentencing hearing.

35.    ¶ 58. Daugerdas is correct that the fee was paid to him in November 1994. But the invoice Daugerdas sent to obtain that fee was faxed to Comdisco on September 30, 1994 but dated October 31, 1994 by Daugerdas. Moreover, the fee was recorded by Comdisco as a "finder's fee" notwithstanding Daugerdas's attempt to falsely characterize it as a legal fee.

36.    ¶ 58. The facts in paragraph 58 were established at the sentencing hearing.

37.    ¶ 58. Improper Quarrel. It is undisputed that Daugerdas paid no income tax based in his receipt of the fee, and that his activities concerning the fee were part of the IRS Obstruction charge of which he was convicted at trial.

38.    ¶ 59. Improper Quarrel. Daugerdas essentially concedes that he failed to inform his partners at A&G --- to whom he owed a fiduciary duty of honesty and fair dealing --- that he was obtaining fees as a result of tax-related services he was performing as an attorney.

39.    ¶ 59. Daugerdas is wrong in asserting that A&G was paid fully for the opinions issued by Daugerdas through A&G. In fact, Daugerdas pocketed $400,000 for opinions issued on A&G letterhead, which were paid for in 1999 and which Daugerdas had directed to Treasurex by Jimmy Haber.

40.    ¶ 60. Daugerdas may have had a role in the organization of the Besicorp transaction, but Jimmy Haber also was deeply involved in the organization.

41.    ¶ 60. It is unclear why Daugerdas objects to the assertion that he was "enlisted" to write the Besicorp opinion letter. It is not disputed that Daugerdas wrote the opinion for the transaction.

42.    ¶ 60. It is unclear why Daugerdas objects to the assertion regarding the side fee. Since Daugerdas is not contending that the Besicorp fee magically appeared in his Treasurex account without his knowledge, it stands to reason that he arranged to have the fee sent to that account rather than the J&G

accounts. Moreover, it is undisputed that no taxes were paid on those fees, which conduct was part of the IRS Obstruction charge of which Daugerdas was convicted.

43.     ¶ 62. The testimony given by Daugerdas at his deposition, fairly read, shows he committed perjury when describing the circumstances surrounding his departure from Arthur Andersen.

44.     ¶ 63. Improper Quarrel. Erwin Mayer testified at trial that billions in fraudulent tax benefits were created. The summary charts and other evidence shows that over $7 billion of tax benefits were created in aggregate, leading to evasion of approximately $1.6 billion in taxes.

45.     ¶ 65. The Government's restitution calculations, as reflected in the Government restitution chart (updated to include interest to June 25, 2014), show unpaid taxes due and owing, with interest, of $371,006,397. Daugerdas's challenge to this loss amount is predicated on his legally incorrect view of the verdict.

46.     ¶¶ 65-66. Improper Quarrel. Daugerdas's challenge to this loss amount is predicated on his legally incorrect view of the verdict.

47.     ¶ 70. Daugerdas's challenge to the Sentencing Guidelines calculations is based on his legally incorrect view of the jury verdict and trial evidence. The total tax loss, including relevant conduct, is the figure contained in the PSR. Moreover, the enhancement for sophisticated means is compellingly correct because the scheme was carried out through the creation of the complex tax shelters. In any event, even the backdating activity involved sophisticated means because of the number of steps, and creation of new documents, needed to carry out the fraud.

48.     ¶ 71. Daugerdas's challenge to the "encouraged-others-to-violate-the-law" enhancement under the Sentencing Guidelines is based on his legally incorrect view of the jury verdict. Properly viewed, the verdict showed that Daugerdas sold and caused to be sold illegal tax shelters to hundreds of clients --- thus leading those clients to violate the law.

49.     ¶ 73. Daugerdas's challenge to his leadership enhancement is frivolous, as the criminal activity involved five or more people (Daugerdas, Mayer, Guerin, Beery, Dicker, Bee, Greisman, Kerekes, Parse, et al.) and was otherwise extensive.

50.     ¶¶ 75, 77-78. The offense levels contained in the PSR are correct. Daugerdas's contention to the contrary is predicated on his legally flawed view of the jury verdict and evidence.

51.     ¶ 104. No response necessary.

52.     ¶ 118. The Government has no quarrel with Daugerdas's clarifying objection, except that it should make clear that the receipt of the $491,000 fee from Comdisco came about as a result of introduction of an AA client prior to Daugerdas's August 31, 1994 separation from AA. The total received by Daugerdas was $1,051,000.

53. ¶ 119. No response necessary.

54. ¶ 120. No response necessary.

55. ¶ 121. The Government agrees with this objection.

56. ¶ 124. The offense levels contained in the PSR are correct. Daugerdas's contention to the contrary is predicated on his legally flawed view of the jury verdict and evidence.

57. ¶ 134. The offense levels contained in the PSR --- and the attendant fine range --- are correct. Daugerdas's contention to the contrary is predicated on his legally flawed view of the jury verdict and evidence.

58. ¶ 136. Daugerdas's challenge to the restitution figures advanced by the Government is based on his legally flawed view of the jury verdict and the evidence.

59. ¶ 137. Daugerdas's challenge to the forfeiture figures advanced by the Government is based on his legally flawed view of the jury verdict and the evidence. The "proceeds" obtained by Daugerdas and subject to forfeiture are those obtained by him and his co-conspirators, thus making a money judgment of $180 million appropriate. Furthermore, Daugerdas's contention that forfeiture of the full amount of proceeds is inappropriate because he was not convicted of all of the charges in the indictment is legally incorrect. Forfeiture is appropriate only for those counts that serve as forfeiture predicate offenses --- here, mail fraud (Count Seventeen) and conspiracy to commit mail/wire fraud (Count One). Given that Daugerdas was convicted of both of the forfeiture predicates, the full measure of forfeiture is appropriate.

                                                Respectfully submitted,

                                                PREET BHARARA
                                                United States Attorney

                                        By: //s// Stanley J. Okula, Jr.
                                                Stanley J. Okula Jr.
                                                Nanette L. Davis
                                                Assistant U.S. Attorneys
                                                (212) 637-1585/1117

cc:    Henry Mazurek, Esq.
       Brian Linder, Esq.
       Colleen Tyler, Senior U.S. Probation Officer