

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York   10007*

June 24, 2014

VIA E-MAIL

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    United States v. Paul Daugerdas
                   S6 09 Cr. 581 (WHP)

Dear Judge Pauley:

      The United States respectfully submits this letter in response to the defendant's letter objecting to the imposition of an order of restitution and forfeiture in the amounts sought by the Government.  In sum, the Government is entitled to restitution of $371 million as set forth in our filings with respect to restitution, and to forfeiture in the amount of $164,737,500.  The Government agrees to modify its forfeiture request to ensure that double-counting not occur.

    **I.**     **Restitution**

      Daugerdas objects to restitution primarily based on his view of the verdict as limited solely to the backdated transactions, a view which this Court rejected in its May 7, 2014 Order denying Daugerdas's post-trial motions, and in its June 18, 2014 Order on Daugerdas's PSR objections.  The Court has found that the scope of the tax losses includes all of Daugerdas's Short Sale, Short Options, Swaps, and HOMER transactions.  See June 18, 2014 Order re ¶¶ 62-63.  The Government properly seeks restitution for a subset of those taxpayers, whose transactions are clearly within the scope of the conspiracy and mail fraud counts, and whose taxes remain indisputably unpaid.[1]  Because each of the taxpayers whose unpaid taxes and

---

[1] Restitution can also be ordered on Title 26 offenses as a condition of supervised release.  United States v. Bok, 156 F.3d 157, 167 (2d Cir. 1998).  Therefore, restitution on the IRS obstruction

1

interest are the subject of the restitution request engaged in either a Short Sale or Short options tax shelter sold and implemented by Jenkens & Gilchrist law firm during the course of the conspiracy, their losses are properly includible in a restitution order against defendant Daugerdas.

Daugerdas also argues that an order requiring that Daugerdas pay $ $371 million in restitution would violate his Fifth and Sixth Amendment rights to have the amount of restitution "proven to a jury beyond a reasonable doubt." June 20, 2014 Ltr. at 1-2. This argument is squarely foreclosed by the Second Circuit's opinion in United States v. Reifler, 446 F.3d 65 (2d Cir. 2006). There, the Second Circuit held that the rule of Apprendi v. New Jersey, 530 U.S. 466 (2000), which reserves to juries the determination of any fact (other than the fact of a prior conviction) that increases a defendant's maximum sentence, does not apply to orders of restitution under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. See United States v. Reifler, 446 F.3d at 118. Reifler reasoned that Apprendi does not apply to restitution because restitution, while "mandatory" in certain cases, "is an indeterminate system," and "the MVRA fixes no range of permissible restitutionary amounts and sets no maximum amount of restitution that the court may order." Id. at 118.

Daugerdas acknowledges that Reifler rejected the very argument he now presses, but argues that Reifler is "undermined" by the Supreme Court's decision in Southern Union Co. v. United States, 132 S. Ct. 2344 (2012). (Ltr. at 2 n.1). Daugerdas's reading of Southern Union goes too far, as that case did not overrule Reifler either explicitly or otherwise. Reifler, therefore, remains binding precedent.

In Southern Union, which does not address restitution at all, the Supreme Court held that the Apprendi rule applies to criminal fines. The criminal statute at issue in the case, which prohibited storing liquid mercury without a permit, authorized a maximum fine of $50,000 for each day of violation. Southern Union Co., 132 S. Ct. at 2349. The Supreme Court ruled that, in order for a district court to impose a fine greater than $50,000, the jury must make a finding as to the duration of the violation. In so holding, the Court recognized that there could be no "Apprendi violation where no maximum is prescribed." Id. at 2353. Thus, far from requiring jury determinations as to restitution, Southern Union acknowledges that Apprendi is not implicated where a statute—like the restitution statute at issue here—does not set a maximum penalty. Indeed, four United States Courts of Appeals have rejected Apprendi-type challenges to restitution based on Southern Union, relying on the very reason the Second Circuit identified in Reifler. See United States v. Jarjis, 551 Fed. Appx. 261 (6th Cir. 2014); United States v. Wolfe, 701 F.3d 1206, 1216-17 (7th Cir. 2013); United States v. Green, 722 F.3d 1146 (9th Cir. 2013); United States v. Day, 700 F.3d 713, 732 (4th Cir. 2012).

That Southern Union has no impact on Reifler is further underscored by the Second Circuit's decision in United States v. Pfaff, 619 F.3d 172 (2d Cir. 2010). In Pfaff, based on Apprendi, the Second Circuit vacated a $6 million fine, which was twice the statutory maximum

---

count, Count 13, is also proper.

fine, because the district court had relied on its own factual findings.  Id. at 173-74.  The Second Circuit specifically distinguished Reifler, however, and noted that "the criminal fine scheme, unlike those for restitution and forfeiture, is in fact subject to statutory maximums." Id. at 175.  Thus, even before Southern Union, the Second Circuit recognized that Apprendi applied to certain criminal fines, but also recognized that Apprendi does not apply to "indeterminate schemes without statutory maximums," such as restitution.  Id.

