UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,                                        :

                                                                           :   S6 09 CR 581 (WHP)
        - v. -
                                                                             :

PAUL M. DAUGERDAS,                                               :

                       Defendant.                                 :

-------------------------------------------------------------------X

ELEANOR DAUGERDAS,                                               :

                       Petitioner.                                :

-------------------------------------------------------------------X

**MEMORANDUM OF LAW OF PETITIONER ELEANOR DAUGERDAS
IN OPPOSITION TO THE GOVERNMENT'S MOTION
TO DISMISS THIRD-PARTY PETITION**

James R. DeVita
DAY PITNEY LLP
7 Times Square
New York, New York 10036
Phone: (212) 297-5800
Facsimile: (212) 499-4111

*Attorneys for Petitioner
Eleanor Daugerdas*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1
STATEMENT OF FACTS ............................................................................................................1
ARGUMENT..................................................................................................................................8
I.    The Government Has the Burden of Proof. ......................................................................8
II.    The Government Does Not Have an Interest in the Subject Accounts. ............................9
III.    The Subject Accounts Constitute Substitute Property......................................................11
CONCLUSION.............................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re One Star Class Sloop Sailboat*,
517 F. Supp. 2d 546 (D. Mass. 2007)..................................................................................14

*Pacheco v. Serendensky*,
393 F.3d 348 (2d Cir. 2004) ...................................................................................................8

*United States v. Banco Cafetero Panama*,
797 F.2d 1154 (2d Cir. 1986).......................................................................................... 13, 14

*United States v. Capoccia*,
503 F.3d 103 (2d Cir. 2007) ...................................................................................................8

*United States v. Erpenbeck*,
682 F.3d 472 (6th Cir. 2012) ................................................................................................10

*United States v. Jackson*,
718 F. Supp. 1288 (N.D. W. Va. 1989).................................................................................14

*United States v. Jennings*,
No. 5:98-CR-418, 2007 U.S. Dist. LEXIS 46028 (N.D.N.Y June 25, 2007).........................10

*United States v. Kramer*,
No. 1:06 Cr. 200, 2006 U.S. Dist. LEXIS 89034 (E.D.N.Y. Dec. 8, 2006) .............................9

*United States v. Louthian*,
No. 1:12CR00002, 2013 U.S. Dist. LEXIS 20866 (W.D. Va. Feb. 15, 2013).......................14

*United States v. McHan*,
345 F.3d 262 (4th Cir. 2003) ................................................................................................10

*United States v. Ovid*,
No. 09-CR-216, 2012 U.S. Dist. LEXIS 80049 (E.D.N.Y. June 8, 2012).............................11

*United States v. Peterson*,
820 F. Supp. 2d 576 (S.D.N.Y. 2011) ........................................................................ 9, 10, 14

*United States v. Rothstein, Rosenfeldt, Adler, P.A.*,
717 F.3d 1205 (11th Cir. 2013).................................................................................... 12, 13

*United States v. Salvangno*,
No. 5:02 Cr. 051, 2006 U.S. Dist. LEXIS 61471 (N.D.N.Y. July 21, 2006) ...........................9

*United States v. Schwimmer*,
    968 F.2d 1570 (2d Cir. 1992) ............................................................................................. 8

*United States v. Voigt*,
    89 F.3d 1050 (3d Cir. 1996) ....................................................................................... 13, 15

**Statutes**

18 U.S.C. § 2 ................................................................................................................................. 2

18 U.S.C. § 371 ............................................................................................................................. 2

18 U.S.C. § 981 ............................................................................................................................. 9

18 U.S.C. § 982 ......................................................................................................... 8, 11, 14, 15

18 U.S.C. § 1341 ........................................................................................................................... 2

18 U.S.C. § 1963 ......................................................................................................................... 12

21 U.S.C. § 853 ........................................................................................................ 8, 9, 11, 12, 15

26 U.S.C. § 7201 ........................................................................................................................... 2

26 U.S.C. § 7212 ........................................................................................................................... 2

28 U.S.C. § 2461 ........................................................................................................................... 9

**Rules**

Fed. R. Crim. P. 32.2 ........................................................................................................ 3, 8, 9, 11

