*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

July 19, 2018

**By ECF & US Mail**

The Honorable William H. Pauley, III
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    United States v. Daugerdas, 09 CR 581 (WHP)
              Daugerdas v. United States, 18 CV 152 (WHP)

Dear Judge Pauley:

      Pursuant to this Court's order entered July 6, 2018, the United States respectfully submits this letter in response to the Reply filed by petitioner Paul M. Daugerdas, in which Daugerdas (1) identified the "specific counts" that purportedly were beyond the statute of limitations at the time he executed the statute of limitations waivers on advice of counsel (Reply at 13-14); and (2) purported to respond to the Government's answering memorandum (Reply at 3-11).  As we demonstrate below, none of the counts that Daugerdas has identified – which related the Short Options tax shelter transaction executed by members of the Risch family – was time-barred at the time he executed the initial waiver.  Moreover, none of the arguments raised by Daugerdas in his reply – which ignore various controlling legal principles or dispositive facts – is persuasive.  Accordingly, his habeas petition should be dismissed in its entirety.

      1.    **The Purported Time-Barred Counts**

      Daugerdas identifies Counts Two through Six as the specific counts that he contends were beyond the statute of limitations at the time he signed the initial statute of limitations waivers in September 2006.  In advancing this contention, Daugerdas points to the April 2000 filing of the tax returns relating to those counts – all of which were filed by members of the Risch family as part of a group SOS transaction (Tr. 7546; GX 700-13 (showing flow of losses to various family members)) – as the operative date for calculating the tax evasion statute of limitations.  (Reply at 13).

      Daugerdas's argument fails for a simple reason:  the filing of the tax returns reporting the Risch family losses was not the last "affirmative act of evasion" that triggered the statute of limitations clock for those counts.  Rather, as the Government pointed out in in its initial response (Mem. 14-15), the statute of limitations triggers for the Risch counts were the false statements

made to the IRS during the IRS's audit of the Risch transaction. E.g., GX 1002-115 (August 2003 letter to IRS); Tr. 7587-88 (Gerald Risch testimony that letter contained false statements); Tr. 7598 (Risch admitting that testimony provided to IRS was misleading); Tr. 8267-68 (discussing false statements made to IRS by Craig Brubaker concerning Risch transaction).

Given the foregoing facts, which Daugerdas simply ignores in his Reply, the challenge to the timeliness of Counts Two through Six should be rejected. *See United States v. Beacon Brass*, 344 U.S. 43, 45–46 (1952) ("[t]he language of [26 U.S.C. § 7201] which outlaws willful attempts to evade taxes 'in any manner' is clearly broad enough to include false statements made to Treasury representatives for the purpose of concealing unreported income"); *United States v. Feldman*, 731 F. Supp. 1189 (S.D.N.Y. 1990) (false statements to IRS, following filing of returns reporting tax shelter losses, triggered statute of limitations).

### 2. The Waivers (Petition Grounds 1, 2, 3, 8)

Daugerdas's reply advances two principal contentions concerning the statute waivers he signed on the advice of Sklarsky. First, in response to the Government's contention that Daugerdas signed the waivers because he was attempting to "ensure" that he would be given adequate time to submit all facts and arguments to the Government concerning any potential charges, and that the Government would have adequate time to consider those facts and arguments, he maintains that this contention is "not factual." (Reply at 2). But that was the language that was contained in the waivers he signed. Daugerdas, a sophisticated tax lawyer whose job revolved around parsing the words of statutes and judicial opinions, should not be allowed to walk away from the words of a document he signed on advice of counsel – particularly where he obtained the benefit of the stipulation by obtaining time to advance written and oral arguments, and to discuss the aspects of the Government's case prior to indictment.

Next, Daugerdas contends that nothing in the Sklarsky Declaration demonstrates a legitimate reason why Sklarsky advised Daugerdas to sign the waivers, and that the Government failed to explain why Sklarsky filed a motion to invalidate the waivers. (Reply at 3). A fair reading of the Sklarsky Declaration refutes these claims. As noted in paragraph four of the declaration, Sklarsky details the various reasons why execution of the waivers benefitted Daugerdas – none of which Daugerdas even attempts to contravene factually or explain away.

