UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
: 
UNITED STATES OF AMERICA, :
:
-against- :
: 09cr581
PAUL M. DAUGERDAS, :
: OPINION & ORDER
Defendant. :
-------------------------------------------------------------
:
ELEANOR DAUGERDAS, PMD :
INVESTMENTS LLC, and WBLG :
WALWORTH LLC, :
:
Petitioners. :
:
-------------------------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

Following remand from the Second Circuit, Eleanor Daugerdas, PMD Investments LLC, and WBLG Walworth LLC (collectively, "Petitioners") filed a second amended third-party petition (the "Petition") seeking to amend a preliminary order of forfeiture entered in this case.[1] Specifically, Petitioners assert interests in certain investment accounts (the "Investment Accounts") and real property in Williams Bay, Wisconsin (the "Williams Bay Property") preliminarily forfeited to the Government. The Government moves to dismiss the Petition. For the following reasons, the Government's motion is denied.

## BACKGROUND

In 2009, Petitioner Eleanor Daugerdas's husband, Paul M. Daugerdas,[2] was charged with running a fraudulent tax shelter scheme from 1994 until 2004. (See generally

---

[1] Eleanor Daugerdas owns 100% of the membership interests in both PMD Investments LLC and WBLG Walworth LLC. (Petition, ECF No. 970, ¶¶ 2–3.)

[2] For simplicity, Mr. and Mrs. Daugerdas are referred to by their first names.

1

Indictment, ECF No. 1; S6 Indictment, ECF No. 644.) A jury in this district convicted Paul of conspiracy to defraud the United States and other crimes related to that scheme. On June 26, 2014, this Court entered a Preliminary Order of Forfeiture in the amount of $164,737,500, representing the proceeds of Paul's fraudulent scheme, which included the Investment Accounts and the Williams Bay Property. (See Preliminary Order of Forfeiture ("Forfeiture Order"), ECF No. 836, at 2–6.)[3] Eleanor was barred from participating in Paul's underlying criminal proceedings to assert a claim to the preliminarily forfeited property. See 21 U.S.C. § 853(k)(1).

On August 29, 2014, Eleanor petitioned this Court pursuant to 21 U.S.C. § 853(n) to amend the Forfeiture Order to exclude the Investment Accounts. (See Verified Petition of Eleanor Daugerdas ("Initial Petition"), ECF No. 853, ¶ 2.)[4] She contended that the Investment Accounts could only be forfeited to the Government as "offense property" (i.e., property sharing a "nexus" with the crimes for which Paul was convicted) or as "substitute property" (i.e., as "any other property of [Paul]," if offense proceeds are unavailable). (Initial Petition ¶ 13.) According to Eleanor, the Government failed to establish the requisite "nexus" between the Investment Accounts and the fees that Paul's law firm, Jenkins & Gilchrist ("J&G"), received from Paul's tax shelter clients before they were commingled with other funds. (See Initial Petition ¶ 14.) Because of that failure, Eleanor claimed that the Investment Accounts could only be forfeited as substitute property. "Whether property is forfeited as [offense] proceeds or as substitute [property] is of particular import here because" the forfeiture statute "is less than clear about when the [G]overnment's interest in substitute property vests." United States v. Daugerdas, 892

---

[3] This Court amended the Forfeiture Order on August 6, 2018 and again on October 24, 2018 to correct the descriptions of certain assets listed therein, including several of the Investment Accounts. (See generally ECF Nos. 938, 961.)

[4] The Initial Petition did not assert an interest in the Williams Bay Property.

F.3d 545, 549 (2d Cir. 2018).  Because Eleanor alleged that her interest in the Investment Accounts vested between February 2000 and July 2009—that is, before any indictment against Paul containing the relevant forfeiture counts—she argued that her interest is superior to the Government's.  (See Initial Petition ¶ 15.)

