UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------

UNITED STATES OF AMERICA,

-against-

PAUL M. DAUGERDAS,

Defendant.

------------------------------

09cr581

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

Defendant Paul M. Daugerdas moves for a reduction of his term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Daugerdas contends that if he contracts COVID-19 while incarcerated, he faces a heightened risk of serious illness because of his underlying medical conditions. He asks this Court to: (1) reduce his 180-month term of imprisonment to time served, and (2) convert the outstanding balance of his sentence to supervised release with a condition of home confinement. Alternatively, Daugerdas requests a judicial recommendation that the Bureau of Prisons ("BOP") re-designate him to serve a portion of his sentence on home confinement until the COVID-19 crisis abates.[1]

BACKGROUND

A jury in this district convicted Daugerdas of conspiracy to defraud the United States and other crimes related to a fraudulent tax shelter scheme. On June 25, 2014, this Court sentenced Daugerdas principally to 180 months of imprisonment. Daugerdas is currently incarcerated at a satellite camp adjacent to United States Penitentiary, Marion (the "Marion Camp") in southern Illinois. His projected release date is July 11, 2027.

---

[1] Swinging for the fences in his reply brief, Daugerdas changes his request for alternative relief to a recommendation that the BOP permit him to serve the entire balance of his sentence on home confinement. (Reply Letter in Further Supp. of Mot. Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 1027 ("Reply"), at 14.)

On March 24, 2020, Daugerdas submitted an administrative request to the Marion Camp warden requesting compassionate release in light of the COVID-19 pandemic coupled with his pre-existing medical conditions, which include Type 2 diabetes, obesity, hypertension, and high cholesterol.  (ECF No. 1027-1.)  Although the warden has yet to respond, Daugerdas brings his argument to this Court.

## DISCUSSION

I.   Compassionate Release and the First Step Act, Generally

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020).  The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), is one such exception to this general rule.  Indeed, § 3582(c)(1)(A) permits a court to "reduce" a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The court must also weigh the factors set forth in 18 U.SC. § 3553(a).

Until recently, the statute permitted a court to consider reducing a defendant's sentence only "[u]pon motion of the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13.  However, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, "created an independent avenue for defendants to seek relief from the federal courts."  United States v. Ebbers, 2020 WL 91399, at *1 (S.D.N.Y. Jan. 8, 2020).  Now, courts may also consider these requests "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A) (emphasis added).

II.   Application

   A. Exhaustion

Daugerdas concedes that he had not exhausted his administrative remedies at the time he filed this application. Nevertheless, Daugerdas asks this Court to join a minority of judges in this district who have excused § 3582(c)(1)(A)'s exhaustion requirement in light of the COVID-19 pandemic. See, e.g., United States v. Scparta, 2020 WL 1910481, at *8 (S.D.N.Y. Apr. 20, 2020) (excusing defendant's failure to exhaust because "the First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions"). In opposition, the Government argues that the exhaustion requirement is an express statutory directive not amenable to judge-made exceptions. See, e.g., United States v. Ogarro, 2020 WL 1876300, at *2–5 (S.D.N.Y. Apr. 14, 2020) (finding that the exhaustion requirement is mandatory and concluding that the defendant had failed to exhaust); see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (observing that the exhaustion requirement "present[ed] a glaring roadblock foreclosing [defendant's] compassionate release").

This Court need not wade into the exhaustion question because more than 30 days have lapsed since Daugerdas submitted his petition to the Marion Camp warden. (See ECF No. 1027-1.) And the parties agreed at oral argument the issue is moot. (Transcript of April 29, 2020 Argument ("Arg. Tr."), at 3–4.) Thus, this Court considers the merits.

   B. Existence of "Extraordinary and Compelling Reasons" Warranting Reduction

The threshold question is whether Daugerdas presents "extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). "Congress has delegated authority to the Sentencing Commission . . . to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" Ebbers, 2020 WL

91399, at *4 (quoting 28 U.S.C. § 994(t)).  Here, the relevant policy statement is U.S. Sentencing Guidelines § 1B1.13 (the "Policy Statement").

Application Note 1 to the Policy Statement states, in pertinent part, that extraordinary and compelling reasons exist when:

(A) Medical Condition of the Defendant . . .

    (ii) The defendant is —

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. . . .

