UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

UNITED STATES OF AMERICA,

        -against-

                                              09cr581

PAUL M. DAUGERDAS,

                              MEMORANDUM & ORDER

        Defendant.

------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        Defendant Paul M. Daugerdas moves for reconsideration of this Court's May 1, 2020 Memorandum & Order (the "May 1 Order") denying his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). United States v. Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *5 (S.D.N.Y. May 1, 2020). For the following reasons, Daugerdas's motion for reconsideration is denied.

## BACKGROUND

        Previously, Daugerdas moved for compassionate release under § 3582(c)(1)(A), arguing that a combination of his pre-existing health conditions, his advanced age, and the increased risk of contracting COVID-19 in prison settings warranted: (1) a reduction of his 180-month term of imprisonment to time served, and (2) the conversion of the outstanding balance of his sentence to supervised release with a condition of home confinement. Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *1. This Court acknowledged that Daugerdas's underlying maladies—including type 2 diabetes, obesity, hypertension, and high cholesterol—exposed him to a heighted risk of serious illness if he contracted COVID-19. Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *3. Accordingly, this Court concluded that Daugerdas presented "extraordinary and compelling reasons" for the relief requested under § 3582(c)(1)(A).

Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *3.  However, this Court denied Daugerdas's motion because the factors enumerated in 18 U.S.C. § 3553(a) "weigh[ed] heavily against granting Daugerdas's application."  Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *4.

Daugerdas moves for reconsideration of the May 1 Order because he has tested positive for COVID-19.[1]  He avers that his diagnosis—coupled with the Bureau of Prison's ("BOP") inability to prevent the spread of COVID-19 at United States Penitentiary, Marion ("USP Marion")—tips the § 3553(a) factors in his favor, thereby warranting compassionate release.

DISCUSSION

I.      Legal Standard

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quotation marks omitted).  "While the Federal Rules of Criminal Procedure do not provide for reconsideration motions, such motions are tacitly accepted in criminal cases in this District by virtue of Local Crim. R. 49.1(d)."  United States v. Baldeo, 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015).  That rule enables a movant to file "[a] motion for reconsideration or reargument of a Court order

---

[1] The Government contends that Daugerdas's motion for reconsideration is a successive motion for compassionate release for which he failed to exhaust his administrative remedies under § 3582(c)(1)(A).  To support its assertion, the Government cites a perceived distinction between Daugerdas's two motions: While Daugerdas's compassionate release motion focused on his risk of contracting COVID-19, this motion concerns Daugerdas's contraction of the virus.  This Court is unconvinced that this superficial distinction renders the instant motion—in the Government's words—"wholly different" from Daugerdas's motion for compassionate release. (ECF No. 1041, at 1.)  Accordingly, this Court treats the instant motion as one for reconsideration of the May 1 Order.

determining a motion . . . within fourteen (14) days after the Court's determination of the original motion."[2]  Local Crim. R. 49.1(d).

"The standards for reconsideration among the civil and criminal rules are largely the same."  Lisi, 2020 WL 1331955, at *2; see also Baldeo, 2015 WL 252414, at *1; United States v. Alvarez-Estevez, 2014 WL 12681364, at *1 n.1 (S.D.N.Y. Nov. 6, 2014).  A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Reconsideration is not an invitation for parties to "treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings."  de los Santos v. Fingerson, 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998).  "The standard for reconsideration is strict, and ultimately, the decision is within the sound discretion of the trial court."  McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, 293 F. Supp. 3d 394, 397–98 (S.D.N.Y. 2018).

II.     Merits

Since this Court issued the May 1 Order, COVID-19 has spread throughout USP Marion.  As of the date of this Memorandum & Order, approximately 142 inmates, including Daugerdas, have tested positive for the virus.[3]  Of those positive cases, the BOP reports that 136 have recovered, four remain ill, and two passed away.

---

[2]     Technically, Daugerdas's motion is untimely, having been filed over three months after the May 1 Order.  "However, courts retain the discretion to excuse an untimely filing, and this Court will do that here."  United States v. Lisi, 2020 WL 1331955, at *1 (S.D.N.Y. Mar. 23, 2020).

[3]     COVID-19 Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 18, 2020).

Daugerdas contends that the COVID-19 outbreak at USP Marion is a "change in circumstance" unforeseen by this Court's May 1 Order. (ECF No. 1037, at 3.) Thus, according to Daugerdas, this Court must revisit its compassionate release analysis, particularly its assessment of the § 3553(a) factors. Daugerdas does not specify which factor requires reassessment, but this Court presumes the relevant factor is § 3553(a)(2)(D), which weighs "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care." In its analysis of § 3553(a), the May 1 Order explicitly addressed "the combination of [Daugerdas's] underlying health conditions and the COVID-19 pandemic . . . ." Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *4. And this Court concluded that "Daugerdas's BOP medical records illustrate[d] that he is receiving adequate care for [his underlying] conditions." Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *4. Indeed, "[w]hile this Court [was] cognizant of Daugerdas's need for medical care, that need alone [was] insufficient to warrant compassionate release, especially given the severity and duration of his criminal conduct." Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *4.

