UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------

|  |  |  |
|---|---|---|
| PAUL DAUGERDAS, | : |  |
|  | : | 18cv152 |
| Petitioner, | : | 09cr581 |
|  | : |  |
| -against- | : | MEMORANDUM & ORDER |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

---------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

     Pro se Petitioner Paul Daugerdas moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.  In June 2009, the Government charged Daugerdas and his co-defendants with engaging in a wide-ranging conspiracy to defraud and obstruct the United States through the design, sale, implementation, and defense of tax shelters that generated billions of dollars of fraudulent tax losses for clients of the law firm Jenkens & Gilchrest, the accounting firm BDO Seidman, and the financial institutions Deutsche Bank and Bank One.  For the following reasons, Daugerdas's petition is denied.

BACKGROUND

     On March 4, 2010, the Government filed a third Superseding Indictment, charging Daugerdas with one count of conspiracy to defraud the United States, to commit tax evasion, and to commit mail and wire fraud, in violation of 18 U.S.C. § 371; twenty-two counts of tax evasion, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 21; one count of obstructing the Internal Revenue Service ("IRS Obstruction"), in violation of 26 U.S.C. § 7212(a); and one count of mail fraud, in violation of 18 U.S.C., §§ 1341, 2.  (Criminal ECF No. 81 ("S3

1

Indictment").)[1]  On May 24, 2011, following a thirteen-week trial, a jury convicted Daugerdas

on all counts.  (Criminal ECF No. 397.)  Daugerdas moved for a new trial, arguing that evidence

discovered after the verdict revealed that a biased juror infected the jury.  (Criminal ECF No.

459.)  Following an evidentiary hearing, this Court vacated Daugerdas's conviction and granted

him a new trial.  United States v. Daugerdas, 867 F. Supp. 2d 445, 484 (S.D.N.Y. 2012).

      On July 1, 2013, the Government filed a sixth Superseding Indictment, which

dropped certain tax evasion charges, renumbered certain counts, and removed the names of some

defendants charged in the S3 Indictment who were no longer relevant.  (Criminal ECF No. 644

("S6 Indictment").)  On October 31, 2013, following an eight-week trial, a second jury convicted

Daugerdas on seven counts, including: conspiracy to defraud the United States ("Count One");

four counts of client tax evasion ("Counts Five, Six, Seven, and Eleven"); IRS obstruction

("Count Thirteen"); and mail fraud ("Count Seventeen").  (Criminal ECF No. 838 ("Judgment"),

at 1–2.)  On June 25, 2014, this Court sentenced Daugerdas principally to a term of 180 months

of incarceration to be followed by three years of supervised release.  (Judgment, at 3.)  In

addition, this Court entered an order of forfeiture in the amount of $164,737,500 and imposed

restitution in the amount of $371,006,397 and a $700 mandatory special assessment.  (Judgment,

at 6–7.)

      Daugerdas appealed.  (Criminal ECF No. 841.)  On September 21, 2016, the

Court of Appeals affirmed Daugerdas's convictions and sentence.  (Criminal ECF No. 896.)  On

October 2, 2017, the Supreme Court denied Daugerdas's petition for writ of certiorari.  United

States v. Daugerdas, 837 F.3d 212 (2d Cir. 2016), cert. denied, 138 S. Ct. 62 (2017).

---

[1]     Citations to "Criminal ECF No." refer to Daugerdas's underlying criminal proceeding, case number 09-cr-581.  Citations to "ECF No." refer to this proceeding.

On January 5, 2018, Daugerdas filed this habeas proceeding.  (Mot. to Vacate, Set Aside, or Correct Sentence, ECF No. 1 ("Petition").)  Later, he supplemented his claims, (ECF Nos. 5, 8), and sought an evidentiary hearing, (ECF No. 11).  In March 2018, this Court denied Daugerdas's request for an evidentiary hearing.  (ECF No. 13.)  Nevertheless, he persists in renewing that application.  (ECF Nos. 24, 47).