### II. Forfeiture

Daugerdas objects to the imposition of a forfeiture order that goes beyond the backdating transactions.  In tendering this objection, Daugerdas largely recycles arguments that have already been rejected by this Court.  First, Daugerdas argues that there was insufficient evidence to establish that any financial institution was "affected" and that the indictment failed to allege that the mail fraud affected a financial institution (June 20, 2014 Ltr. at 2-3 & n.3).  This Court properly rejected the same arguments in the context of the defendant's post-trial motion.  (See May 7, 2014 Order Denying Def. Post-Trial Motions at 7-8).

Second, Daugerdas argues that the tracing evidence submitted by the Government failed to establish a nexus between the property sought to be forfeited and the proceeds of the offenses of conviction, to wit, that the tax shelter clients paid their fees to Jenkens & Gilchrist law firm and not to PMD Chartered, and therefore tracing out of the PMD Chartered account to the various other accounts and assets is insufficient.  (June 20, 2014 Ltr. at 3-4).  As this Court previously found, in rejecting Daugerdas's August 2012 pro se motion to vacate the post-indictment restraining order (Dkt #545), "but for" the tax shelter fraud, Daugerdas would not have been paid the staggering amount of fees he collected in compensation.  (See Nov. 7, 2012 Order Denying Pro-Se Motion to Vacate at 4-5 (Dkt. #574)).

The cases cited by Daugerdas are of no help to him.  In United States v. Rothstein, Rosenfeldt, Adler, P.A., 717 F.3d 1205 (11th Cir. 2013), the Eleventh Circuit rejected the Government's attempt to forfeit the law firm's deposit accounts as proceeds of defendant Scott Rothstein's Ponzi scheme.  The Eleventh Circuit found that the commingling of Ponzi scheme deposits made tracing impossible: "The sheer volume of financial information available and required to separate tainted from untainted monies in this case leads us to the conclusion that it is far more appropriate to apply the Third Circuit's rule in Voigt [applying a substitute asset theory of forfeiture] than the exception to that rule it lays out in Stewart."  717 F.3d at 1213.  Here, however, Daugerdas's interest in those fees attached at the time of payment of the fees to Jenkens & Gilchrist, pursuant to his employment agreement with the firm.  (See GX 201-34).  Thus, the "separation" issue identified in Rothstein is not present with respect to Daugerdas, as his fees were separated out by the firm and paid to PMD Chartered pursuant Daugerdas's employment agreement.  And, "but for" the fraud, Daugerdas would not have received the fees in question. United States v. Porcelli, 865 F.2d 1352, 1365 (2d Cir. 1989).

The Second Circuit's decision in United States v. Peters, 732 F.3d 93 (2013), supports the forfeiture in the instant case, as it reaffirmed the rule that "proceeds" obtained indirectly by a

defendant are subject to forfeiture.  By virtue of Daugerdas's employment agreement, the fees paid to him were in fact essentially under his control, as they were fees to which he was entitled to be paid pursuant to the agreement, a fact not disputed by Daugerdas.   Because of this employment agreement, there is no need to pierce the corporate veil, as was done in the Peters case.   Nor does Peters stand for the proposition that the exclusive way the Government can prove the indirect receipt of proceeds is by piercing the corporate veil.

Finally, the Government agrees with the defendant that there should be a reduction in the $180 million forfeiture money judgment sought by the Government in order to avoid double-counting a total of $15,262,500 in funds paid by Daugerdas to Guerin ($8,950,000 in 2000 and $4,000,000 in 2001) and to Mayer ($850,000 and $1,462,500, both in 2000) as extra compensation. Therefore, the Government amends its forfeiture request to request a forfeiture money judgment of $164,737,500.   The Government disagrees with the defendant that the fees obtained by Field and Brubaker must be excluded as the Government has proven their participation in the conspiracy by a preponderance of the evidence. See One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 235 (1972) (per curiam) (trial acquittal did not foreclose subsequent forfeiture, given different burdens of proof).

        Respectfully submitted**,**

        PREET BHARARA
        United States Attorney
        Southern District of New York

By: __/s/Nanette L. Davis.__
        Stanley J. Okula, Jr.
        Stan.okula@usdoj.gov
        Nanette L. Davis
        Nanette.l.Davis@usdoj.gov
        Assistant United States Attorneys
        Tel.: (212) 637-1585/1117

Enclosure

cc: Defense Counsel of Record (Via E-Mail)