**INTRODUCTION**

Eleanor Daugerdas ("Petitioner") submits this memorandum of law in opposition to the government's motion to dismiss the Verified Petition of Eleanor Daugerdas for Determination of Third-Party Interest in Property Subject to Forfeiture (the "Petition").[1] Petitioner's and PMD Investments LLC's ("PMD") legal right, title and interest in property subject to the Court's Preliminary Order of Forfeiture as To Specific Property/Money Judgment entered on June 26, 2014 (the "Forfeiture Order"), predated and is superior to the government's interest. The property owned by Petitioner and PMD is not offense property and thus is subject to forfeiture as substitute property only if government's interest vested prior to the time Petitioner's or PMD's interests vested. Because the government's interest in substitute assets vests no earlier than when the grand jury votes the forfeiture counts of the indictment relating to the subject property, and Petitioner and PMD obtained legal right, title and interest in the property prior to that time, the property lawfully owned by Petitioner and PMD is not subject to forfeiture.

**STATEMENT OF FACTS**

Petitioner is the wife of defendant Paul M. Daugerdas. Pet., ¶ 1, Docket Item 853. PMD is a Delaware limited liability company. Petitioner is the sole owner of PMD by virtue of an

---

[1] Petitioner is filing a contemporaneous Motion for Leave to Amend the Verified Petition to add PMD Investments LLC as a petitioner-claimant. The Amended Verified Petition is intended to correct a technical error as PMD Investments LLC is the proper party to assert a claim with respect to the accounts held in PMD's name. The government does not oppose the motion and will not be prejudiced by the addition of PMD because PMD presents the same claim previously asserted by Petitioner. For the same reasons, the proposed amendment does not affect the merits of the instant motion.

Petitioner respectfully requests that the Court grant Petitioner's Motion for Leave to Amend the Verified Petition before deciding the motion to dismiss so that the correct parties may appeal, if necessary.

assignment from defendant Paul M. Daugerdas executed on or about December 31, 2002.[2]  Pet., ¶ 3.

On October 31, 2013, Mr. Daugerdas was found guilty at trial of conspiracy to defraud the United States, commit tax evasion, and engage in a mail and wire fraud scheme, in violation of 18 U.S.C. § 371 (Count One); tax evasion, in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7201 (Counts Five through Seven and Eleven); a corrupt endeavor to obstruct the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a) (Count Thirteen); and mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Count Seventeen).  Following Mr. Daugerdas' conviction, the Court granted the government's application and entered the Forfeiture Order.  Docket Item 836.

Petitioner and PMD have legal right, title and interest in the following property identified in the Forfeiture Order:

    a. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Fidelity, Account Number 03-375152, held in the name of PMD Investments LLC;

    b. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Smith Barney, Account Numbers 383-25091-15 and 383-47731-15, held in the name of PMD Investments LLC;

    c. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Morgan Stanley, Account Number 844-354504, formerly Account Number 06-78C3Z, held in the name of PMD Investments LLC;

---

[2] For purposes of this motion to dismiss, the facts set forth in the Petition are assumed to

d. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Credit Suisse, Account Number 24N-018007, held in the name of PMD Investments LLC;

e. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Deutsche Bank, Account Numbers 5XR-087746, 5XR-122063 and 5XR-104715, held in the name of PMD Investments LLC;

f. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Fidelity, Account Number Z46-6223261, held in the name of Eleanor Spina Daugerdas TRUST U/A 05/23/85[3] (formerly held in Account Number 03-315540 in the name of Eleanor Spina Daugerdas at Fidelity);

g. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Goldman Sachs & Co., Account Number 4XDG, held in the name of Eleanor L. Daugerdas;

h. Any and all securities, United States currency, funds, or other monetary instruments on deposit at North Shore Community Bank & Trust Company, Account Number 0317008390, held in the name of Eleanor L. Daugerdas; and

i. Any and all securities, United States currency, funds, or other monetary instruments on deposit at Fifth Third Bank, Account Number 7233463814, held in the name of Eleanor Spina Daugerdas Trust.[4]

(Collectively, the "Subject Accounts"). *See* Pet., ¶ 2.

---

be true. Fed. R. Crim. P. 32.2(c)(1)(A).