In addition, Sklarsky does in fact explain that the motion to invalidate the waivers was not predicated on a deficiency in advice by Sklarsky or Daugerdas's failure to understand the language employed therein, but instead was predicated on his belief – erroneous, as this Court decided – that the failure of the Government to disclose each and every charge that it would seek against Daugerdas (including, eventually, mail fraud charges) rendered the waivers invalid. Sklarsky Declaration ¶ 10. Accordingly, the motion filed by Sklarsky, although designed to invalidate the waivers, was predicated on a wholly different alleged lack of knowledge. If Daugerdas had truly believed at the time that additional claims (like the ones he advances now) should have been made, he had ample opportunity to do so, given that he reviewed the motion filed by Sklarsky. His failure to do so demonstrates that his current claims amount to nothing more than meritless, last-ditch assertions.

### 3. The BDO/Skadden Overt Acts (Petition Grounds 4, 5, 7)

Daugerdas's argument pertaining to Over Act "tt" reduces to a claim that the replacement of the phrase "BDO's Outside Law Firm A," which was contained in the initial indictments, with the actual name of that law firm – Skadden Arps – in the S6 Indictment materially broadened the scope of the indictment because it purported to charge "a different overt act." (Reply at 6). Of course, it did no such thing. The initial indictments described the outside law firm using an anonymized term (*viz.*, "BDO's Outsider Law Firm A"), in keeping with the Department of Justice's general charging policy of not naming unindicted individuals or entities in indictments. But at the time of the S6 indictment, the identification of Skadden Arps as "Outside Law Firm A" was public, having been identified and discussed during the first trial. *See, e.g.*, Trial Tr. 4507-17, 4529-35 (testimony of F. Goldberg); GX 301-1 (engagement letter between BDO and Skadden Arps). Thus, Daugerdas was on notice no later than early 2011 that "Outside Law Firm A" was Skadden Arps, and had previously been provided with discovery that made this fact clear. The identification of the law firm by name in the S6 indictment merely acknowledges that known fact. Accordingly, the addition of the Skadden Arps name in the S6 Indictment did not materially broaden that indictment.

### 4. The Sufficiency of the Mail Fraud Allegations (Petition Ground 7)

Daugerdas persists in his contention that the S3 Indictment insufficiently alleged the defendant's use of the mails, and thus Sklarsky was ineffective in failing to lodge an attack on the mail fraud allegations in Count One (which contained a mail fraud object) and Count Thirty-One (which charged substantive mail fraud). (Reply at 9-10). In doing so, Daugerdas ignores the language of those counts, which specifically alleged that the defendants did "cause matters and things to be deposited in the mail and with private and commercial interstate carriers" in furtherance of the scheme (¶ 65, Count One), and that the defendant, for purpose of executing the mail fraud scheme, "placed and caused to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Post Office," as well as matters to be delivered by private and commercial interstate carrier. (¶ 118, Count Thirty-One). Daugerdas also ignores the authority set forth in our initial response making plain that an indictment is sufficient if it tracks the language of the statute, and that mail fraud counts are not subject to dismissal for failing to specify specific mailings. (Mem. at 25-26).

Tellingly, Daugerdas cites to no controlling case holding that mail fraud allegations like those in S3 Indictment are insufficient. In fact, as we noted previously, the law is otherwise, particularly where, as here, the Government amplified it allegations by providing an extensive bill of particulars with respect to the mailings it sought to prove at trial. Consequently, Daugerdas's attack on the mail fraud allegation is frivolous and should be rejected.

### 5. The *Marinello* Argument (Petition Ground 9)

Daugerdas maintains that he cannot be deemed to have procedurally defaulted because the Supreme Court's opinion in *Marinello v. United States*, 138 S. Ct. 1101 (2018), has invalidated the § 7212(a) counts charged in the indictment. In particular, Daugerdas contends that the indictment was fatally flawed (Reply at 10) because it failed to set forth all the essential elements of a § 7212(a) violation. Daugerdas's reading of *Marinello* is wrong.

*Marinello* does not call into question the validity of the "IRS Obstruction" allegations in the indictments. In *Marinello*, the Supreme Court addressed a failure of proof, not a deficiency in the indictment. The Court held that, to secure a conviction under § 7212(a), the government "must show" that there is a "nexus" between the defendant's obstructive conduct and a pending (or reasonably foreseeable) IRS proceeding. 138 S. Ct. at 1109-10. There, the government had not attempted to show any such nexus between Marinello's conduct and a pending proceeding. *E.g.*, *Marinello*, 839 F.3d at 212 ("Marinello had no knowledge" of an IRS investigation into his conduct.). Accordingly, the Court reversed the Second Circuit's judgment upholding Marinello's § 7212(a) conviction. *See Marinello*, 138 S. Ct. at 1110.