In October 2014, the Government moved to dismiss Eleanor's petition.  In granting the Government's motion, this Court noted that it had twice ruled in Paul's underlying criminal proceedings that the Investment Accounts were forfeited as offense proceeds.  United States v. Daugerdas, 2017 WL 1052592, at *3 (S.D.N.Y. Mar. 20, 2017).  This Court further observed that "third parties [like Eleanor] may not challenge [an] underlying determination of forfeitability in an ancillary forfeiture proceeding."  Daugerdas, 2017 WL 1052592, at *3.  Accordingly, Eleanor's "argument that the funds in the [Investment] Accounts lacked the requisite nexus to [Paul]'s fraud . . . [was] not [hers] to make—it was Paul['s]."  Daugerdas, 2017 WL 1052592, at *3 (fifth alteration in original) (quotation marks omitted).  And Eleanor "ha[d] no constitutional right to stand in her husband's shoes . . . and re-assert the due process claims that he ha[d] already litigated."  Daugerdas, 2017 WL 1052592, at *3.  Since Eleanor could not dispute that the Investment Accounts were offense proceeds, this Court held that the Government's interest vested when Paul's fraud began in 1994.  Daugerdas, 2017 WL 1052592, at *5.

Eleanor timely appealed, and in June 2018, the Second Circuit vacated this Court's Order and remanded for further proceedings.  To begin, the Second Circuit held—as a matter of statutory interpretation—that "§ 853(n)(6)(A) treats third-party claims against property forfeited the same, regardless of whether the property was forfeited as offense proceeds or as substitute assets."  Daugerdas, 892 F.3d at 556.  "Put another way, even if it is unclear when . . .

the [G]overnment's interest in substitute property vests, § 853(n)(6)(A) permits a third-party claim against a defendant's untainted property . . . [only] if that interest arose before the offense took place." Daugerdas, 892 F.3d at 556–57. "Thus, the statute [did] not appear to authorize Eleanor to present her claim, because her interest concededly arose after Paul's offense conduct began." Daugerdas, 892 F.3d at 557.

Nevertheless—as a matter of constitutional due process—the Second Circuit concluded that this Court erred in binding Eleanor to its earlier determination in Paul's criminal proceedings that the Investment Accounts constituted offense proceeds. The Second Circuit held that precluding "a third party . . . from asserting . . . her entitlement to property she claims is hers, on the ground that she is bound by a determination that the property belonged to someone else, when that determination was made in a separate proceeding in which she was not permitted to participate," would violate the Due Process Clause.[5] Daugerdas, 892 F.3d at 557. Accordingly, "if Eleanor [could] make a plausible claim that the [Investment] Accounts were forfeitable as substitute assets, rather than as offense proceeds, and that the [Investment] Accounts were actually under her independent ownership and control before the [G]overnment's interest in them vested," then she had a due process right to do so. Daugerdas, 892 F.3d at 557. The Second Circuit stressed, however, "that any such right to be heard [was] contingent on her filing an amended petition plausibly alleging facts supporting the conclusion that the [Investment] Accounts . . . contain[ed] money that, although in part fraudulently obtained, was

---

[5] In granting the Government's motion, this Court was cognizant of the important—and obvious—concept that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party . . . and therefore has never had an opportunity to be heard." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.7 (1979). However, it was equally aware that the Advisory Committee Note to the 2000 adoption of Rule 32.2(b)(2)(A) of the Federal Rules of Criminal Procedure explains that an ancillary forfeiture proceeding "does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property."

then 'commingled with other property which cannot be divided without difficulty.'" Daugerdas, 892 F.3d at 558 (quoting 21 U.S.C. § 853(p)(1)(E)).

In December 2018, Petitioners filed the Petition that is the subject of this motion. Taking their lead from the Second Circuit, Petitioners now allege—almost entirely on information and belief—that the fees obtained from Paul's tax shelter clients were commingled with other untainted client fees in J&G's bank accounts before J&G made distributions to Paul. Specifically, Petitioners assert that Paul's tax shelter fees were deposited into a Bank of America account in Dallas, Texas maintained by J&G for its Illinois office. (Petition ¶ 19.) Over time, those fees were allegedly withdrawn from the account and used to cover J&G's general operating expenses. (Petition ¶ 21.) According to the Petition, the withdrawn fees were replaced with untainted funds from J&G's other offices and non-tax clients. (Petition ¶ 21.) Petitioners insist that Paul received his compensation from this commingled pool of funds, which he then used to fund the Investment Accounts and purchase the Williams Bay Property. (Petition ¶ 22.)