(D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Notably, the Policy Statement pre-dates the First Step Act's procedural changes. Ebbers, 2020 WL 91399, at *4.  For example, Application Note 1(D)—the so-called "catch-all" provision—appears to grant the BOP exclusive authority to determine whether an inmate has shown "extraordinary and compelling reasons" warranting release beyond what is enumerated in provisions (A) through (C).  U.S.S.G. § 1B1.13, cmt. n.1(D).  That reading, however, is now inconsistent with the spirit of the First Step Act.  Thus, this Court aligns itself with other judges in this district finding that the amendments to the compassionate release statute "grant this Court the same discretion as that previously give[n] to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release" under the "catch-all" provision.  United States v. Lisi, 2020 WL

4

881994, at *3 (S.D.N.Y. Feb. 24, 2020); accord United States v. Pinto-Thomaz, 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020). Nonetheless, "U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons,'" Ebbers, 2020 WL 91399, at *4, provide helpful guidance for considering motions for compassionate release, Lisi, 2020 WL 881994, at *3.

After reviewing the parties' briefs and Daugerdas's BOP medical records,[2] this Court finds that Daugerdas has shown "extraordinary and compelling reasons" under the Policy Statement. See U.S.S.G. § 1B1.13, cmt. n.1(A), (D). Daugerdas contends—and the Government does not dispute—that he suffers from Type 2 diabetes, obesity, hypertension, and high cholesterol, which expose individuals to a higher risk of serious illness from COVID-19.[3] (Mem. of Law in Opp'n to Def.'s Mot. for Release, ECF No. 1024 ("Opp'n"), at 20; Reply, at 4–5.)

Other courts in this district have found that defendants' pre-existing medical conditions, combined with the increased risk of COVID-19 in prison settings, create "extraordinary and compelling reasons" under the Policy Statement. See, e.g., Scparta, 2020 WL 1910481, at *9 (granting compassionate release for defendant suffering from "multiple medical issues that make him especially vulnerable to complications from COVID-19," including hypertension, sleep apnea, high blood pressure, and high cholesterol); United States v. Smith, 2020 WL 1849748, at *1, 4 (S.D.N.Y. Apr. 13, 2020) (finding 62-year-old defendant with asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma eligible for compassionate release).

---

[2] Daugerdas's BOP medical records will be docketed under seal by the Court.

[3] See Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated Apr. 17, 2020).

This Court notes that, as of the date of this Memorandum & Order, there have been no reported cases of COVID-19 at the Marion Camp.[4] While the absence of reported cases may be explained by a lack of routine testing and asymptomatic transmission, it may also indicate that the BOP's current protocols have been sufficient to prevent an outbreak. See Pinto-Thomaz, 2020 WL 1845875, at *3 (denying request for compassionate release, in part, because defendant's correctional facility had no reported cases of COVID-19 and detailing the BOP's efforts to combat the pandemic). Nonetheless, this Court is also mindful that an outbreak of COVID-19 cases at the Marion Camp may "substantially diminish[] the ability of [Daugerdas] to provide self-care within the environment of [his] correctional facility." U.S.S.G. § 1B1.13, cmt. n.1(A). And, in any event, the COVID-19 pandemic combined with Daugerdas's medical conditions and age may constitute "extraordinary and compelling reasons" under the "catch-all" provision of the Policy Statement. See U.S.S.G. § 1B1.13, cmt. n.1(D).[5]

  C.  Section 3553(a) Factors

However, this Court's analysis does not end with a finding that "compelling and extraordinary reasons" warrant compassionate release. This Court must also "consider[ ] the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the Guidelines

---

[4]   COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 1, 2020).

[5]   Additionally, before granting compassionate release, the Policy Statement requires this Court to find that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G § 1B1.13(2). Daugerdas's convictions resulted in his disbarment and the revocation of his accounting license. In short, he no longer has the tools to perpetuate his tax shelter scheme. Accordingly, this Court finds that Daugerdas is no longer a danger to the community. Any reduction in sentence must also be consistent with the Policy Statement. U.S.S.G § 1B1.13(3). The parallel statutory requirement that any sentence reduction be "consistent with applicable policy statements," 18 U.S.C. § 3582(c)(1)(A), is met where, as here, "'extraordinary and compelling reasons' exist as defined by that policy," Ebbers, 2020 WL 91399, at *6; United States v. Gross, 2020 WL 1862251, at *3 n.2 (S.D.N.Y. Apr. 14, 2020).

ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a). Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." Ebbers, 2020 WL 91399, at *7; see also Lisi, 2020 WL 881994, at *5–6 (finding compelling reasons warranting defendant's release but nevertheless denying motion for compassionate release because § 3553(a) factors "weigh[ed] heavily against [a] reduction of [defendant's] sentence"). "Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences . . . ." Ebbers, 2020 WL 91399, at *7.