Nevertheless, Daugerdas clings to this Court's observation that, as of May 1, 2020, there were "no reported cases of COVID-19 at the [USP] Marion" satellite camp, where he is incarcerated. Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *3. That observation was within the May 1 Order's assessment of "extraordinary and compelling reasons" under § 3582(c)(1)(A). Yet Daugerdas ignores the May 1 Order's concurrent observations that: (1) an outbreak at USP Marion could diminish Daugerdas's ability to provide self-care, and (2) "the absence of reported cases" at the USP Marion satellite camp could also "be explained by a lack of routine testing and asymptomatic transmission . . . ." Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *3. For those reasons, this Court concluded that the heightened risk of COVID-

19 at prison facilities, combined with Daugerdas's pre-existing medical conditions and advanced age, created "extraordinary and compelling reasons" under the compassionate release statute. Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *3.  Put another way, not only did the May 1 Order account for the risk that COVID-19 could infiltrate USP Marion, it resolved that risk in Daugerdas's favor.  Although this Court is troubled by the recent COVID-19 outbreak at USP Marion, that "change in circumstance" does not necessitate revisiting the May 1 Order.

Additionally, Daugerdas avers that his COVID-19 diagnosis changes the balance of the § 3553(a) factors.  Like Daugerdas's argument concerning the outbreak at USP Marion, Daugerdas's diagnosis does not move the needle.  Indeed, Daugerdas's BOP medical records[4] indicate that he is receiving adequate treatment for his COVID-19 infection.  After testing positive on August 2, 2020, Daugerdas was placed in isolation for ten days in accord with BOP protocols.  (BOP Medical Records, at 19, 35.)  Thereafter, BOP medical staff monitored his condition, routinely taking his temperature and checking for characteristic COVID-19 symptoms.  (BOP Medical Records, at 24–26.)  Save for one instance of reporting a loss of taste and smell, Daugerdas has been asymptomatic.  (BOP Medical Records, at 1–2, 24.)  Recently, Daugerdas was granted "post-isolation status" and the BOP considers his case "resolved."  (BOP Medical Records, at 1–2, 35.)  "Given [Daugerdas's] apparent recovery and the minimal impact that COVID-19 appears to have had on him during his incarceration," this Court concludes that Daugerdas's diagnosis does not warrant reconsideration of the May 1 Order.  United States v. Adams, 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020); cf. United States v. Davis, 2020 WL 3790562, at *2–3 (S.D.N.Y. July 7, 2020) (movant did not present "extraordinary and

---

[4]   Daugerdas's BOP medical records will be docketed under seal by this Court.

compelling reasons" warranting release where he experienced only mild COVID-19 symptoms and recovered).

Finally, Daugerdas raises the risk of reinfection and long-term health effects from COVID-19 as a basis for reconsideration. To be sure, even now—roughly eight months since the first confirmed case of COVID-19 in the United States—there are still uncertainties concerning the virus and its long-term effects.[5] However, Daugerdas's contention "that he might still suffer undetected adverse effects from COVID-19 in the future . . . is simply too speculative to warrant release." Adams, 2020 WL 4505621, at *3. The same is true of Daugerdas's concern over reinfection. See Davis, 2020 WL 3790562, at *3 (denying compassionate release and recognizing the "speculative risk of reinfection" from COVID-19); United States v. Decker, 2020 WL 3268706, at *1–2 (S.D.N.Y. June 17, 2020) ("[T]he possibility of reinfection is speculative, as no definitive medical conclusions have been reached . . . .")

Moreover, Daugerdas's concern over reinfection mirrors arguments raised in his motion for compassionate release. There, Daugerdas argued that he "is powerless to take the preventative self-care measures . . . to remain safe from COVID-19 infection." (ECF No. 1019, at 18.) Here, Daugerdas similarly argues that "even [if] he recover[s] from his present COVID-19 illness, [he] may remain vulnerable to further infection should he remain in USP Marion, where he is unable to practice self-care to protect himself from further infection." (ECF No. 1037, at 9 n.17.) In essence, these arguments relay a single concern—that Daugerdas risks catching COVID-19 while incarcerated. This Court already credited that risk and ruled on the issue. See Daugerdas, --- F. Supp. 3d ----, 2020 WL 2097653, at *3–4. Accordingly, this issue

---

[5] Press Release, Centers for Disease Control and Prevention, First Travel-related Case of 2019 Novel Coronavirus Detected in United States (Jan. 21, 2020), available at https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html.

is inappropriate for reconsideration. See Schoolcraft v. City of New York, 298 F.R.D. 134, 137 (S.D.N.Y. 2014) ("[C]ourt[s] must narrowly construe and strictly apply" the local rules governing motions for reconsideration "so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment.").[6]

CONCLUSION

For the foregoing reasons, Paul M. Daugerdas's motion for reconsideration is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 1037.

Dated: August 18, 2020
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

---

[6] For the first time on reply, Daugerdas requests an evidentiary hearing to determine the safety of the conditions at USP Marion and to inquire about the administration of Daugerdas's August 2, 2020 COVID-19 test. (ECF No. 1044, at 10.) This Court declines to hold the requested hearing. As a threshold issue, courts typically do "not consider arguments that are raised for the first time in a reply brief." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006). Even if this Court entertained Daugerdas's request, it would conclude that the parties' submissions—including Daugerdas's BOP medical records—provide an ample basis to deny Daugerdas's motion.