Daugerdas offers nine separate arguments to vacate his conviction and sentence: (1) trial counsel was ineffective for signing a series of statute of limitations stipulations and advising Daugerdas to sign them; (2) this Court failed to make a required finding that Daugerdas knowingly and voluntarily signed the statute of limitations stipulations; (3) appellate counsel was ineffective for failing to raise, on direct appeal, a challenge to the statute of limitations stipulations; (4) the statute of limitations stipulations were invalid because they were not supported by valid consideration; (5) trial counsel was ineffective for failing to challenge the S6 Indictment's inclusion of a new overt act allegation that broadened the conspiracy charge; (6) trial counsel was ineffective for failing to challenge the inclusion of a new overt act allegation in Counts Two through Thirteen and Count Seventeen of the S6 Indictment; (7) trial counsel was ineffective for stipulating that Deutsche Bank was a financial institution affected by the tax shelters and for not challenging the Government's failure to allege that the mail fraud affected a financial institution; (8) trial counsel was ineffective for failing to challenge the validity of the mail fraud charge; and (9) that his conviction under 26 U.S.C. § 7212(a) must be vacated in light of the Supreme Court's decision in Marinello v. United States, 138 S. Ct. 1101 (2018).  (See generally Petition.)

Although Daugerdas raises a blunderbuss of claims, his principal contention is that trial counsel provided ineffective assistance by advising Daugerdas to sign a series of pre-

indictment stipulations tolling certain statutes of limitations.  Daugerdas now claims he did not

understand those stipulations and that they were not supported by valid consideration.  This

Court reorders Daugerdas's claims to make the analysis coherent.  To begin, this Memorandum

& Order addresses Daugerdas's four claims relating to the statute of limitations stipulations.

Thereafter, this Court turns to the balance of his claims.

DISCUSSION

I.     Legal Standard

A petitioner may collaterally attack his conviction and sentence by "mov[ing] the

court which imposed the sentence to vacate, set aside, or correct the sentence."  28 U.S.C.

§ 2255(a).  Because collateral challenges conflict with "society's strong interest in the finality of

criminal convictions," petitioners are subject to a higher bar "to upset a conviction by collateral,

as opposed to direct, attack."  Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010)

(quotation marks omitted).  Further, "[a] motion under § 2255 is not a substitute for an appeal."

United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998).  To prevail on a § 2255 motion, a

petitioner must show "constitutional error . . . or an error of law or fact that constitutes 'a

fundamental defect which inherently results in a complete miscarriage of justice.'"  United States

v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Although Daugerdas is now proceeding pro se, he is a disbarred attorney formerly

admitted to practice in the state of Illinois.  Accordingly, "because he has had legal training and

experience, . . . he is not entitled to the same level of deference as would the usual pro se litigant,

although he is entitled to some."  Pantoja v. United States, 2013 WL 3990912, *4 (E.D.N.Y.

Aug. 2, 2013) (citing Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010)); see also Parent v.

New York, 485 F. App'x 500, 502–03 (2d Cir. 2012) (summary order) ("[A]s a suspended

4

attorney with over twenty years of experience . . . , [the pro se Petitioner] is not entitled to such special solicitude." (quotation marks omitted)).

II.     Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a defendant must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice resulted.  Strickland v. Washington, 466 U.S. 668, 687–88 (1984).  Notably, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.

With respect to the first prong, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quotation marks omitted).  And, "the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687).