[3] Petitioner Eleanor Daugerdas is the Trustee of Eleanor Spina Daugerdas TRUST U/A 05/23/85.

[4] Petitioner Eleanor Daugerdas is the Trustee Eleanor Spina Daugerdas Trust.

-3-

Deposits into the PMD Accounts

All deposits into the PMD accounts were made in or before 2003.

- On or about February 8, 2001, approximately $6,179,960 in securities was deposited into Fidelity Investments Account Number 03-375152, held in the name of PMD Investments LLC.  Mazzella Decl., ¶ 19 and Ex. D.[5]

- On or about April 4, 2000 and January 5, 2001, approximately $1,000,000 and $4,000,000, respectively, was deposited into Smith Barney Account Number 383-25091-15, held in the name of PMD Investments LLC.  Mazzella Decl., ¶ 22 and Ex. F.  On or about January 12, 2001, January 16, 2001, and January 18, 2001, approximately $500,000, $2,500,000, and $255,500 respectively, was transferred from Smith Barney Account Number 383-25091-15, held in the name of PMD Investments LLC, to Smith Barney Account Number 383-47731-15, held in the name of PMD Investments LLC.  *Id.*

- On or about February 6, 2001 and November 7, 2001, approximately $2,000,000 and $2,000,000, respectively, was deposited into Morgan Stanley Account Number 06-78C3Z, held in the name of PMD Investments LLC.  On or about September 7, 2001, securities holdings with a value of approximately $1,671,055 were withdrawn from Morgan Stanley Account Number 06-78C3Z, held in the name of PMD Investments LLC.  Mazzella Decl., ¶ 23 and Ex. G.

---

[5] References to the "Mazzella Decl." are to the Declaration of Christine Mazzella in Support of Application for a Preliminary Order of Forfeiture dated June 18, 2014.  Docket Item 824.

- On or about September 7, 2001, securities holdings with a value of approximately $1,671,055 were deposited into Credit Suisse Account Number 24N-018007, held in the name of PMD Investments LLC.  *Id.*

- On or about February 10, 2003, security holdings worth approximately $601,931 were deposited into Deutsche Bank Account Number 5XR-087746, held in the name of PMD Investments LLC.  On or about February 10, 2003, securities holdings with an approximate value of $325,461 were deposited into Deutsche Bank Account Number 5XR-104715, held in the name of PMD Investments LLC. On or about February 10, 2003, securities holdings with an approximate value of $2,900,000, were deposited into Deutsche Bank Account Number 5XR-122063, held in the name of PMD Investments LLC.  Subsequently, approximately $2,300,000 was withdrawn from Deutsche Bank Account Number 5XR-122063. Mazzella Decl., ¶ 27 and Ex. K.

Deposits into Additional Accounts Owned by Petitioner

- On or about February 3, 2000, November 7, 2000, and January 5, 2001, approximately $2,000,000, $1,000,000, and $2,000,000, respectively, was deposited into Fidelity Investment Account Number 03-315540, held in the name of Eleanor Spina Daugerdas.  On or about February 19, 2009, approximately $4,869,371 in securities was deposited into Fidelity Investments Account Number Z46-6223261, held in the name of Eleanor Spina Daugerdas Trust U/A 05/23/85. Mazzella Decl., ¶ 18 and Ex. D.

- On or about May 16, 2008 approximately $1,000,000 from Deutsche Bank Account Number 5XR-122063, held in the name of PMD Investments LLC, was

transferred to Goldman Sachs Account Number 4XDG, held in the name of Eleanor L. Daugerdas. *Id.* at ¶ 27 and Ex. K.

- On or about July 3, 2009, approximately $250,000 was deposited into North Shore Community Bank Account Number 0317008390, held in the name of Eleanor L. Daugerdas. These funds were transferred from Fifth Third Bank Account Number 7233463814, held in the name of Eleanor Spina Daugerdas Trust. *Id.* at ¶ 34 and Ex. L.