The case law on which *Marinello* relies further demonstrates that the Supreme Court's "nexus" requirement does not bear on the validity of an indictment. In interpreting § 7212(a), the *Marinello* Court relied on *United States v. Aguilar*, 515 U.S. 593 (1995), in which the Court interpreted the similarly worded obstruction-of-justice statute, 18 U.S.C. § 1503(a). *Aguilar* held that a § 1503(a) obstruction offense requires a "nexus" between the defendant's conduct and a judicial or grand jury proceeding. *Id.* at 599. The *Aguilar* Court concluded that the government "did not show" such a nexus at trial, *id.* at 600, a failure of proof, not a problem with the charge.

The *Marinello* Court also cited *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005), in which the Court extended *Aguilar*'s "nexus" requirement to the witness tampering statute, 18 U.S.C. § 1512(b)(2)(A) and (B) (prohibiting corrupt persuasion of another person to destroy evidence). In *Arthur Andersen*, the Court found reversible error in jury instructions that "led the jury to believe that it did not have to find *any* nexus between the 'persua[sion]' to destroy documents and any particular proceeding." 544 U.S. at 707.

Based on the Court's reasoning in *Marinello*, *Aguilar*, and *Arthur Andersen*, it is clear that the "nexus" and pending-proceeding requirements are not separate elements that must be alleged in a § 7212(a) indictment. Several courts have reached the same conclusion in cases involving obstruction charges under 18 U.S.C. §§ 1503 & 1512. *See United States v. Pirk*, 267 F. Supp. 3d 392, 398 (W.D.N.Y. 2017) ("Nexus is an issue of proof, rather than an issue of the sufficiency of the indictment."); *United States v Suarez*, 2014 WL 1898995, at *4 (N.D. Ohio 2014) (agreeing with the government "that the nexus need not be alleged or established in the indictment"); *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (recognizing that *Aguilar* and *Arthur Andersen*'s nexus requirement is one of "proof," not "pleading"); *United States v. Triumph Capital Group, Inc.*, 260 F. Supp. 2d 470, 475 (D. Conn. 2003) (Although the nexus requirement must "be proved at trial," it is not "an element of § 1503 that must be alleged in the indictment."); *cf. United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006) ("The nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of 'corruptly' obstructing or endeavoring to obstruct.").

In light of this authority, to the extent that defendant is arguing that the § 7212(a) count was legally insufficient, his argument is meritless. His argument lacks merit for another reason: it fails to persuasively explain any legitimate "cause" for failing to raise a *Marinello*-type argument on direct appeal. To the extent that Daugerdas contends that the argument was unavailable to him because it was "not the law of the federal circuits" or that the Second Circuit had rejected such a

claim (Reply at 11), those contentions are either factually wrong or irrelevant. As we noted in our initial response, the Sixth Circuit had previously adopted the *Marinello* argument in *United States v. Kassouf*, 144 F.3d 952 (1998). The argument was therefore "available" to Daugerdas on direct appeal. Moreover, as we noted previously (Mem. at 29), the fact that a particular argument had not been previously accepted by the direct appellate court does not render an argument "unavailable," particularly where, as here, the argument was being raised by others at the time of direct review. Thus, Daugerdas's "cause" argument fails, and he should therefore be deemed to have procedurally defaulted his *Marinello* claim.

Finally, Daugerdas does not attempt to contravene the proof showing that he endeavored to obstruct certain IRS audits of his tax shelters, as outlined in our Memo. Instead, he suggests that that his "innocence" is established as a result of the failure of the jury to be instructed on the "nexus" and "pending proceeding" arguments. (Reply at 12). But this suggestion is irrelevant, because the Supreme Court has emphasized that the "actual innocence" inquiry is concerned with "factual innocence, not legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In sum, Daugerdas's *Marinello* arguments are meritless.

### 6. Conclusion

The petition should be dismissed without a hearing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: //s// Stanley J. Okula, Jr.
Stanley J. Okula Jr.
Nanette L. Davis
Special Assistant U.S. Attorneys
(212) 637-1585

cc: Paul M. Daugerdas