DISCUSSION

I. Legal Standard

Under 21 U.S.C. § 853(n), any third party "asserting a legal interest in property which has been ordered forfeited to the United States" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure allows courts to dispose of such petitions before any hearing "on [a] motion . . . for failure to state a claim, or for any other lawful reason." Courts treat motions to dismiss § 853(n) petitions pursuant to Rule 32.2(c)(1)(A) as motions to dismiss civil complaints under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Willis Mgmt. (Vt.), Ltd. v. United States, 652 F.3d 236, 241 (2d Cir. 2011). Accordingly, a court must accept all facts alleged in

the petition as true and construe all reasonable inferences in the petitioner's favor. ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). The petition must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). Indeed, to survive a motion to dismiss, the court must find the petition rests on factual allegations that "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quotation marks omitted)).

II.     Petitioners' Commingling Allegations on "Information and Belief"

As noted, the Second Circuit stressed that Petitioners' "right to be heard [in this action] is contingent on . . . filing an amended petition plausibly alleging facts supporting the conclusion" that the Investment Accounts were funded and the Williams Bay Property acquired with "money that, although in part fraudulently obtained, was then commingled with other property which cannot be divided without difficulty." Daugerdas, 892 F.3d at 558 (quotation marks omitted). The Government avers that the Petition does not satisfy this prerequisite because its commingling allegations are pled almost entirely on "information and belief." (Mem. of Law in Supp. of Government's Mot. to Dismiss, ECF No. 983 ("MTD"), at 20–21.) Indeed, all of the Petition's commingling allegations are premised on "information and belief" and contain a handful of legal conclusions. (See Petition ¶¶ 19–22.)

"When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true." Barrett v. Forest

6

Labs., Inc., 39 F. Supp. 3d 407, 431 (S.D.N.Y. 2014) (alteration in original) (quotation marks omitted). "Prefacing allegations with this standard pleading qualification does not eviscerate the sufficiency of a complaint," Lefkowitz v. John Wiley & Sons, Inc., 2014 WL 2619815, at *9 (S.D.N.Y. June 2, 2014), and this "Court is aware of no such case" where "a complaint [was dismissed] for overuse of qualifiers," Wu v. Pearson Educ., Inc., 2010 WL 3791676, at *6 (S.D.N.Y. Sept. 29, 2010). The "Twombly plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief" in certain circumstances, including where: (1) "the facts are peculiarly within the possession and control of the [opposing party]" or (2) "the belief is based on factual information that makes the inference of culpability plausible." Arista Records LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (citations and quotation marks omitted); see also Haley v. Teachers Ins. & Annuity Assoc. of Am., 377 F. Supp. 3d 250, 269 (S.D.N.Y. 2019). However, this "Court need not decide the appropriateness of pleading 'upon information and belief' in every circumstance[] [because] deciding the plausibility of a complaint is, of course, a 'context-specific task.'" Barrett, 39 F. Supp. 3d at 432 (quoting Iqbal, 556 U.S. at 679).

The parties spill considerable ink debating the applicability of Arista—namely, whether the facts are peculiarly within the Government's possession and control. Petitioners represent that they do not have access to J&G's bank records, thereby necessitating the myriad allegations on "information and belief." (See Mem. of Law in Opp'n to the Government's Mot. to Dismiss Second Am. Pet., ECF No. 989 ("Opp'n"), at 7; see also July 18, 2019 Arg. Tr., ECF No. 1008 ("Arg. Tr."), at 11–12.) These records, according to Petitioners, are within the Government's possession by virtue of having investigated and prosecuted Paul. (See Opp'n, at 6–7.) On the other hand, the Government, represents that it does not have the relevant records

7

either.[6]  Instead, the Government points at Petitioners, arguing that they should have access to the bank records because Eleanor is Paul's wife.  (See Reply Mem. of Law in Supp. of the Government's Mot. to Dismiss the Third-Party Pet., ECF No. 998 ("Reply"), at 1; see also Arg. Tr. at 4.)