Here, the § 3553(a) factors weigh heavily against granting Daugerdas's application. The nature and circumstances of Daugerdas's decade-long criminal conduct were unprecedented. He orchestrated the largest tax shelter fraud scheme in American history—one that recruited ultra-wealthy taxpayers and corrupted young professionals at every turn. Daugerdas netted over $95 million in illicit proceeds for his own benefit, and the United States Treasury lost more than $1 billion in tax revenue. (Transcript of Sentencing, June 25, 2014, ECF No. 839 ("Sentencing Tr."), at 68–69.) When the scheme was uncovered, Jenkens & Gilchrist, P.C.—once a law firm of over 600 lawyers—collapsed. (Sentencing Tr., at 69–70.)

Daugerdas's criminal conduct was in a class of its own, and the conspiracy ensnared hundreds of individuals. While his applicable Guidelines range was life in prison based on the offense level, the statutory maximum for his crimes was 696 months of imprisonment.

(PSR ¶ 133; Sentencing Tr., at 5.)  This Court sentenced Daugerdas principally to 180 months of imprisonment and imposed restitution of $371 million.  To date, Daugerdas has served 37% of his custodial sentence.  (Arg. Tr., at 28–29.)  And he has not voluntarily paid a cent of restitution.  (Opp'n, at 24.)  Granting Daugerdas's motion would do little to "promote respect for the law" or "provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A); see United States v. Walter, 2020 WL 1892063, *3 (S.D.N.Y. Apr. 16, 2020) ("Converting Walter's sentence to one of home confinement, when he has served just 17 months of a 62-month term of incarceration, would disserve the[] . . . § 3553(a) factors."); United States v. Butler, 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) ("Butler's case is [a] far cry from those in which this Court in the past week, given the changed circumstances presented by COVID-19, has ordered or urged the BOP to approve compassionate release for defendants who had served a substantial majority of their sentences.")  Moreover, granting Daugerdas's motion would create an "unwarranted sentence disparit[y] among defendants . . . ."  18 U.S.C. § 3553(a)(6).  This Court sentenced a less culpable co-defendant, Donna Guerin, to a term of 96 months of imprisonment.

        Nevertheless, Daugerdas insists that the combination of his underlying health conditions and the COVID-19 pandemic tip the scales in favor of release.  But, in fashioning his sentence, this Court accounted for Daugerdas's age and his then-existing medical conditions.  Indeed, the PSR describes all of the same underlying conditions that Daugerdas cites in this motion.  (PSR ¶¶ 105, 107, 110.)  Daugerdas's BOP medical records illustrate that he is receiving adequate care for those conditions.  (See generally 2019 & 2020 BOP Medical Records; see Arg. Tr., at 10–13.)  While this Court is cognizant of Daugerdas's need for medical care, that need alone is insufficient to warrant compassionate release, especially given the severity and duration of his criminal conduct.

III.     Furlough

Daugerdas's request for compassionate release under 18 U.S.C. § 3582 is an application to terminate the remainder of his sentence.  Granting that request would be unjust, as would granting Daugerdas's alternative request for a judicial recommendation that the BOP release him to home confinement for the remainder of his sentence under 18 U.S.C. § 3624(c)(2).  With that said, "the best—perhaps the only—way to mitigate the damage and reduce the death toll [of inmates from COVID-19] is to decrease the jail and prison population by releasing as many people as possible."  United States v. Nkanga, 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020).  Accordingly, this Court believes that Daugerdas is fit for temporary release from prison—but only until the COVID-19 pandemic abates.

However, the catch is that this Court lacks the authority to grant Daugerdas temporary release.  See 18 U.S.C. § 3622; see also United States v. Roberts, 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020).  That authority rests solely with the BOP.  Roberts, 2020 WL 1700032, at *3 (collecting cases).  But "nothing in Section 3622 'prevents this Court from recommending' that [the] BOP exercise its discretion to grant [Daugerdas] temporary release."  Roberts, 2020 WL 1700032, at *4 (emphasis added) (quoting United States v. Schaefer, No. 07-cr-498 (S.D.N.Y.), ECF No. 73, at 4 (Apr. 6, 2020)); see also United States v. Stahl, 2020 WL 1819986, at *1–2 (S.D.N.Y. Apr. 10, 2020) ("strenuously urg[ing]" the BOP to consider temporarily releasing defendant pursuant to § 3622(a) "until the threat of COVID-19 has passed").  Consequently, this Court strongly urges the BOP to consider Daugerdas for furlough under § 3622 in light of the COVID-19 crisis, his age, and underlying medical conditions until such time as the crisis abates.

CONCLUSION

For the foregoing reasons, Paul M. Daugerdas's motion is granted in part and denied in part. The Clerk of Court is directed to terminate the motion pending at ECF No. 1018.

Dated: May 1, 2020
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.