Accordingly, "a defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate."  Albanese v. United States, 415 F. Supp. 2d 244, 249 (S.D.N.Y. 2005) (citing United States v. Vargas, 27 F.3d 773, 777 (2d Cir. 1994)).  It is well settled that a "strategic decision does not constitute ineffective assistance of counsel."  Jiang v. Mukasey, 522 F.3d 266, 270 (2d Cir. 2008).  Indeed, courts are cautioned not to "second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every 'colorable' claim."  Jones v. Barnes, 463 U.S. 745, 754 (1983); see also United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) ("[A]ctions or omissions that might be considered sound trial strategy do not constitute ineffective assistance." (quotation marks

omitted)).  Accordingly, this Court "will not second-guess trial counsel's defense strategy simply because the chosen strategy . . . failed." United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).  Moreover, "blanket assertions against [a] trial counsel's performance in a self-serving affidavit," Davison v. United States, 2001 WL 883122, at *8 (S.D.N.Y. Aug. 3, 2001) (citing Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001)), and "[a]iry generalities, conclusory assertions and hearsay statements will not suffice" to form a basis for relief, Haouari v. United States, 510 F.3d 350, 354 (2d Cir. 2007) (quotation marks omitted).

With respect to the prejudice prong, a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011) (quoting Strickland, 466 U.S at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  "The prejudice prong can be satisfied even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Wilson, 570 F.3d at 502 (quotation marks omitted).

III.    Challenges to the Statute of Limitations Stipulations

    a.    Trial Counsel

Daugerdas argues that in connection with his initial trial, his counsel provided ineffective assistance by advising Daugerdas to sign a series of stipulations tolling the statute of limitations and waiving any statute of limitations defense.  (Petition, at 7–14.)  Prior to the June 2009 indictment, Daugerdas—on the advice of trial counsel—executed seven statute of limitations stipulations at the request of the United States Attorney's Office for the Southern District of New York.  (Aff. of Stanley J. Okula Jr. in Opp'n re: Mot. to Supp. Pending Mot. Under 28 U.S.C. § 2255, ECF No. 25 ("Okula Aff."), ¶¶ 2–8.)  These stipulations tolled the

statute of limitations periods relating to criminal tax evasion counts that were the subject of a grand jury investigation. (Okula Aff. ¶¶ 2–8, 12.)

Specifically, Daugerdas argues that trial counsel was ineffective for advising Daugerdas to extend certain statutes of limitations when they had already expired. (Petition, at 12.) But Daugerdas is wrong on the facts. As the Government established at trial, for each tax evasion count, either (1) the Government introduced proof of an affirmative act of evasion that extended the start of the statute of limitations period,[2] or (2) Daugerdas only executed a stipulation where the statute of limitations had not yet run. Indeed, as explained by Daugerdas's trial counsel, each stipulation "served only to toll the statutes of limitations that had not yet run; [and] the stipulations did not enable the government to bring charges based on claims where the statutes of limitations had already run." (Decl. of Charles B. Sklarsky, ECF No. 20 ("Sklarsky Decl."), ¶ 3.)

Daugerdas also claims that he did not understand that in signing the stipulations, he was waiving his right to raise a statute of limitations defense. (Petition, at 12.) Here again, the record and unambiguous language of the stipulations demonstrate that Daugerdas's contention is meritless. Trial counsel avers that he "described to Mr. Daugerdas the advantages and disadvantages of entering into tolling agreements." (Sklarsky Decl. ¶ 12.) Moreover, each stipulation specifically stated: "[h]aving been advised by counsel, Paul M. Daugerdas expressly waives his right to any [statute of limitations] defense." (Okula Aff. ¶¶ 2–8; see also Sklarsky Decl. ¶ 12.) Thus, Daugerdas's express waiver is binding.

---

[2]    For example, Counts Two through Six of the S3 Indictment involved false audit responses given to the IRS and false testimony made in February 2004. (First Trial Tr., Criminal ECF No.445, at 7587.) Another transaction related to the S3 Indictment involved a false response provided to the IRS in December 2003. (First Trial Tr., Criminal ECF No. 440, at 4012.)