- On or about June 22, 2009, approximately $45,000 was transferred into Fifth Third Bank Account Number 7233463814, held in the name of Eleanor Spina Daugerdas Trust, from Fifth Third Bank Account Number 7233463822, held in the name of Paul M. Daugerdas By Eleanor Spina Daugerdas. *Id.* at ¶ 33. Additional deposits were made into Fifth Third Bank Account Number 7233463814 as follows: June 22, 2009, approximately $100,000; June 22, 2009, approximately $85,000; June 19, 2009, approximately $670,000; March 17, 2009, approximately $150,000; September 26, 2008, approximately $90,000; and September 11, 2008, approximately $10,000. *Id.* These funds were transferred from Fifth Third Bank Account Number 7232734991, held in the name of Paul M. Daugerdas and Eleanor Daugerdas. *Id.* On or about July 3, 2009, approximately $250,000 was transferred from Fifth Third Bank Account Number 7233463814 into North Shore Community Bank Account Number 0317008390, held in the name of Eleanor L. Daugerdas. Subsequently, on or about July 8, 2009, approximately $100,000 was transferred from Fifth Third Bank Account Number 7233463814. *Id.* at ¶ 34 and Ex. L.

The Forfeiture Counts

The first forfeiture count relating to the Subject Accounts was filed on June 23, 2009. *See* Superseding Indictment, Docket Item 14.  This forfeiture count identified only the United States currency, funds, or other monetary funds on deposit in the following accounts:

a.  Fidelity Account Number 03-375152, held in the name of PMD Investments LLC;

b.  Morgan Stanley Account Number 06-78C3Z, held in the name of PMD Investments LLC;

c.  Deutsche Bank Account Number 5XR-122063, held in the name of PMD Investments LLC;

d.  Fidelity Account Number Z46-6223261, held in the name of Eleanor Spina Daugerdas Trust U/A 05/23/85; and

e.  Fidelity Account Number 03-315540 in the name of Eleanor Daugerdas.

All of the Subject Accounts, including certain additional accounts, were identified in the forfeiture count included in the Second Superseding Indictment, which was filed on November 19, 2009.  *See* Docket Item 56.

**ARGUMENT**

**I.      The Government Has the Burden of Proof**.

The nature and extent of the government's burden turns on whether it seeks to forfeit property as the proceeds of, or derived from, the defendant's crimes of conviction ("offense property"), or property of the defendant other than offense property ("substitute property"). *Compare* 18 U.S.C. § 982(a)(2) and 21 U.S.C. § 853(a) *with* 21 U.S.C. § 853(p)(2).

Federal Rule of Criminal Procedure 32.2 identifies the government's burdens with respect to forfeitures of offense property and substitute property. With respect to offense property, the Rule provides that "[i]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A); *see United States v. Capoccia*, 503 F.3d 103, 115-17 (2d Cir. 2007) (vacating forfeiture order where the government failed to establish the "requisite nexus" between the funds and the conduct that gave rise to defendant's conviction). With respect to substitute property, the government need not establish a nexus to the offense, but must demonstrate the property is "property of the defendant." 21 U.S.C. § 853(p)(2). Rule 32.2 provides that property may not be included in a final order of forfeiture unless, and only to the extent that, "the court finds that the defendant . . . had an interest in the property that is forfeitable under the applicable statute." Fed. R. Crim. P. 32.2(c)(2); *see also Pacheco v. Serendensky*, 393 F.3d 348, 354 (2d Cir. 2004) (government may forfeit only defendant's "interest in the [p]remises"); *United States v. Schwimmer*, 968 F.2d 1570, 1580-81 (2d Cir. 1992) ("[A]n order of forfeiture may reach only property of the defendant . . . ."). Here, the government has not made, and cannot make, such a showing.

The critical difference between offense property and substitute property forfeitures is that the government's ability to forfeit substitute property does not "relate back" to the act(s) giving rise to the forfeiture, but is effective only as of the date of the indictment containing the forfeiture count, at the earliest. *See United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011).[6] Thus, unless the property at issue was "property of the defendant" as of the date of the indictment containing the forfeiture count, the burden does not shift to a claimant to establish the validity of her claims under the "superior interest" or "bona fide purchaser for value" provisions of 21 U.S.C. § 853(n)(6). Here, because Petitioner and PMD obtained legal right, title and interest in the property prior to that time, the burden of proof remains with the government.