"[T]he doors of discovery" do not unlock for those "armed with nothing more than conclusions," Iqbal, 556 U.S. at 678–79, and "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory," Citizens United v. Schneiderman, 882 F.3d 374, 384 (2d Cir. 2018).  However, in "draw[ing] on its judicial experience and common sense," Iqbal, 556 U.S. at 679, this Court recognizes that Petitioners are unlikely to obtain the records needed to substantiate the commingling allegations within the Petition absent "help from subpoenas, depositions, or interrogatories," Citizens United, 882 F.3d at 385 (concluding that allegations pled on "information and belief" were insufficient where plaintiffs' allegations concerned "public disclosures, which, by their very nature, would be easy to discover if they occurred" (emphasis removed)); see Bagarozzi v. N.Y.C. Dep't of Educ., 2019 WL 1454316, at *6 (S.D.N.Y. Mar. 31, 2019) (dismissing discrimination claims pled on information and belief where "[p]laintiff [made] no allegations regarding [d]efendants' possession of . . . information" about similarly situated employees, and "[i]nstead, she appear[ed] to acknowledge that she ha[d] enough information" about that issue); Rosenfeld v. Lenich, 370 F. Supp. 3d 335, 349 (E.D.N.Y. 2019) (rejecting allegations pled on information and belief where "[plaintiff] ha[d] not identified any barrier that would prevent her from, at a minimum, asking the DOJ whether it received copies of the contents of [the] . . . communications" plaintiff claimed were disclosed by defendant).  Stated differently, "the facts"

---

[6]  At a January 18, 2019 status conference with the parties, this Court directed the Government to search for the relevant bank records.  (Jan. 18, 2019 Conference Tr., ECF No. 975, at 13.)

8

are not "peculiarly within the possession and control" of either party. Arista, 604 F.3d at 120. And this Court struggles to see how Petitioners could plead commingling on anything other than information and belief without having obtained the underlying bank records from third parties like Bank of America or a J&G custodian of records.

The Government also contends that Petitioners fail to demonstrate that their "belief[s] [are] based on factual information that makes the inference . . . plausible." Arista, 604 F.3d at 120. This Court disagrees. The Petition alleges that J&G collected the bulk of the fees from Paul's tax shelter clients in the first half of each year "because of the . . . deadline for the filing of individual Federal income tax returns."[7] (Petition ¶ 20.) The Petition further alleges that, "as is common in the legal services industry, . . . a substantial portion of the non-tax fees received by J&G Illinois, as well as the legal fee receipts of J&G from its Dallas headquarters and many other offices, were collected significantly later in the year." (Petition ¶ 20.) This gap in collection allegedly necessitated using the tax shelter fees to cover J&G's operating expenses, including rent and compensation. (Petition ¶ 21.) Though far from robust, these allegations "raise a reasonable expectation that discovery will reveal evidence to support" their commingling claims. Rothstein v. Mahne, 2015 WL 6828061, at *6 (S.D.N.Y. Nov. 5, 2015).[8]

Accordingly, Petitioners have—by the thinnest of reeds—pled commingling, albeit on information and belief. This Court reaches its conclusion against the backdrop of the Second Circuit's opinion, which highlighted "the significant constitutional rights potentially at

---

[7] This Court is required to accept all well-pled factual allegations in the Petition as true at this stage. However, this Court recalls that the testimony from Paul's trial suggested that—contrary to the allegations in the Petition—many of Paul's tax shelter clients filed their tax returns on extension.