Daugerdas also asserts that his trial counsel told him "that [he] had to agree to extend the statute of limitations in order to keep the Government from indicting [him]." (Petition, at 7.)  To buttress his claim, Daugerdas cites a motion filed by his trial counsel to invalidate the stipulations, which he claims was the result of the Government misleading his counsel into believing it would not indict Daugerdas.  (Petition, at 10.)  This outlandish claim is contradicted by the record.  First, the motion to invalidate the stipulations never raised any lack of understanding on Daugerdas's part or deception by the Government.  Second, the motion to invalidate the stipulations was filed only after the Government announced its intention to charge Daugerdas with additional criminal offenses.  (Sklarsky Decl. ¶ 10.)  Throughout this process, trial counsel "advised [Daugerdas] that there was a substantial likelihood that the Government would indict him," but that there were benefits to tolling the limitations periods—such as allowing more time "to attempt to persuade the Government not to indict" and "to better understand the facts and the law [and] to build stronger defenses."  (Sklarsky Decl. ¶ 4.)

In short, a review of the record reinforces the "strong presumption that [trial] counsel's conduct [fell] within the wide range of reasonable professional assistance."  See Aguirre, 912 F.2d at 560.  Daugerdas's counsel made a reasoned, strategic decision by advising Daugerdas to execute the stipulations.  See Jiang, 522 F.3d at 270.

b.   Knowing and Voluntary

Daugerdas argues that this Court failed to make a finding that Daugerdas "knowingly and voluntarily" executed the stipulations tolling the statute of limitations and waiving any statute of limitations defense.  (Petition, at 15–17.)  But on February 7, 2011, this Court rejected Daugerdas's claim that he did not execute the stipulations knowingly and voluntarily.  See Daugerdas, 2011 WL 666170, at *3 (S.D.N.Y. Feb. 7, 2011).  The language of

the stipulations was clear and unambiguous.  The notion that a sophisticated former attorney and CPA did not understand these stipulations is not credible, especially considering Daugerdas signed several stipulations.

Relatedly, Daugerdas claims that appellate counsel was ineffective for failing to raise on appeal this Court's rejection of Daugerdas's challenge to the stipulations.  (Petition, at 18.)  "Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  Indeed, "[i]n [the appellate] context, counsel has no duty to raise every non-frivolous issue that could be raised."  Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015).

Here, nothing in the record suggests that Daugerdas's appellate counsel did not function as the "counsel" guaranteed by the Sixth Amendment.  See Mazzuca, 570 F.3d at 502. Appellate counsel raised eight principal arguments and a host of subsidiary ones in his 139-page brief to the Court of Appeals.  (See generally Br. & Special App'x for Def.-Appellant, United States v. Daugerdas, 837 F.3d 212 (2d Cir. 2016), 14-2437, Doc. No. 71.)  In declining to raise this issue on appeal, appellate counsel made an entirely appropriate strategic decision.[3]  See Dolce, 789 F.3d at 311.

    c.   Enforceability of the Stipulations

Finally, Daugerdas avers that the stipulations tolling the statute of limitations are unenforceable because they lack consideration.  (Mot. to Amend Pending Mot. Under 28 U.S.C.

---

[3]       Despite asserting an ineffective assistance of counsel claim against appellate counsel in this habeas proceeding, Daugerdas retained that same counsel to submit and argue a motion for compassionate release on his behalf in April 2020 and a motion for reconsideration in August 2020.  (See Emergency Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Criminal ECF No. 1018; Emergency Mot. for Reconsideration, Criminal ECF No. 1037.)

§ 2255, ECF No. 5 ("Mot. to Amend"), at 1.)  As the Second Circuit has noted, "[p]re-trial agreements, such as cooperation agreements and proffer agreements, are interpreted according to principles of contract law."  United States v. Liranzo, 944 F.2d 73, 77 (2d Cir. 1991).  "Where the language of a contract is unambiguous, the parties' intent is discerned from the four corners of the contract."  Liranzo, 944 F.2d at 77.  Here, each stipulation recited that "Mr. Daugerdas and his attorney . . . believe it is in Mr. Daugerdas interest" either to have more time to submit documents and arguments to the Government, or to allow the Government additional time to consider whether to charge Mr. Daugerdas with certain offenses.  (Okula Aff. ¶¶ 2–8.)  Further, each stipulation also recognized that it was in the Government's interest to continue its investigations and consider all of Daugerdas's arguments, or to "consider fully and carefully whether to seek [certain] charges against . . . Daugerdas."  (Okula Aff. ¶¶ 2–8.)  These recitals make clear that Daugerdas was giving and receiving consideration by executing the stipulations.[4]