## II.   The Government Does Not Have an Interest in the Subject Accounts.

Because the Subject Accounts constitute substitute property (see Point III, *infra*) in which the defendant does not have an interest, they are not subject to forfeiture.

There are only two bases upon which the government may criminally forfeit property: (1) as offense property; or (2) as substitute property. *See* 21 U.S.C. § 853(a); 21 U.S.C. § 853(p); Fed. R. Crim. P. 32.2(b)(1)(A); *see also* 18 U.S.C. § 981(a)(2). Section 853(c) provides that the government's interest in offense property proceeds vests at the time of the offense giving rise to the forfeiture. *See* 21 U.S.C. § 853(c). However, this "relation back" doctrine does not determine when the government's interest in substitute property vests. *Peterson*, 820 F. Supp. 2d

---

[6] Other cases within the Second Circuit have held that the government's interest in substitute assets does not attach until after the defendant is convicted. *United States v. Salvangno*, No. 5:02 Cr. 051, 2006 U.S. Dist. LEXIS 61471, at *69-70 (N.D.N.Y. July 21, 2006) (finding government does not have an interest in substitute assets until forfeiture order entered), *adopted by* 2006 U.S. Dist. LEXIS 65686 (N.D.N.Y. Aug. 28, 2006); *United States v. Kramer*, No. 1:06 Cr. 200, 2006 U.S. Dist. LEXIS 89034, at *28 (E.D.N.Y. Dec. 8, 2006) (finding "the Government has no colorable property interest in substitute assets of a defendant at least until the time of conviction").

at 585 (finding that the government's interest in substitute property vests upon return of indictment); *see also United States v. Erpenbeck*, 682 F.3d 472, 477-78 (6th Cir. 2012) (finding that the government's interest in substitute assets did not vest until the defendant was convicted); *contra United States v. McHan*, 345 F.3d 262, 271 (4th Cir. 2003) (finding that substitute assets are treated like any other asset subject to forfeiture).

The Second Circuit has yet to rule on when the government's interest in substitute property vests. *See Peterson*, 820 F. Supp. 2d at 584; *United States v. Jennings*, No. 5:98-CR-418, 2007 U.S. Dist. LEXIS 46028, at *10 (N.D.N.Y June 25, 2007) (finding the relation back principle would not apply to substitute assets). In *Peterson*, Circuit Judge Chin (sitting on the District Court) concluded that "the government's interest in substitute assets vests upon the issuance of the grand jury indictment." 820 F. Supp. 2d at 585. Judge Chin reviewed district court cases from within the Second Circuit, which held the government's interest vests even later. *Id.* at 584-85 (citing *Salvangno*, 2006 U.S. Dist. LEXIS 61471, at *69-70 and *Kramer*, 2006 U.S. Dist. LEXIS 89034, at *28). In finding that the government's interest in substitute property vests upon issuance of a grand jury indictment, Judge Chin reasoned that a defendant notified by indictment that his property is subject to forfeiture might attempt to dissipate the property, which would undermine the criminal forfeiture statute. *Peterson*, 820 F. Supp. 2d at 585.

*Peterson* appears to be the most relevant authority to this case, since it is the most recent case in the Second Circuit and was decided in this District. Nonetheless, under any of the vesting dates for substitute property utilized by courts in this Circuit, Petitioner and PMD are the lawful owners of the property in the Subject Accounts. Petitioner and PMD acquired their respective right, title, and interest in the Subject Accounts prior to the indictments containing the

relevant forfeiture counts, and well before defendant's conviction or entry of the Forfeiture Order. Thus, the government does not have an interest in the Subject Accounts and they may not be forfeited as substitute property. *See United States v. Ovid*, No. 09-CR-216, 2012 U.S. Dist. LEXIS 80049, at *23 n.5 (E.D.N.Y. June 8, 2012) (because the defendants never owned the forfeited property, a preliminary order of forfeiture should not have been entered).