[8] Notably, in Rothstein, the "facts" upon which the court relied in denying defendants' motion to dismiss plaintiff's breach of contract claim were themselves pled on information and belief. See Am. Compl., Rothstein v. Mahne, No. 15-cv-03236-VEC (S.D.N.Y. July 8, 2015), ECF No. 17.

9

stake here." Daugerdas, 892 F.3d at 553 n.7. Ultimately, if "discovery does not substantiate [Petitioners'] allegations, [their] claim[s] may be properly dismissed at the summary judgment stage." MasterCard Int'l Inc. v. Nike, Inc., 164 F. Supp. 3d 592, 604 (S.D.N.Y. 2016).[9]

III. Whether the Investment Accounts and Williams Bay Property Constitute "Offense Proceeds"

The Government next contends that, even if the Petition adequately alleges commingling, it fails to "rebut the seemingly obvious conclusion" that any payments from J&G to Paul were necessarily offense proceeds. (MTD, at 20.) To support its position, the Government offers conclusions reached in Paul's underlying criminal case, namely that: (1) "the proof at trial established that all of the tax shelter fee income was the product of [Paul's] scheme," (2) "the entirety of the tax shelter fees obtained by the Chicago office of [J&G] were generated through the criminal acts of [Paul] and his coconspirators," and (3) "none of th[o]se funds would have been obtained but for the fraudulent scheme." United States v. Daugerdas, 2012 WL 5835203, at *3 (S.D.N.Y. Nov. 7, 2012). The Government also relies on a footnote in the Second Circuit's June 2018 Opinion, stating:

> The district court did not consider whether any such commingling by the firm would, as a matter of law, actually defeat a finding that Paul's law firm income constituted the proceeds of his crimes (although, in Paul's case, it found as a factual matter that such commingling had not occurred, and we affirmed). . . . <u>We merely note that it is not self-evident why, if Paul's partnership compensation was entirely derived from such fees, his income could not itself be considered the proceeds of fraud</u>.

Daugerdas, 892 F.3d at 552 n.6 (emphasis added).

Like the Second Circuit, this Court wonders why Paul's compensation from J&G is not "self-evident[ly]" offense proceeds. Daugerdas, 892 F.3d at 552 n.6. Nevertheless, to the

---

[9] This Court is cognizant of the Government's contention that the banking records sought by Petitioners will not support their commingling allegations. (Reply, at 2 n.1.) That argument will be ripe at summary judgment.

extent the Government believes that Petitioners must rebut findings from Paul's criminal proceedings, it misses the import of the Second Circuit's holding. Due process principles prevent this Court from binding Petitioners to "an adjudication of [an] issue against [them] in a proceeding in which [they were] not permitted to participate." Daugerdas, 892 F.3d at 558. However, much like it did during the underlying criminal case, the Government may adduce evidence concerning Paul's compensation and marshal that evidence at summary judgment.

IV. <u>Whether the Government's Interest Vested Before Petitioners'</u>

Finally, the Government avers that even if the Investment Accounts and Williams Bay Property are substitute property, its interest vested before Petitioners' interests. According to the Government, its interest in substitute property vests upon the occurrence of any enumerated event listed in § 853(p), which defines substitute property. (MTD, at 24.) The Government claims that the vesting event is the alleged commingling of Paul's fraudulently obtained fees with J&G's otherwise untainted fees. That argument is unpersuasive, as the Government cites no authority supporting its interpretation of § 853(p). While courts in this circuit have expressed differing views on when the Government's interest in substitute property vests, see Daugerdas, 892 F.3d at 549 n.4, none have adopted the view espoused by the Government. On the contrary, the only court within this district to grapple with the issue held that "the [G]overnment's interest in substitute [property] vests upon the issuance of the grand jury indictment." United States v. Peterson, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011). Here, Petitioners claim they obtained ownership interests in the Investment Accounts and Williams Bay Property before any indictment against Paul containing the relevant forfeiture counts.

11

CONCLUSION

For the foregoing reasons, the Government's motion to dismiss the Petition is denied. The parties are directed to submit a proposed discovery schedule by February 7, 2020.

Dated: January 22, 2020
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.