IV.    Trial Counsel's Failure to Challenge Certain Overt Acts

        Daugerdas asserts that trial counsel was ineffective for failing to challenge the addition of a new overt act allegation not charged in the initial indictment or subsequent superseders.  (Petition, at 19–25.)  Specifically, Daugerdas contends that the S6 Indictment contained a new overt act—making false statements—as alleged in paragraph (t).  (Petition, at 21.)  Daugerdas claims that this new overt act—interspersed through various counts of the S6 Indictment—does not relate back to the filing date of the initial indictment.  (Petition, at 21, 25.)  From that proposition, he asserts that the S6 Indictment is time-barred.

---

[4]        This Court also notes that the Supreme Court and the Second Circuit have held that a tax-related statute of limitations waiver is not a contract.  United States v. Gayne, 137 F.2d 522, 523 (2d Cir. 1943) (citing Florsheim Bros. Dry Goods Co. v. United States, 280 U.S. 453, 466 (1930)).  Instead, it "is essentially a voluntary, unilateral waiver of a defense by the taxpayer."  Strange v. United States, 282 U.S. 270, 276 (1931).  A statute of limitations waiver, therefore, "needs no more consideration than does the acknowledgment of a debt in order to revive it after the statute has barred it."  Gayne, 137 F.2d at 523.  Under this view, the statute of limitations stipulations signed by Daugerdas required no consideration and were enforceable upon execution.

Daugerdas is mistaken.  In the S6 Indictment, paragraph (t) of the conspiracy

charge alleges:

> t.       In the Fall of 2000, defendant DENIS FIELD and Charles
> W. Bee, Jr., a co-conspirator not named as a defendant herein,
> caused Skadden Arps to delete damaging information from its
> report for BDO regarding the practices of the Tax Solutions Group,
> and made false statements about the conclusions of Skadden Arps
> to members of the TSG and BDO's Board of Directors, in order to
> continue and encourage the lucrative sales of BDO's tax shelters.

(S6 Indictment, at 36.)  The S6 Indictment alleges that this overt act—and all other overt acts—

"are repeated and realleged as if fully set forth herein" for Counts Two through Thirteen and

Count Seventeen.  (S6 Indictment, at 42, 45–46; Criminal ECF No. 644-1, at 8.)  Contrary to

Daugerdas's assertions, the overt act in paragraph (t) of the S6 Indictment is set forth in

paragraph (bb) of the original indictment and the S1, S2, and S3 Indictments.[5]  (Criminal ECF

Nos. 1-2, 14-2, 56-2, 81-2.)

Accordingly, Daugerdas's claim that Counts One through Thirteen and Seventeen

were substantially broadened by the inclusion of paragraph (t) is simply untrue.  No new overt

act allegations were added to the S6 Indictment, and therefore it related back to the original

indictment and the charges are not time-barred.  There was no basis to object to the S6

Indictment, and as a result trial counsel's conduct did not fall below "an objective standard of

reasonableness."  Strickland, 466 U.S. at 688.

---

[5]       Without explaining further, Daugerdas argues in his Petition that the S6 Indictment alleges a new overt act. (Petition, 19–25.)  On reply, Daugerdas provides further clarification, claiming that paragraph (bb) "charges a different overt act" than paragraph (t) because paragraph (bb) uses the phrase "BDO's Outside Law Firm" and paragraph (t) uses the phrase "Skadden Arps."  (Petitioner Paul M. Daugerdas's Reply to Defendant's Answer to Petitioner's Mot. Under 28 U.S.C. § 2255 ("Reply Brief"), ECF No. 31, at 6.)  This argument is frivolous because regardless of the phrase used, paragraphs (t) and (bb) charge the same overt act and "BDO's Outside Law Firm" was "Skadden Arps."