### III. The Subject Accounts Constitute Substitute Property.

The criminal forfeiture law at issue here is 18 U.S.C. § 982(a)(2)(A), which provides that a defendant convicted of mail or wire fraud charges affecting a financial institution shall "forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." *See* Gov't Memo at 5. Proceeds are, by definition, specific property, which may be forfeited only where the government "establishe[s] the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). Indeed, the Advisory Committee notes to Federal Rule of Criminal Procedure 32.2 provide that funds on deposit in a bank account is a type of "specific property" that requires such a showing by the government. Fed. R. Crim. P. 32.2(b), advisory committee's note (2000). If the government cannot establish the requisite nexus because tainted funds have "as the result of any act or omission of the defendant . . . been commingled with other property which cannot be divided without difficulty," the government may seek forfeiture of the funds as substitute property to satisfy a money judgment. 21 U.S.C. § 853(p).

Here, the government has failed to prove that the Subject Accounts had a nexus to the crime.[7] In support of its application for the Forfeiture Order, the government provided the Court

---

[7] The government argues that the Court has twice held that all the funds Mr. Daugerdas received as compensation from Jenkins & Gilchrist were "proceeds." Gov't Mem. at 5. Neither Petitioner nor PMD was a party to the action and had no opportunity to litigate whether the funds

-11-

with the Mazzella Decl., which allegedly traces fees received by PMD Chartered from Jenkens & Gilchrist and distributed to other accounts, including the Subject Accounts. *See* Docket Item 824. However, fee payments from Jenkens & Gilchrist's clients to the firm were deposited into the firm's general accounts rather than the PMD Chartered account. The allegedly tainted fees from Mr. Daugerdas' tax shelter work thus were commingled with the untainted fees from countless other clients generated by the legal services of hundreds of lawyers providing those services over many years, and further diluted by numerous intervening deposits and withdrawals.

In a recent case on point, *United States v. Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205 (11th Cir. 2013), the Eleventh Circuit held that funds in the bank accounts of convicted Ponzi-schemer Scott Rothstein's law firm were not subject to a government forfeiture order because the commingled proceeds could not have been divided without difficulty. *Id.* at 1214. The Rothstein investors' funds were deposited into the law firm's bank accounts and commingled with legitimate income law firm received from billings of its seventy lawyers for four years. *Id.* at 1213. The Eleventh Circuit found that funds can be forfeited as proceeds only once the government has established a nexus between the property and the offense, and that simply permitting the government to seize an amount of money equal to the amount of deposits of fraudulently obtained money would negate the substitute asset provisions of both 21 U.S.C. § 853(p) and 18 U.S.C. § 1963(m). *Id.* at 1214. The Eleventh Circuit suggested that the

---

in the Subject Accounts were proceeds of the alleged fraud scheme. The Court is free to reconsider its decision as to Petitioner and PMD. Moreover, the distinction between whether the Subject Assets constituted offense property or substitute assets does not have the same significance for Mr. Daugerdas as Petitioner and PMD, because the substitute asset provision merely would provide an alternative procedural mechanism for the government to satisfy the forfeiture judgment from Mr. Daugerdas' assets.

defendant's interest in the bank account would be subject to forfeiture as a substitute property. *Id.*

The *Rothstein* court relied on the Third Circuit's decision in *United States v. Voigt*, 89 F.3d 1050, 1088 (3d Cir. 1996) in its analysis. The *Voigt* court found that funds commingled in an account with untainted property could not be traced as a matter of law and thus the government had to use the substitute asset provision to satisfy a forfeiture judgment. The *Voigt* court rejected the government's forfeiture of jewelry purchased with funds "from an account into which money laundering proceeds had been commingled with other funds, and after numerous intervening deposits and withdrawals." *Id*. at 1087-88.

*United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1158-59 (2d Cir. 1986) does not compel a different result. *Banco* identified three ways to trace proceeds deposited into a commingled account containing allegedly tainted funds as well as funds from legitimate transactions: as remaining in the account (a lowest intermediate balance rule), as leaving the account (a first-in, first-out rule), or by allocating the proceeds pro rata (an averaging rule).