V.      The Deutsche Bank Stipulation

Daugerdas argues that trial counsel was ineffective for stipulating that Deutsche Bank was a financial institution affected by the tax shelters.  (Petition, at 26–27.)  He also claims that trial counsel was ineffective for not challenging the Government's failure to allege "that the mail fraud affected a financial institution."  (Petition, at 26–27.)  Specifically, Daugerdas contends that because the Government failed to allege in Count Seventeen of the S6 Indictment "that [] Deutsche Bank was a financial institution that was affected by the alleged fraudulent Tax Shelters," the statute of limitations on Count Seventeen was only five years and therefore the charge is time barred.  (Petition, at 56.)

Critical to this argument, however, is Daugerdas's claim that the Government added a new overt act allegation to the S6 Indictment, and thus the mail fraud charge cannot relate back to the filing date of the initial indictment.  (Petition, at 27.)  This Court rejected that claim, as described above.  Because no new overt acts were added to the S6 Indictment, the S6 Indictment related back to the original indictment.  As such, Daugerdas's arguments regarding which statute of limitations should have applied are irrelevant.

Daugerdas's argument is also meritless because the Wartime Suspension of Limitations Act ("WLSA") suspended the running of the statute of limitations for the conspiracy and mail fraud charges.  "[T]he WLSA suspends the statute of limitations for offenses involving fraud against the United States when the country is at war or Congress has enacted a specific authorization for the use of the Armed Forces" until the "termination of hostilities."  United States v. Wells Fargo Bank, N.A., 972 F. Supp. 2d 593, 609–10 (S.D.N.Y. 2013) (citing 18 U.S.C. § 3287).  Congress authorized the use of force on September 18, 2001 against "those responsible for the [September 11, 2001] attacks against the United States," and again on

12

October 16, 2002 against Iraq.  Joint Resolution, Pub. L. No. 107-40, 115 Stat. 224 (2001); Joint Resolution, Pub. L. No. 107-243, 116 Stat. 1498 (2002).  Accordingly, beginning in September 2001, the WLSA tolled the statute of limitations on the conspiracy to defraud the United States and mail fraud charges.  See Wells Fargo Bank, 972 F. Supp. 2d 593 at 613–14 (holding that the WLSA suspended the ten-year statute of limitations for certain fraud claims arising prior to June 25, 2002 because hostilities had not ended).  Because the WLSA relieved the Government of the ten-year statute of limitations for the mail fraud charge, the Government's failure to include the "affecting a financial institution" language in Count Seventeen was harmless.

Moreover, the Deutsche Bank stipulation was a strategic legal decision joined in by all defense counsel during the trial.  Daugerdas's trial counsel states in his affidavit that "[a]ll of the defendants, including Mr. Daugerdas, jointly decided to stipulate that the tax strategies affected Deutsche Bank within the meaning of 18 U.S.C. § 3293(2)" during trial—not prior to trial.  (Sklarsky Decl. ¶¶ 14–15.)  He explained further to Daugerdas "that it was better to agree to this stipulation rather than [to have] the evidence of the effect of the tax strategies on Deutsche Bank presented [to the jury]."  (Sklarsky Decl. ¶ 15.)  Because trial counsel's decision regarding the Deutsche Bank stipulation was part of a sound legal strategy, this Court concludes that it was well "within the wide range of reasonable professional assistance."  Aguirre, 912 F.2d at 560.

Alternatively, even if trial counsel had challenged the Government's failure to allege that the mail fraud affected a financial institution, this Court would likely not have dismissed Count Seventeen.  The Government could have filed another superseding indictment inserting the charging language prior to Daugerdas's retrial in 2013, ensuring that the charge was not time-barred because relevant overt acts occurred as late as October 2005.  Thus, Daugerdas's argument does not satisfy the second prong of the Strickland test because trial counsel's

performance did not "render[] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); see also United States v. Cotton, 535 U.S. 625, 632–33 (2002) (noting that the omission of an element from an indictment for fraud does not require reversal of a conviction where proof of that element is "overwhelming" and "essentially uncontroverted").