Because the allegedly tainted funds flowed through the Jenkens & Gilchrist accounts, the government necessarily relies on the first-in, first-out accounting method outlined in *Banco. Id.* (finding that "If $100 from a drug sale is deposited into an active account . . . [an] approach is to consider 'traceable proceeds' to be any one withdrawal, or any asset purchased with such withdrawal, to the extent of $100. This might be called a 'drugs-in, first-out' rule."). To trace proceeds under the first-in, first-out rule, following the deposit of the allegedly tainted funds, the government must show that: (1) the bank account contained traceable proceeds (the account balance did not fall below the amount of the deposit) and (2) the withdrawal reasonably contained the traceable proceeds (the withdrawal exceeded the deposit of the allegedly tainted

funds).  *Id.* at 1160-61.  Here, the government has not made any showing that the Jenkens & Gilchrist account balance(s) remained greater than the amount of the allegedly tainted fees deposited prior to transfers to the PMD Chartered account during the relevant period (1999-2002).  Moreover, the defendant proffered that allegedly tainted fees were disbursed by the law firm and replaced by untainted fees prior to any transfers to the PMD Chartered account.  *See* Motion to Rescind or Modify Ex Parte Post-Indictment Restraining Order and Restrictions on Assets Alleged to be Subject to Forfeiture and For the Return of Seized Assets, Docket Item 545.

Additionally, several recent decisions have questioned the continuing validity of the *Banco* decision.  *See, e.g.*, *United States v. Louthian*, No. 1:12CR00002, 2013 U.S. Dist. LEXIS 20866, at *14 n.3 (W.D. Va. Feb. 15, 2013) (questioning the continuing validity of *Banco* in a criminal forfeiture case where government bears burden of proof).  The *Louthian* court noted that *Banco* was decided prior to Congress' enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000), which heighted the government's burden of proof to a preponderance of the evidence from probable cause.  *Id.* (citing 18 U.S.C. § 983(c)); *see also Peterson*, 820 F. Supp. 2d at 582 (noting government established right to forfeiture of certain proceeds under 18 U.S.C. § 982(a)(2)(A) by a preponderance of the evidence).  Similarly, the District of Massachusetts noted that, in the wake of CAFRA which raised the government's burden of proof, "the government bear[s] the risk of uncertainty that arises in cases involving withdrawals from accounts commingling [tainted] money and clean money."  *In re One Star Class Sloop Sailboat*, 517 F. Supp. 2d 546, 553 (D. Mass. 2007).

Moreover, *Banco* was decided prior to the enactment of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 (1986).  *See Voigt*, 89 F.3d at 1085; *United States v. Jackson*, 718 F. Supp. 1288, 1292 (N.D. W. Va. 1989).  Through that Act, Congress added

subsection (b) to 18 U.S.C. § 982, which incorporated the Continuing Criminal Enterprise forfeiture statute's substitute property provision (21 U.S.C. § 853(p)). *Id.* That section provides, *inter alia,* that, if the defendant commingled tainted assets subject to forfeiture with other property such that it cannot be divided without difficulty, the court may order the forfeiture of other property of the defendant up to the value of any tainted assets. 21 U.S.C. § 853(p)(1)-(2) (formerly 21 U.S.C. § 853(p)(5)). Thus, only after *Banco* was decided, did Congress contemplate that substitute asset forfeiture should be available in the event that offense property was unreachable through the forfeiture provisions.

Here, the Mazzella declaration does not analyze any of the deposits into Jenkens & Gilchrist accounts or other disbursements from these accounts. Thus, the declaration fails to establish the requisite nexus between the property sought to be forfeited and the offenses of conviction. Because the allegedly tainted funds were commingled with untainted funds in the Jenkens & Gilchrist accounts to such an extent that they "cannot be divided without difficulty," 21 U.S.C. § 853(p)(1)(E), any judgment of forfeiture must be satisfied through the substitute asset provision.

**CONCLUSION**

Petitioner's and PMD's right, title, and interest in the Subject Accounts vested before the government obtained any interest. These assets are not subject to forfeiture as "substitute assets" of defendant Paul M. Daugerdas. Because Petitioner and PMD have right, title, and interest in the Subject Accounts, the Court should amend the Forfeiture Order to exclude the Subject Accounts.

Dated: New York, New York
       November 20, 2014

Respectfully submitted,

DAY PITNEY LLP

By:  ___/s/ James R. DeVita____
     James R. DeVita (JD 5659)

7 Times Square
New York, New York 10036
Phone:  (212) 297-5800
Facsimile: (212) 499-4111
Email: jdevita@daypitney.com

*Attorneys for Petitioner*
*Eleanor Daugerdas*