VI.    Trial Counsel's Failure to Challenge the Count Seventeen Mail Fraud Offense

Daugerdas argues that trial counsel was ineffective for failing to argue that the mail fraud count did not allege all of the essential elements of the crime. Specifically, Daugerdas claims that the failure to identify specific mailings is fatal to the charge. This claim is without merit.

It is well established in the Second Circuit that "[a]n indictment need only track the language of the statute and, if necessary . . . state time and place in approximate terms." United States v. Flaherty, 295 F.3d 182, 198 (2d Cir. 2002) (quotation marks omitted). Moreover, courts in this District have held that an indictment for mail fraud need not identify the victim, the exact mailing dates, or "which materials are alleged to be fraudulent." United States v. Zandstra, 2000 WL 1368050, at *4 (S.D.N.Y. Sept. 20, 2000) (citing United Sates v. Upton, 856 F. Supp. 727, 738–40 (E.D.N.Y. 1994)); see also United States v. Silver, 117 F. Supp. 3d 461, 471 (S.D.N.Y. 2015) (finding no authority supporting defendant's argument that a "[s]uperseding [i]ndictment should be dismissed because it does not identify with specificity the particular mail or wire transmissions that form the basis for the charges pursuant to 18 U.S.C. §[] 1341"). Accordingly, any challenge to the sufficiency of the allegations in the mail fraud count would have been frivolous.

14

Daugerdas's argument is also meritless because it fails to acknowledge that the Government provided Daugerdas prior to trial—on the request of defense counsel—a bill of particulars identifying 34 specific mailings it planned to prove at trial.  (See Okula Aff., Ex. J.) A bill of particulars can be sufficient to provide a defendant with notice regarding "which mailings and wire transmissions the Government will rely upon to prove its case."  See Silver, 117 F. Supp. 3d at 471 (ordering the Government to provide defendant "with a limited Bill of Particulars . . . identifying the specific mailings and wire transfers on which it will rely to prove [the mail fraud charges]" (quotation marks omitted)).

Because a challenge to the sufficiency of the allegations in the mail fraud count would have been frivolous, Daugerdas suffered no prejudice by trial counsel's failure to make such a challenge.  Absent prejudice, Daugerdas cannot use this omission as the basis of a claim for ineffective assistance of counsel.  See Raysor, 647 F.2d at 495 (citing Strickland, 466 U.S. at 694).

VII.    Daugerdas's *Marinello* Argument

Daugerdas argues that his conviction for IRS Obstruction was obtained in violation of his Fifth Amendment right to indictment by a grand jury and his Sixth Amendment right to trial by jury.  (Mot. to Amend, at 4–5.)  Daugerdas supplemented this claim following the Supreme Court's decision in Marinello v. United States, 138 S. Ct. 1101 (2018).  (Mot. to Suppl. Pending Mot. under 28 U.S.C. § 2255, ECF No. 19 ("Mot. to Suppl."), at 1–2.)  In Marinello, the Supreme Court held that the Government must show that a defendant's corrupt acts were directed at a pending IRS proceeding.  Marinello, 138 S. Ct. at 1107–10.  Daugerdas argues that the Government failed to prove that he obstructed a pending IRS proceeding.  (Mot. to Suppl., at 1–2; Mot. to Amend, at 4.)

Habeas relief is generally not available to petitioners who fail to raise a claim on direct review.  See Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).  The failure to raise a claim on direct review may still result in a procedural default when there are changes in the "substantive" criminal law after a petitioner's conviction becomes final.  See Bousley v. United States, 523 U.S. 614, 617–24 (1998).  Daugerdas did not advance any argument regarding obstruction of a pending IRS proceeding on his direct appeal.  Accordingly, he has procedurally defaulted.

To surmount a procedural default, Daugerdas must show cause for his failure to raise the issue on direct appeal and that his failure results in actual prejudice, or that he is actually innocent.  See Bousley, 523 U.S. at 622.  Daugerdas makes neither showing.  Daugerdas contends he could not have brought a Marinello claim on direct appeal because Marinello was not decided until after his appeal was resolved by the Second Circuit.  (Reply Brief, at 11.)  But an argument relating to obstruction of a pending IRS proceeding was available to Daugerdas prior to the Supreme Court's Marinello decision.  In fact, Daugerdas amended his habeas petition to include this exact argument prior to the Supreme Court's announcement of Marinello.  (See Mot. to Amend, at 4–5.)  Daugerdas could have raised the same claim on direct appeal, even if the Second Circuit would have rejected it.  See De Jesus v. United States, 161 F.3d 99, 103 (2d Cir. 1998) (stating that "cause" is not established in a procedural default analysis even if Second Circuit precedent at the time of direct appeal would have foreclosed the argument).  Daugerdas also fails to show actual prejudice.  He offers nothing to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quotation marks omitted).  Finally, Daugerdas makes no showing of

actual innocence.  Indeed, as two separate juries found, the evidence of his guilt was
overwhelming.

VIII.   Renewed Request for an Evidentiary Hearing

Daugerdas reiterates his earlier requests for an evidentiary hearing.  (ECF Nos.
24, 47.)  "In ruling on a motion under § 2255, the district court is required to hold a hearing
'[u]nless the motion and the files and records of the case conclusively show that the prisoner is
entitled to no relief.'"  Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28
U.S.C. § 2255).  Indeed, "the filing of a motion pursuant to § 2255 does not automatically entitle
the movant to a hearing; that section does not imply that there must be a hearing where the
allegations are 'vague, conclusory, or palpably incredible.'"  Gonzalez, 722 F.3d at 130 (quoting
Machibroda v. United States, 368 U.S. 487, 495 (1962)).  Ultimately, it is within a district
court's discretion to determine whether a hearing is necessary.  See Pham v. United States, 317
F.3d 178, 184 (2d Cir. 2003).  And where the judge who presided over the underlying criminal
proceeding also presides over the § 2255 motion, "a full-blown evidentiary hearing may not be
necessary."  Raysor, 647 F.2d at 494.  This Court devoted more than 75 days to hearing evidence
and arguments over the course of two trials and is intimately familiar with the conduct of
Daugerdas's counsel throughout the proceedings.  Counsel conducted themselves in a highly
effective and professional manner.

A district judge may decline to hold a hearing where a petitioner does not
"demonstrate a colorable claim of ineffective assistance."  Contino v. United States, 535 F.3d
124, 128 (2d Cir. 2008) (per curium).  This case presents that paradigm.  Daugerdas's arguments
in support of his habeas petition are "vague, conclusory, [and] palpably incredible."
Machibroda, 368 U.S. at 495.  They do not make "a colorable claim of ineffective assistance."

<u>Coutino</u>, 535 F.3d at 128.  Because the record demonstrates conclusively that Daugerdas is not entitled to relief, his renewed request for an evidentiary hearing is denied.  <u>See</u> <u>Gonzalez</u>, 722 F.3d at 130.

CONCLUSION

For the foregoing reasons, Daugerdas's habeas petition is denied.  Because Daugerdas has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued.  <u>See</u> 28 U.S.C. § 2253(c).  The Clerk of Court is directed to terminate all pending motions and mark case number 18-cv-152 as closed.  The Clerk of Court is also directed to terminate the pending motion at ECF No. 905 in case number 09-cr-581.  The Clerk of Court is directed to docket this Memorandum & Order in 09-cr-581 and 18-cv-152.  Chambers staff will mail a copy of this Memorandum & Order to Daugerdas.

Dated: February 16, 2021
     New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

18